UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KATHLEEN MILLER,

                              Plaintiff

v.

VERIZON COMMUNICATIONS, INC.,

                    Defendant

Civil Action No.: 05-30117-KPN

## AFFIDAVIT OF MICHAEL O. SHEA

I, Michael O. Shea, do depose and say as follows:

1.     I make this affidavit upon personal knowledge.

2.     I am an attorney with an office located at 451 Main Street, Wilbraham, Massachusetts

       01095, and I represent the Plaintiff in the above-captioned action.

3.     The following exhibits to my affidavit are true and accurate copies of correspondence

       between counsel for the Parties and case law as downloaded from the LoisLaw

       website.

          Exhibit 1:     November 9, 2005 Letter from Michael O. Shea to Windy L.

                         Rosebush;

          Exhibit 2:     December 23, 2005 Letter from Anne S. Diebold to Windy L.

                         Rosebush;

          Exhibit 3:     January 4, 2006 Letter to Michael O. Shea from Windy L.

                         Rosebush;

          Exhibit 4:     February 27, 2006 Letter from Michael O. Shea to Windy L.

Rosebush;

Exhibit 5:     The case of <u>Marchese v. Secretary</u> (D. E.D.La. 2004), as downloaded from the LoisLaw website.

Exhibit 6:     The case of <u>Owens v. Sprint/United Management Company</u> (D. Kan. 2004), as downloaded from the Lois Law website.

Exhibit 7:     The case of <u>Segarra v. Potter</u> (D. N.M. 2004), as downloaded from the LoisLaw website.

Exhibit 8:     <u>McCrane v. Marconi Medical Systems, Inc.</u> (D. E.D.Pa. 2002) as downloaded from the LoisLaw website.

Exhibit 9:     Excerpt from *Defendant Verizon Communications Inc.'s Answers to Plaintiff's First Set of Interrogatories*


Signed under the pains and penalties of perjury this 10th day of March, 2006.


                                        /s/ Michael O. Shea
                                        Michael O. Shea

# EXHIBIT 1





**LAW OFFICE
OF
MICHAEL O. SHEA, P.C.**

451 MAIN STREET
WILBRAHAM, MA 01095

TEL: 413.596.8005
FAX: 413.596.8095

November 9, 2005

Windy L. Rosebush, Esq.
Edwards & Angell, LLP
101 Federal Street
Boston, MA 02110

Re:    *Miller v. Verizon Communications, Inc.*
       *U.S. District Court-Civil Action No. 05-30117-KPN*

Dear Attorney Rosebush:

Enclosed please find the First Set of Interrogatories from Plaintiff to Defendant,
Verizon Communications, Inc. and the First Request for Production of Documents of
Plaintiff to Defendant Verizon Communications, Inc.

If you should have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

Michael O. Shea

# EXHIBIT 2



**LAW OFFICE
OF
MICHAEL O. SHEA, P.C.**

451 MAIN STREET
WILBRAHAM, MA 01095

TEL: 413.596.8005
FAX: 413.596.8095

December 23, 2005

*SENT VIA FACSIMILE & MAIL*
*FACSIMILE NO. (617)439-4170*
Windy L. Rosebush, Esq.
Edwards & Angell, LLP
101 Federal Street
Boston, MA 02110

**Re:**   *Miller v. Verizon Communications, Inc.*
          *U.S. District Court-Civil Action No. 05-30117-KPN*

Dear Attorney Rosebush:

The dates which you have proposed via e-mail yesterday regarding discovery deadlines are fine with us. I am simply writing to confirm that the current deadlines are as follows:

- **Defendant's discovery responses are due to the Plaintiff on January 4, 2006.**

- **Plaintiff's discovery responses are due to the Defendant on January 18, 2006.**

Very truly yours,

Anne S. Diebold, Esq.

*cc: File*

# EXHIBIT 3

# EDWARDS ANGELL PALMER & DODGE LLP

101 Federal Street  Boston, MA  02110   617.439.4444   *fax* 617.439.4170   eapdlaw.com

Windy L. Rosebush

617.951.2277
*fax* 888.325.9562
wrosebush@eapdlaw.com

January 4, 2006

**Via Federal Express**

Michael O. Shea, Esq.
451 Main Street
Wilbraham, MA  01095

Re:   Kathleen Miller v. Verizon Communications, Inc.,
      C.A. No. 05-30117-KPN

Dear Attorney Shea:

Enclosed please find:

1.   Defendant's Answers to Plaintiff's Interrogatories; and

2.   Defendant's Response to Plaintiff's Requests for Production of Documents.

Very truly yours,

Windy L. Rosebush

WLR:aa

Enclosures

cc:   Timothy P. Van Dyck, Esq. (w/encls)

BOS_518033_1/WROSEBUSH

BOSTON | FT. LAUDERDALE | HARTFORD | NEW YORK | PROVIDENCE | SHORT HILLS | STAMFORD | WEST PALM BEACH | WILMINGTON | LONDON

# EXHIBIT 4



**LAW OFFICE**
**OF**
**MICHAEL O. SHEA, P.C.**

451 MAIN STREET
WILBRAHAM, MA 01095

TEL: 413.596.8005
FAX: 413.596.8095

February 27, 2006

***SENT VIA FACSIMILE & MAIL***
***FACSIMILE NO. (617)439-4170***
Windy L. Rosebush, Esq.
Edwards & Angell, LLP
101 Federal Street
Boston, MA 02110

***Re:***   ***Miller v. Verizon Communications, Inc.***
      ***U.S. District Court-Civil Action No. 05-30117-KPN***

Dear Attorney Rosebush:

I am writing pursuant to Local Rules 7.1 and 37.1 to address a number of outstanding discovery issues that have been raised by the *Defendant's Answers to Interrogatories* and *Defendant's Response to Plaintiff's Requests for Production of Documents.* Please contact me once you have reviewed these issues so that we may schedule a telephonic discovery conference.

### ***Defendant's Answers to Interrogatories***

#### Interrogatory Nos. 12 and 13

**Interrogatory No. 12** asked for detailed description of written policies and/or procedures regarding handicap and/or disability discrimination and/or the Family Medical Leave Act (FMLA) which were in place during the Plaintiff's tenure. **Interrogatory No. 13** asked for the same information, however with reference to any <u>verbal</u> policies and/or procedures. While the Defendant did refer the Plaintiff to specific policies in its Answer to Interrogatory No. 12, it failed to include, as was requested, <u>when, where, and how</u> such policies and/or procedures were posted. This information relates to the Plaintiff's claims in that it clarifies which policies and/or procedures were in place when, thus indicating when these policies and/or procedures were in effect during a specified period of time and how Verizon employees were to know this information. Moreover, the Defendant's Answer to Interrogatory No. 13 simply referred the Plaintiff to its Answer to Interrogatory No. 12, thereby evading the question of whether the Defendant did, in fact, have any verbal policies or procedures regarding handicap and/or disability discrimination and/or the FMLA during the Plaintiff's tenure with the Defendant. Therefore, we ask that the Defendant supplement its Answers to Interrogatory Nos. 12 and 13 to provide the above-referenced missing information.

#### Interrogatory Nos. 15 and 16

**Interrogatory Nos. 15 and 16** asked for identifying information about handicapped and/or disabled employees, as well as non-handicapped and/or non-disabled

employees, <u>at the location where the Plaintiff worked</u>, whose employment was terminated (Interrogatory No. 15) or subjected to other adverse action (Interrogatory No. 16) in the last five years and the reasons given for such termination of employment. We address the Defendant's various objections to answering these Interrogatories in turn, as substantially similar objections have been set forth for each Interrogatory.

First, in response to the charge that these Interrogatories are "overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence," the Plaintiff has reasonably limited these Interrogatories to a five-year period and the location where the Plaintiff worked. Thus, the Defendant's objection based on the fact that "Verizon is a national company with thousands of employees" is irrelevant to these Interrogatories, as Interrogatory Nos. 15 and 16 do not ask for information with reference to every Verizon employee nationwide. In addition and contrary to the Defendant's contention, the Plaintiff has not asked for "all documentation and correspondence" related to the employees referred to in Interrogatory Nos. 15 and 16, but rather has asked for the basic information of "names, addresses, telephone numbers, job titles, and reasons given for termination."

As for the Defendant's contention that the Plaintiff "has not alleged a disparate impact theory of liability, nor is her claim based upon an alleged pattern or practice of discriminating against employees with alleged disabilities," it is not clear how the Defendant came to this conclusion. The Federal Rules of Civil Procedure do not indicate that the Plaintiff must specify a disparate impact theory of liability and/or "pattern or practice" theory of liability when alleging violations of the Americans with Disabilities Act and/or Massachusetts General Laws Chapter 151B. Rather, the rules of pleading provide that, "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Fed.R.Civ.P. 8(e)(1). The Plaintiff's allegations of handicap and/or disability discrimination encompass the above-referenced theories of liability and thus the Plaintiff has properly asked for information with reference to Verizon employees in Interrogatory No. 15. *See e.g., Massachusetts Commission Against Discrimination Guidelines: Employment Discrimination on the Basis of Handicap – Chapter 151B, Section IX. Proving Handicap Discrimination.*

As for the Defendant's expressed concern about protecting third parties' privacy with regard to these Interrogatories, we propose that the Parties enter into a mutually-agreeable confidentiality agreement in order that such relevant information be produced while respecting such individuals' privacy concerns.

## Interrogatory No. 17

**Interrogatory No. 17** asked for known addresses and telephone numbers of individuals' who are likely to have discoverable information. The Defendant answered by referring the Plaintiff to its Answer to Interrogatory No. 10, which provided a list of potential hearing and/or trial witnesses with accompanying general anticipated testimony. Given that the Defendant is under an obligation to seasonably supplement its Answer pursuant to the Federal Rules of Civil Procedure, at this stage we simply ask that the Defendant delineate which of the identified individuals it will accept service of deposition and/or trial subpoenas on behalf of; and for those individuals

identified who the Defendant will <u>not</u> accept such service, to please provide us with their last known addresses and telephone numbers.

### Interrogatory No. 18

**Interrogatory No. 18** asked for information about employees who assumed the Plaintiff's job duties after the termination of her employment. The Plaintiff is willing to narrow this Interrogatory to the geographic location where the Plaintiff worked. Information about replacement employees is not only relevant but is central to a plaintiff's claims in a handicap and/or disability discrimination case. *See* <u>Flanigan-Uusitalo v. D.T. Industries, Inc.</u>, 190 F. Supp. 2d 105, 114 (D. Mass. 2001)(plaintiff must show that "she was replaced by a non-handicapped person or that the position she had occupied remained open and the employer sought to fill it" as part of her *prima facie* case, citing <u>Dartt v. Browning-Ferris Industries, Inc.</u>, 427 Mass. 1, 2 [1998]). As noted above, we are entirely willing to enter into a suitable confidentiality agreement on behalf of our Client in order to protect third-party individuals' privacy.

### Interrogatory No. 20

**Interrogatory No. 20** sought information about handicap and/or disability discrimination claims and/or retaliation claims filed against Verizon in the last ten years. The Plaintiff is willing to narrow this request to a smaller time period of five years and the geographic location of the Plaintiff's location of employment with Verizon. For the same reasons noted above with reference to Interrogatory Nos. 15 and 16, the Defendant's issue with theories of liability is unfounded. The information sought by way of Interrogatory No. 20 is expected to show a pattern or practice of discrimination and/or retaliation and is, especially now, narrowly drawn to elicit such information. The Plaintiff has certainly alleged that the Defendant, through its agents, subjected the Plaintiff to adverse employment action based upon discriminatory animus, and claims of discrimination and/or retaliation, especially in the same geographic location as that of the Plaintiff's employment, is expected to provide circumstantial evidence of discriminatory animus.

### Interrogatory No. 21

**Interrogatory No. 21** simply sought the names and job titles of Verizon employees, <u>at the Plaintiff's geographic location of employment with Verizon</u>, who were or are considered handicapped and/or disabled and/or physically impaired and/or to have or have had a medical condition, the identity of said handicap and/or disability and/or physical impairment and/or medical condition, whether and when the respective employees requested a reasonable accommodation, and whether the accommodation was granted. The Plaintiff is willing to narrow this request to a five-year period. Please clarify the Defendant's contention that it is "not in a position of identifying which, if any, of the employees who have worked at Ms. Miller's location in the last ten years were regarded as having a disability or otherwise had a medical condition which may qualify them as disabled." Surely there are employees, such as the Plaintiff, who have identified themselves, on paper or otherwise, as having a handicap and/or disability and/or physical impairment and/or medical condition. At the very least, the Defendant can, and should

subject to a confidentiality agreement, identify those employees since such information is relevant and the Defendant is "in a position" to do so.

### *Defendant's Responses to Plaintiff's Document Requests*

### Request No. 1

**Request No. 1** sought documents related to handicap and/or disability discrimination claims and/or retaliation claims filed against Verizon in the last ten years. The Plaintiff is willing to narrow this request to a smaller time period of five years and the geographic location of the Plaintiff's location of employment with Verizon. For the same reasons noted above with reference to Interrogatory Nos. 15, 16, and 20, the Defendant's issue with theories of liability is unfounded. The information sought by way of Request No. 1 is expected to show a pattern or practice of discrimination and/or retaliation and the Plaintiff has now more narrowly drawn the Request to elicit such information. The Plaintiff has certainly alleged that the Defendant, through its agents, subjected the Plaintiff to adverse employment action based upon discriminatory animus, and claims of discrimination and/or retaliation, especially in the same geographic location as that of the Plaintiff's employment, is expected to provide circumstantial evidence of discriminatory animus.

### Request No. 2

**Request No. 2** sought documents related to any Verizon employee statements regarding claims of disability and/or handicap discrimination and/or retaliation, during the time period of the Plaintiff's tenure of employment up to the present. In responding, the Defendant referred only to the non-privileged documents which it has produced relating to the Plaintiff. For the same reasons set forth above with reference to **Request No. 1**, these statements are relevant and discoverable, as the Plaintiff expects them to show discriminatory animus. While the Plaintiff has already narrowed this Request to cover the time period of her tenure with Verizon to the present, she is willing to further narrow this request to the location of her employment.

### Request No. 9

**Request No. 9** sought copies of correspondence and other documents relating or referring to Verizon's written and/or verbal policies and/or procedures regarding disability and/or handicap discrimination and/or retaliation in the last ten years. The Defendant responded by producing copies of certain policies. *See* discussion above regarding **Interrogatory Nos. 12 and 13**. The Plaintiff is willing to narrow this Request to the time period of the Plaintiff's tenure of employment to the present. This Request is reasonable and relevant, as such documents are expected to show the disparate application of such policies among Verizon employees, thus revealing discriminatory intent and/or action taken against the Plaintiff.

### Request No. 10

In **Request No. 10**, the Plaintiff reasonably requested copies of the same documents referred to in **Request No. 9**, but with reference to those policies and/or procedures which applied to the

<u>Plaintiff</u> during her tenure with Verizon. The Defendant did produce copies of policies in response to the Plaintiff's Request, without stating whether these represented all of the policies and/or procedures which applied to the Plaintiff during her employment with Verizon. The Plaintiff is entitled to, at the very least, copies of <u>all</u> of the policies and procedures regarding disability and/or handicap discrimination and/or retaliation which applied to the Plaintiff during her tenure. Such policies go directly to the heart of the Plaintiff's claims in this case. If the Defendant has in fact produced all such policies and procedures, the Defendant should so indicate in a supplemental response.

### Request No. 12

**Request No. 12** asked for documents relating to employees who assumed the Plaintiff's job duties after the termination of her employment. The Plaintiff is willing to narrow this Request to the geographic location where the Plaintiff worked. As noted above with reference to **Interrogatory 18**, information about replacement employees is not only relevant but is central to a plaintiff's claims in a handicap and/or disability discrimination case. *See* <u>Flanigan-Uusitalo v. D.T. Industries, Inc.</u>, 190 F. Supp. 2d 105, 114 (D. Mass. 2001)(plaintiff must show that "she was replaced by a non-handicapped person or that the position she had occupied remained open and the employer sought to fill it" as part of her *prima facie* case, citing <u>Dartt v. Browning-Ferris Industries, Inc.</u>, 427 Mass. 1, 2 [1998]). Also as noted above, we are entirely willing to enter into a suitable confidentiality agreement on behalf of our Client in order to protect third-party individuals' privacy.

### Request No. 14

**Request No. 14** properly asked for the personnel files, time sheets, attendance records, and other similar documents of all employees who held the same position as the Plaintiff, or who performed the same or similar job responsibilities as the Plaintiff, in the last five years. The Defendant responded by only producing documents "relevant to the Plaintiff's attendance record." The Plaintiff reiterates her request for the above-referenced documents and is willing to narrow this Request to the geographic location where she worked. Such documents clearly relate to the issue of disparate treatment and are therefore discoverable.

Please respond to the above-delineated, outstanding discovery issues in writing within the next two business days so that we may narrow the areas of disagreement and ideally resolve these issues short of the need for the Plaintiff to file a Motion to Compel.

Very truly yours,

Michael O. Shea /sg

Michael O. Shea

*cc: File*

# EXHIBIT 5

## Loislaw Federal District Court Opinions

MARCHESE v. SECRETARY, (E.D.La. 2004)

JEAN MARCHESE ET AL. v. SECRETARY, DEPARTMENT OF THE INTERIOR, MINERALS

MANAGEMENT SERVICE.

Civil Action No. 03-3082, Section "K" (2).

United States District Court, E.D. Louisiana.

October 12, 2004

### ORDER AND REASONS

JOSEPH WILKINSON, Magistrate Judge

This order addresses two related motions: (1) Plaintiffs' Motion to Compel Discovery, Record Doc. No. 24, and (2) Defendant's Motion for Protective Order, Record Doc. No. 29. Defendant's motion for protective order incorporates his opposition to plaintiffs' motion to compel. Plaintiffs filed both an opposition to defendant's motion for protective order and a reply memorandum in support of their own motion.

(A). Plaintiffs' Motion to Compel Discovery, Record Doc. No. 24

Plaintiffs' motion fails to state which of defendant's discovery responses are deficient and why, which significantly impedes the court's ability to understand what plaintiffs seek and to grant any relief. However, the last sentence of plaintiffs'
**Page 2**
memorandum asks the court to compel more responsive answers to any of their first set of interrogatories, requests for production of documents and requests for admissions served on June 14, 2004 (Plaintiff's Exh. 1), which seek information relating to the decisions of Chris Oynes, director of the Gulf of Mexico OCS Region of the Minerals Management Service, concerning promotions and pay grades. Accordingly, the court addresses plaintiffs' motion to compel primarily in that context.

**IT IS ORDERED** that plaintiffs' motion is GRANTED IN PART AND DENIED IN PART, as follows.

Information concerning Oynes's involvement in the specific employment decisions regarding these two plaintiffs, which are at issue in this lawsuit, is "relevant to the claims or defenses of the parties" and is therefore within the scope of discovery without any further showing. Fed.R.Civ.P. **26**(b)(1). To the extent that plaintiffs seek information about Oynes's involvement in similar decisions regarding employees other than plaintiffs, that information may be "relevant to the subject matter involved in the action" and plaintiffs must show good cause to discover it. Id.

Plaintiffs argue that statistical evidence concerning
"defendant's labor force and those who receive promotions and
favorable treatment" is relevant in disparate treatment and
disparate impact cases. However, based on plaintiffs' complaint,
as amended, this
**Page 3**
is solely a disparate treatment case. Although "[s]tatistical
evidence can be utilized by an individual disparate treatment
plaintiff to help rebut the employer's non-discriminatory
explanation . . ., more than statistics are usually necessary to
rebut an employer's strong showing of a legitimate,
non-discriminatory reason for discharging a particular employee."
Bauer v. Albemarle Corp., **169 F.3d 962**, **968** (5th Cir. 1999).
There are many other evidentiary means available to plaintiffs in
the instant case, besides statistical evidence, to prove that
they were treated differently. Generally speaking, plaintiffs
have failed to show good cause for the extremely broad scope of
information they seek from which to create statistical evidence
or for other purposes.

Moreover, the majority of the cases cited by plaintiffs at pp.
10-11 of their memorandum do not support their argument for broad
discovery of statistical evidence. Either the cases pre-date the
burden-shifting framework applicable to plaintiffs' allegations
of gender and age discrimination and retaliation, Texas Dep't of
Cmty. Affairs v. Burdine, **450 U.S. 248**, **252-53** (1981)
(clarifying burden of proof originated in McDonnell Douglas
Corp. v. Green, **411 U.S. 792**, **807** (1973)), they do not address
the use of statistical evidence at all, they apply to class
actions or they have been reversed.

Nonetheless, "[w]hen a plaintiff must prove intentional
discrimination, a district court can abuse its discretion by
limiting a plaintiff's ability to show the atmosphere in
**Page 4**
which the plaintiff operated." Kelly v. Boeing Petroleum Servs.,
Inc., **61 F.3d 350**, **358** (5th Cir. 1995) (quotations omitted).
Evidence of other wrongs or acts may be admissible to prove, for
example, defendant's motive, intent, plan, knowledge or absence
of mistake in an employment discrimination case. Fed.R.Evid.
**404**(b); Burks v. Oklahoma Pub. Co., **81 F.3d 975**, **981** (10th Cir.
1996); Spulak v. K Mart Corp., **894 F.2d 1150**, **1156** (10th Cir.
1990) (and cases cited therein); Trevino v. Celanese Corp.,
**701 F.2d 397**, **405** (5th Cir. 1983); Harpring v. Continental Oil Co.,
**628 F.2d 406**, **409** (5th Cir. 1980); Koppman v. South Cent. Bell
Tel. Co., No. 90-4503, 1992 WL 280793, at *7-8 (E.D. La. July
12, 1992) (Clement, J.).

On the other hand, this is a relatively simple case of
allegations of discriminatory failure to promote, retaliation and
Equal Pay Act violations. Courts have recognized that Title VII
plaintiffs do not have an unlimited ability to delve into their
employers' policy and personnel records, even when they have
alleged a pattern of discrimination. "[The court's] discretion to
allow broad discovery is not without limits and the trial court
is given wide discretion in balancing the needs and rights of
both plaintiff and defendant." Scales v. J.C. Bradford & Co.,
**925 F.2d 901**, **906** (6th Cir. 1991) (citing Trevino,

**701 F.2d at 405**); see also Childers v. Slater, No. 97-853RMU/JMF, 1998 WL
429849, at *4-5 (D.D.C. May 15, 1998) (plaintiff's request for
information about all discrimination
**Page 5**
actions filed against entire government agency "sweeps too
broadly;" "courts must set reasonable boundaries on the type of
discovery permissible in Title VII actions;" discovery limited to
relevant time period, particular type of discrimination alleged
in complaint and divisions where plaintiff and her supervisors
worked) (citing Trevino, **701 F.2d at 405**, and cases that
imposed similar limitations).

Finally, it is well established that other claims of
discrimination against a defendant are discoverable if limited to
the (a) same form of discrimination, (b) the same department or
agency where plaintiff worked, and (c) a reasonable time before
and after the discrimination complained of. Mitchell v. National
R.R. Passenger Corp., 208 F.R.D. 455, 460 (D.D.C. 2002).
"Although acts occurring before the relevant statute of
limitations period may still be admissible to prove a plaintiff's
timely claim, the request must be reasonably limited. . . . Ten
years is an inordinate length of time to support plaintiffs'
pattern of discrimination theory. . . . Thus, in order to
establish a pattern of discrimination, three years is a
reasonable time in which to allow discovery." Glenn v.
Williams, 209 F.R.D. 279, 282 (D.D.C. 2002) (citing cases).

"[N]ot only must there be a `temporal limitation,' but also a
`geographic limitation' on the documents requested. Necessarily,
the geographic limitation is the `employing unit.' . . .
[D]iscovery in Title VII actions may appropriately be limited to
employment
**Page 6**
units, departments, and sections in which there are employees who
are similarly situated to the plaintiff." Id. at 281 (citing
cases).

With these principles in mind, **IT IS ORDERED** as follows with
respect to plaintiffs' first set of discovery requests
(Plaintiff's Exh. 1) and defendant's responses (Plaintiff's Exh.
2).

Defendant's objections to plaintiffs' Interrogatory Nos. 1 and
4, as they relate to Oynes, are overruled. However, this has no
effect on defendant's answers, which state that Oynes had no
involvement in these actions.

Defendant's objection to plaintiffs' Interrogatory No. 3, as it
relates to Oynes, is overruled. Defendant must respond. If there
were no such "occasions or contacts" with either plaintiff,
defendant should so state.

Defendant's objection to plaintiffs' Interrogatory No. 5, as it
relates to Oynes, is overruled. Defendant's objection to
plaintiffs' Interrogatory No. 5, as it relates to the time period
and the grade levels requested by the interrogatory, is
sustained. These are unlimited and therefore excessively broad.
Accordingly, defendant must respond only for the time period
January 1, 2001 to the present and only for persons at grade

levels GS-9 through GS-11, which are the grade levels from and to
which plaintiffs claim they should have been upgraded.
**Page 7**

   **IT IS FURTHER ORDERED** that the same time period and grade
level limitations shall apply to all of plaintiffs' discovery
requests.

   **IT IS FURTHER ORDERED** that defendant must provide plaintiffs
with a verification of their original Answers to Interrogatories
and must verify their supplemental Answers to Interrogatories as
required by Fed.R.Civ.P. **33**(b)(2).

   Defendant's response to plaintiffs' Request for Production No.
1 is insufficient. It is not a valid response to state that some
documents are already in plaintiffs' possession. Defendant must
provide a supplemental response that identifies all which
documents are responsive to this request and states that such
documents have been or will be made available to plaintiffs for
inspection and copying, or states that no responsive documents
are in the possession, custody or control of defendant.

   Defendant must also provide a supplemental response to
plaintiffs' Request for Production No. 1 as necessary to comply
with the request in light of any of the overruled objections and
court orders to supplement his Answers to Interrogatories
discussed above.

   Defendant's objections to plaintiffs' Request for Production
Nos. 2 and 3, as they relate to Oynes, are overruled. However,
the time period and the grade levels requested are excessively
broad and are limited as previously stated above. Furthermore,
defendant
**Page 8**
is not required to create any documents in response to any
request for production of documents. If no responsive documents
exist within his possession, custody or control, defendant should
simply say so.

   (B). Defendant's Motion for Protective Order, Record Doc. No.
29

   Defendant's motion for protective order is GRANTED IN PART AND
DENIED IN PART, as follows.

   First, defendant's motion is granted as to plaintiffs' requests
for admissions, which are grossly excessive and repetitive. **IT
IS ORDERED** that plaintiffs are limited to propounding 25
requests for admissions. Their first set of 15 numbered requests
for admissions, including subparts, attached to their motion as
Plaintiff's Exh. 1, actually contained 24 requests. Thus,
plaintiffs may choose one more request for admissions from the
nearly 200 requests that they propounded and ask defendant to
admit or deny that one.

   Second, defendant's objection to creating any documents in
response to requests for production of documents is sustained.
Rule 34 does not require a party responding to discovery to
create responsive materials, only to produce those in its

possession, custody or control.
**Page 9**

   Third, defendant's objection to producing information
concerning Oynes's involvement in the employment decisions
regarding plaintiffs that are at issue in this lawsuit, or
Oynes's involvement in comparable complaints of age or gender
discrimination or retaliation within the relevant time period and
employing unit, is overruled. If no such information exists,
defendant should say so. Otherwise, if Oynes had any personal
involvement in those decisions or actions, responsive information
concerning his involvement must be produced.

   Defendant's objection that Request for Production Nos. 3, 8,
14, 20 and 24 of plaintiffs' second set of discovery requests are
overly broad is sustained. All of plaintiffs' discovery requests
are limited to personnel within the section supervised by Alex
Alvarado and to grievances or complaints based on age or gender
discrimination or retaliation only.

   Furthermore, Request for Production No. 1 is too broad when it
states "in any [way] related to your Answers to Interrogatories
or denials of Requests for Admissions." However, defendant must
respond by identifying and providing for inspection any documents
upon which it relied in preparing its Answers to Interrogatories
and denials of Requests for Admissions.
**Page 10**

   Defendant's motion is granted as to plaintiffs' Request for
Production Nos. 13, 16, 17, 18 and 26 of plaintiffs' second set
of discovery requests. These requests are overly broad in scope
and seek information that is not reasonably calculated to lead to
the discovery of admissible evidence.

   Defendant's motion is denied in part as to plaintiffs' Request
for Production No. 21. Defendant must respond insofar as such
documents exist related to age or gender diversity within the
Gulf of Mexico Region.

   Defendant's motion is denied in part as to plaintiffs' Request
for Production No. 25. Pay rates for GS-12 and GS-13 levels are
relevant to plaintiffs' proof of lost future pay opportunities.
However, the request is both overly broad and vague in part.
Defendant need not produce personnel records nor any
"documentation that would be used to calculate future loss of
pay," but must produce documents that establish such pay rates
during the relevant time period.

   As to Request for Production Nos. 27 and 28, defendant asserts
that vacancy announcement S-99-46 relates to the "anecdotal case
of Claudia Rogers" and is irrelevant to plaintiffs' case. The
court has no knowledge of who Claudia Rogers is or the
circumstances of her "anecdotal case." Request for Production No.
29 asks for all advertised vacancy announcements. Request for
Production No. 31 concerns cancelled
**Page 11**
vacancy announcements. Plaintiffs' complaint, as amended, does
not allege any discrimination or retaliation against them in
connection with any vacancy announcements. Accordingly, these

requests appear on the current record to seek irrelevant
information. Defendant's motion is granted as to these requests.

Defendant's motion is denied as to his objection that personnel
records are protected by the Privacy Act, **5 U.S.C. § 552a**(b).
Despite defendant's argument that plaintiffs should be held to a
heightened standard of relevance to overcome this statute, it is
well established that the Privacy Act

> does not create a qualified discovery privilege as
> that concept is generally understood, and we find no
> basis in the statute or its legislative history for
> inferring one. Nor does the Act create any other kind
> of privilege or bar that requires a party to show
> actual need as a prerequisite to invoking discovery.
> Rather, the plain language of the statute permits
> disclosure "pursuant to the order of a court of
> competent jurisdiction." Neither the statute nor
> anything in its legislative history specifies the
> standards for issuance of such a court order. We
> therefore find no basis for inferring that the
> statute replaces the usual discovery standards of the
> FRCP — in particular, Rules 26 and 45(b) — with a
> different and higher standard.

Laxalt v. McClatchy, **809 F.2d 885, 888** (D.C. Cir. 1987)
(quoting **5 U.S.C. § 552a**(b)(11)); accord Bustillo v. Hawk,
No. 97-WM-445, 1998 WL 299980, at *5 (D. Colo. May 28, 1998);
Huang v. Dalton, No. 93-3143, 1994 WL 325944, at *1 (E.D. Pa.
June 30, 1994).
**Page 12**

However, discovery of the personnel files of non-party
individual employees presents special concerns about the privacy
rights of the individuals involved. Balancing the interests of
the parties in obtaining relevant discovery against the privacy
interests of individual non-parties can best be accomplished by
in camera review of the requested files. Atkinson v. Denton
Publishing Co., **84 F.3d 144, 148** (5th Cir. 1996). By reviewing
these records in camera I can also make an informed ruling as to
their relevance. Accordingly, **IT IS ORDERED** that, if defendant
has any responsive personnel files, they must be produced to me
no later than **October 22, 2004** for in camera review along with
a brief memorandum stating to which request for production the
documents are responsive. Thereafter, this part of the motion
will be decided on the record without oral argument.

Defendant's motion is denied as to plaintiffs' requests for
information regarding settlements of gender and age-related
discrimination complaints. Settlement agreements, although
inadmissible in evidence for some purposes, are both discoverable
and admissible for other purposes. Fed.R.Evid. **408**; 23 C.A.
Wright & K.W. Graham, Federal Practice and Procedure § 5308 at
237-38 (1980); Griffin v. Mashariki, No. 96 CIV 6400, 1997 WL
756914, at *2 (S.D.N.Y. Dec. 8, 1997); Glaze v. G & B Marine,
Inc., No. 95-1845, 1997 WL 20738, at *1 (E.D. La. Jan. 16, 1997)
(Fallon, J.); Collins
**Page 13**
v. Coastline Constr., Inc., No. 92-16, 1992 WL 125328, at *3

(E.D. La. May 25, 1992) (Schwartz, J.); <u>Koch Indus., Inc. v.</u>
<u>Columbia Gas Transmission Corp.</u>, No. 89-2156, 1990 WL 72789, at
*2 (E.D. La. May 29, 1990) (Sear, J.).

"Although litigants cannot shield a settlement agreement from
discovery merely because it contains a confidentiality provision,
or was filed under seal, discovery of such an agreement is only
appropriate if it [is relevant as defined by Fed.R.Civ.P.
**26**(b)]." <u>ABF Capital Mgmt. v. Askin Capital</u>, No. 96 Civ.
2978(RWS), 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000) (Sweet,
J.).

The information sought is reasonably calculated to lead to the
discovery of admissible evidence. Although the settlement
negotiations and agreements, if any, may be inadmissible to prove
liability,**[fn1]** factual information underlying other claims
may be relevant and admissible in the instant action on issues
such as whether defendant had the intent to discriminate based on
race or gender and whether defendant's antidiscrimination
policies were adequate. Fed.R.Evid. **404**(b); <u>Butta-Brinkman v.</u>
<u>FCA Int'l, Ltd.</u>, **164 F.R.D. 475**, **476** (N.D.Ill. 1995).
**Page 14**

Further, I agree with the reasoning of the courts in <u>Wendt v.</u>
<u>Walden Univ., Inc.</u>, No. CIV. 4-95-467, 1996 WL 84668 (D. Minn.
1996), and <u>Kalinauskas v. Wong</u>, 151 F.R.D. 363 (D. Nev. 1993),
that the public interest is better served by permitting discovery
of facts about similar claims against a party in a discrimination
suit despite the private agreements of litigants not to disclose
such information. "While parties have the freedom to contract,
courts must carefully police the circumstances under which
legitimate areas of public concern are concealed. Defendants
should not be able to buy the silence of witnesses with a
settlement agreement when the facts of one controversy are
relevant to another." <u>Wendt</u>, 1996 WL 84668 at *2 (citing
<u>Kalinauskas</u>, 151 F.R.D. at 365-66); <u>accord</u> <u>Channelmark Corp.</u>
<u>v. Destination Prods. Int'l, Inc.</u>, No. 99 C 214, 2000 WL 968818,
at *5 (N.D. Ill. July 7, 2000). The interests of defendant and
the other complainants (if any) in preserving the confidentiality
of their interactions can be served by an appropriate protective
order in this litigation.

**IT IS FURTHER ORDERED** that any settlement agreements or
personnel records produced by defendant to plaintiffs shall be
subject to the following protective order. All information
produced in accordance with this order must be marked and kept
confidential and used only for purposes of this litigation and
must not be disclosed to any one except(a) one individual
non-lawyer representative of each party to this litigation,
**Page 15**
(b) the parties' counsel of record in this action, and (c)
experts retained in connection with this litigation whose
testimony may be presented at trial. All persons to whom such
information is disclosed must sign an affidavit that must be
filed into the record, agreeing to the terms of the protective
order and submitting to the jurisdiction of this court for
enforcement of those terms. If any party seeks to add other terms
to this protective order, counsel must confer immediately and
submit by motion any proposed protective order.

**IT IS FURTHER ORDERED** that defendant must provide plaintiffs with his verification of his original Answers to Interrogatories, his supplemental responses to plaintiffs' first set of discovery requests and his responses to plaintiffs' second set of discovery requests, in conformance with the rulings herein, within ten days of entry of this order.

[fn1] But see Lesal Interiors, Inc. v. Resolution Trust Corp., 153 F.R.D. 552, 561 (D.N.J. 1994) (suggesting that Rule 408 only applies to exclude settlements of the claims at issue in the instant litigation) (citing Bank of Am. Nat'l Trust v. Rittenhouse, **800 F.2d 339** (3d Cir. 1986)).

Copyright © 2006 Loislaw.com, Inc. All Rights Reserved

# EXHIBIT 6

## Loislaw Federal District Court Opinions

OWENS v. SPRINT/UNITED MANAGEMENT COMPANY, (Kan. 2004)

*333 F. Supp.2d 1094*

Cami V. Owens, Plaintiff, v. Sprint/United Management Company, Defendant.

Case No. 03-2371-JWL.

United States District Court, D. Kansas.

August 23, 2004

**West Page 1095**

[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.]
**West Page 1096**

Dennis E. Egan, Stephen J. Dennis, Bert S. Braud, The Popham Law Firm, P.C., Kansas City, MO, for Plaintiff.

Chris R. Pace, Overland Park, KS, Christine F. Miller, James F. Monafo, Husch & Eppenberger, LLC, St. Louis, MO, David M. Eisenberg, Baker, Sterchi, Cowden & Rice, L.L.C., Patrick F. Hulla, John J. Yates, Husch & Eppenberger, LLC, Kansas City, MO, for Defendant.

## MEMORANDUM & ORDER

JOHN LUNGSTRUM, Chief Judge, District

Plaintiff Cami Owens worked for defendant Sprint/United Management Company ("Sprint") in the position of Director of International Service Management ("Director/ISM") from 1997 through September 2002. At that time, Sprint decided to relocate the Director/ISM position from Overland Park, Kansas (where plaintiff resides) to Reston, Virginia and, in doing so, removed plaintiff from the position and assigned a younger male, Scott Barli, to the position. According to Sprint, it removed plaintiff from the position and offered the position to Mr. Barli because plaintiff did not want to relocate to Reston. According to plaintiff, while she advised Sprint that she preferred to remain in Kansas, she ultimately expressed to Sprint that she was willing to relocate to Reston if necessary to keep her current position of Director/ISM. Thus, plaintiff asserts that defendant's stated reason for removing her from the position is pretextual and that Sprint removed plaintiff from the Director/ISM position on the basis of her age in violation of the Age Discrimination in Employment Act, **29 U.S.C. § 621** et seq., and/or on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), **42 U.S.C. § 2000e** et seq. This matter is presently before the court on defendant's motion for summary judgment on
**Page 2**
plaintiff's claims (doc. #79). As set forth in more detail below, the motion is denied.

## I. Facts

   The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Plaintiff, in the Director/ISM position, was responsible for managing the daily operational performance of a company called Equant, one of Sprint's international vendors. Although plaintiff worked and lived in the Kansas City area, Equant was located in Reston, Virginia and the vast majority of the business unit in which plaintiff was employed was located in Reston.**[fn1]** During the summer of 2002, Tim McKinley, the Vice President of Sprint's Business Support Solutions ("BSS") organization (which included plaintiff's ISM department), began making numerous changes to the BSS organization in an effort to obtain better cost efficiencies. As a part of this overall reorganization, Mr. McKinley began considering the possibility of moving the Director/ISM position from Overland Park to Reston because the primary vendor was located in Reston and the majority of the ISM department was already located in Reston.

   On or about September 13, 2002, Mr. McKinley contacted Mike Reilly, plaintiff's supervisor, to discuss whether plaintiff might be willing to relocate to Reston in the event that Mr. McKinley decided to move the Director/ISM position to Reston. Mr. Reilly advised Mr. McKinley that he did not know whether plaintiff would be willing to relocate but that he would
**Page 3**
discuss the situation with her and get back to Mr. McKinley. According to Mr. Reilly, Mr. McKinley told him during this meeting
**West Page 1097**
that another current employee, Scott Barli, would be willing to relocate and fill the position "if need be." Later that day, Mr. Reilly met with plaintiff. According to plaintiff, Mr. Reilly told her that Sprint was considering moving her position, but that it was "nothing firm" and he simply wanted to have a "very informal, off-the-record discussion" with plaintiff about how she would feel about moving to Reston in the event that Sprint decided to move the position there. Plaintiff advised Mr. Reilly that she wanted to talk to her husband about it and that she would give him an answer on Monday.

   On Monday, September 16, 2002, plaintiff advised Mr. Reilly that she preferred to stay in the Kansas City area but that she would relocate to Reston if it was necessary to keep her position. According to plaintiff, she made it clear to Mr. Reilly during this discussion that she would move to Reston if Sprint asked her to do so. She mentioned to Mr. Reilly, however, that she might consider moving to Reston without her family and might ask Sprint to consider allowing her to work in Reston for two weeks each month and in Kansas City for two weeks each month. After meeting with plaintiff, Mr. Reilly sent an e-mail to Mr. McKinley in which he advised Mr. McKinley that plaintiff "really did not want to move" but that she would move without her family if the only other option was getting laid off and facing unemployment. Mr. Reilly also advised Mr. McKinley that plaintiff had proposed a "two weeks here, two weeks there" alternative.

   According to Sprint, Mr. McKinley believed based on Mr. Reilly's e-mail that plaintiff did not want to move and, thus,

the position was offered on September 25, 2002 to Scott Barli, a
younger male who accepted the position immediately. At the time,
Mr. Barli was working on a

**Page 4**

special project for Sprint in Dallas, Texas; the project was
winding up and Mr. Barli was facing a layoff in the near future.
During the same time frame, Josephine Blagovich, an area Vice
President in the BSS organization, advised Mr. McKinley that she
needed someone to help complete various projects for Sprint in
Overland Park. Ms. Blagovich expected the projects (and, thus,
the position) to last approximately three to six months, although
it was possible the position could turn into a permanent
position. Mr. McKinley decided to offer this "special projects"
position to plaintiff because the position was in Kansas City.

On September 26, 2002, Mr. Reilly met with plaintiff and told
her that the Director/ISM position was going to be moved to
Reston and that the position would be filled by Scott Barli.
Plaintiff had not heard anything about the relocation of the
position since her September 16, 2002 meeting with Mr. Reilly. In
other words, plaintiff had not been advised that Sprint had
actually decided to move the position until she was advised that
she was being replaced by Mr. Barli. During the September 26,
2002 meeting, Mr. Reilly informed plaintiff that she would be
given the special projects position and that she would report to
Ms. Blagovich. Mr. Reilly cautioned plaintiff that there were no
guarantees as to the length of the special assignment so she
should begin looking for a permanent position immediately. The
special projects position carried the same benefits and salary as
plaintiff's Director/ISM position.

Plaintiff assumed her new position effective November 1, 2002
and she remained in that position until March 31, 2003, at which
time the position was eliminated in that Sprint had only budgeted
five months for the position. During the time she held the
special projects position, plaintiff made efforts to obtain a
permanent Director position but was unable to obtain such a

**Page 5**
**West Page 1098**

position. On April 1, 2003, plaintiff accepted a Group Manager
position (a position that is below the director-level position
and, consequently, provides a lower salary and fewer benefits)
and she remains in that position. Plaintiff's former Director/ISM
position was eliminated effective October 1, 2003 and Mr. Barli
obtained another director-level position at that time. The duties
that plaintiff and Mr. Barli performed as Director/ISM are now
performed by a Group Manager, the same job title that plaintiff
holds today.

Additional facts will be provided as they relate to plaintiff's
particular claims.

## II. **Summary Judgment Standard**

Summary judgment is appropriate if the moving party
demonstrates that there is "no genuine issue as to any material
fact" and that it is "entitled to a judgment as a matter of law."
Fed.R. C`iv. P. 56(c). In applying this standard, the court

views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union,* **279 F.3d 901**, **904** (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* **259 F.3d 1226**, **1231-32** (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* **144 F.3d 664**, **670** (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* **144 F.3d at 670** (citing *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242**, **248** (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue
**Page 6**
of material fact and entitlement to judgment as a matter of law. *Spaulding,* **279 F.3d at 904** (citing *Celotex Corp. v. Catrett,* **477 U.S. 317**, **322-23** (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.,* **233 F.3d 1242**, **1246** (10th Cir. 2000) (citing *Adler,* **144 F.3d at 671**).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding,* **279 F.3d at 904** (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* **475 U.S. 574**, **587** (1986)); *Anderson,* **477 U.S. at 256**; *Celotex,* **477 U.S. at 324**. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* **477 U.S. at 256**; *accord Eck v. Parke, Davis & Co.,* **256 F.3d 1013**, **1017** (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma,* **218 F.3d 1190**, **1197-98** (10th Cir. 2000) (quoting *Adler,* **144 F.3d at 671**). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams,* **233 F.3d at 1246**.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and in-expensive determination of every action." *Celotex,* **477 U.S. at 327** (quoting Fed.R.Civ.P. **1**); *see also Kaster v. Safeco Ins. Co. of Am.,* 2003 WL 22854633, at *2 (10th Cir. Dec. 3, 2003) (affirming
**Page 7**
**West Page 1099**

the district court's grant of summary judgment in favor of defendant in an ADEA case where the plaintiff had failed to present evidence sufficient for a reasonable jury to conclude that Safeco's employment decisions were age-related); *Young v. White,* 2003 WL 21940941, at *1-2 (10th Cir. Aug. 14, 2003)

(affirming district court's grant of summary judgment in favor of defendant in race discrimination and retaliation context).

### III. Discussion

   Plaintiff asserts that Sprint discriminated against her on the basis of her age and/or her gender when it removed her from the Director/ISM position and placed her in the "special projects" position. The basic allocation of burdens for a disparate treatment claim is set forth in *McDonnell Douglas Corp. v. Green,* **411 U.S. 792** (1973). Under the *McDonnell Douglas* framework, plaintiff has the initial burden of establishing a prima facie case of discrimination, which requires her to show that she is a member of the class protected by the statute; that she suffered an adverse employment action; that she was qualified for the position at issue; and that she was treated less favorably than others not in the protected class or that the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Garrett v. Hewlett Packard Co.,* **305 F.3d 1210**, **1221** (10th Cir. 2002); *Sanchez v. Denver Pub. Schs.,* **164 F.3d 527**, **531** (10th Cir. 1998). If she establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *See Sanchez,* **164 F.3d at 531**. If defendant offers a legitimate, nondiscriminatory reason for its actions, the burden reverts to plaintiff to show that defendant's proffered reason was

**Page 8**

a pretext for discrimination. *See id.*

   Defendant moves for summary judgment on plaintiff's claims, contending first that plaintiff cannot establish a prima facie case of discrimination. Specifically, defendant maintains that plaintiff did not suffer an adverse employment action as a result of Sprint's decision to move Mr. Barli into the Director/ISM position. Sprint also contends that plaintiff cannot show that defendant's legitimate, nondiscriminatory reason for removing plaintiff from the Director/ISM position and reassigning her to the special projects position is pretextual. As explained more fully below, the court concludes that plaintiff has shown the existence of genuine issues of material fact with respect to her prima facie case of age and gender discrimination. Moreover, the court concludes that plaintiff has come forward with sufficient evidence of pretext to survive summary judgment on both claims.

   *A. Plaintiff's Prima Facie Case*

   According to Sprint, summary judgment is warranted on plaintiff's claims because she cannot show that she suffered an adverse employment action as she was "moved into an equivalent director position" as soon as Sprint moved Mr. Barli into the Director/ISM position. The court rejects this argument and readily concludes that genuine issues of material fact exist with respect to whether plaintiff suffered an adverse employment action. While defendant describes plaintiff's new assignment as a "director" position, there is ample evidence in the record that the position was not a director position at all. According to plaintiff, she lost her supervisory responsibilities when she was reassigned to the new position. Although defendant concedes that

plaintiff's
**Page 9**
responsibilities were different in her new position, it contends
that the responsibilities were nonetheless "director level"
responsibilities. Plaintiff testified, however, that she "sat
idle" nearly the entire time
**West Page 1100**
she was in the special projects position because she "was not assigned
anything to do." Fact issues exist, then, with respect to whether plaintiff
had any real responsibilities in her new position.

Moreover, it is uncontroverted that the position, at the time
it was offered to plaintiff, was merely a temporary position and
that, while a possibility existed that the position might evolve
into a permanent position, that possibility never transpired. In
fact, the position was budgeted for only five months and at the
end of the five-month period, plaintiff was essentially forced to
accept a demotion to the Group Manager position after she was
unable to obtain another director-level position. While Sprint
urges that plaintiff's Director/ISM position was also a temporary
position (because the position was eliminated in October 2003),
there is no evidence in the record that at the time Sprint moved
plaintiff into the special projects position Sprint knew that the
Director/ISM position would be eliminated. In other words, the
evidence, viewed in the light most favorable to plaintiff,
demonstrates that at the time Sprint took the employment action
at issue, Sprint was reassigning plaintiff from a permanent
position to a temporary one.

In light of these circumstances, a jury, not the court, must
determine whether plaintiff's reassignment to the special
projects position was an adverse employment action as that phrase
has been interpreted by the Tenth Circuit. *See Stinnett v.
Safeway, Inc.,* **337 F.3d 1213**, **1217** (10th Cir. 2003)
(reassignment may be an adverse employment action when the
employee has less responsibility in the new assignment or is
required to use a lesser degree of skill than his or her
**Page 10**
previous assignment); *Dawson v. Abraham,* 2002 WL 120526, at
*1-2 (10th Cir. Jan. 30, 2002) (fact issues remained as to
whether agency's transfer of employee was adverse employment
action where new position was only temporary and deprived
plaintiff of her previous duties and responsibilities).**[fn2]**
Summary judgment on this issue is denied.

*B. The Pretext Analysis*

As plaintiff has set forth sufficient evidence to permit a jury
to conclude that she suffered an adverse employment action, the
burden shifts to defendant to articulate a legitimate,
nondiscriminatory reason for its decision. *See English v.
Colorado Dep't of Corrections,* **248 F.3d 1002**, **1008** (10th Cir.
2001). According to Sprint, it moved Mr. Barli into plaintiff's
position because plaintiff did not want to relocate or, in
Sprint's words, because plaintiff "was extremely reluctant to
move." Defendant has satisfied its "exceedingly light" burden to
provide nondiscriminatory reasons for its decision. *See Goodwin
v. General Motors Corp.,* **275 F.3d 1005**, **1013** (10th Cir. 2002).

Plaintiff, then, may resist summary judgment only by presenting
evidence that defendant's reason is pretextual (i.e., unworthy
of belief) or by otherwise introducing evidence of a
discriminatory motive. See Danville v. Regional Lab Corp.,
**292 F.3d 1246**, **1250** (10th Cir. 2002) (citing Stone v. Autoliv ASP,
Inc., **210 F.3d 1132**, **1137** (10th Cir. 2000)). Pretext "can
**Page 11**
be shown by such weaknesses, implausibilities, inconsistencies,
incoherencies, or contradictions in the employer's proffered
legitimate reasons for its action that a reasonable factfinder
could rationally find them unworthy of credence and hence infer
that the employer did not act for the asserted non-discriminatory
reasons."
**West Page 1101**
Id. (quoting Morgan v. Hilti, Inc., **108 F.3d 1319**,
**1323** (10th Cir. 1997)). When assessing whether plaintiff has made
an appropriate showing of pretext, the court considers the
evidence as a whole. Id. (citation omitted).

The court concludes that the inferences which properly may be
drawn from the totality of the circumstances set forth in the
record are sufficient for a reasonable jury to conclude that
Sprint's decision to remove plaintiff from the Director/ISM
position and to reassign her to the special projects position was
based, at least in part, on plaintiff's age and/or gender.
Viewing the evidence in the light most favorable to plaintiff,
Mr. McKinley already had Mr. Barli — whose position in Dallas was
about to come to an end — in mind for the Director/ISM position
before anyone even asked plaintiff whether she would be willing
to relocate to Reston. Moreover, during the one and only
discussion that anyone had with plaintiff concerning whether she
might be willing to relocate, plaintiff was informed that no
final decision had been made and that Sprint was simply wanting
an "off the record" sense of how plaintiff would feel about
relocating. Plaintiff testified that she advised Mr. Reilly
during this discussion that she was willing to relocate to
Reston; though she preferred to stay in Kansas City, she would
relocate to keep her position. Indeed, plaintiff had relocated
for Sprint on other occasions and had even moved to Reston on a
prior occasion for Sprint. The evidence reflects that plaintiff
was a solid performer as the Director/ISM. Viewing the evidence
in the light most favorable to plaintiff, then, there was no
reason for Sprint to believe
**Page 12**
that plaintiff, if provided the opportunity to give a final "yes"
or "no" on the relocation question once the decision to move the
position was made, would not move to Reston and continue
performing well in the position.

Sprint, however, never gave plaintiff the opportunity to make a
final decision; indeed, Sprint never advised plaintiff that it
had decided to move her position until after it had replaced her
with Mr. Barli. In such circumstances, particularly as the
evidence suggests that Mr. McKinley had Mr. Barli in mind for the
position before anyone talked to plaintiff about relocating, a
reasonable jury could conclude that Sprint did not provide
plaintiff with an opportunity to give a final answer on the
relocation question because Sprint simply wanted to put Mr. Barli
in that position. Similarly, a reasonable jury could conclude

that Mr. McKinley was inclined to construe any response from
plaintiff (short of an unequivocal affirmative response) as a
"reluctance" or "unwillingness" to relocate (and not give her an
opportunity to give an unequivocal affirmative response) simply
because he needed an excuse to move Mr. Barli in the position
(curiously, an individual who had no experience or background in
the ISM area). To be sure, the court is not suggesting that an
employer as a matter of law must give an employee in every
instance a formal "take it or leave it" offer, but in the absence
of such an exchange occurring between Sprint and plaintiff in
this case, a jury must decide why Sprint removed plaintiff from
the Director/ISM position and reassigned her to the special
projects position.

   Defendant asserts that summary judgment is warranted because
plaintiff admitted in her deposition that she told Mr. Reilly
that she preferred not to move. As explained above, however, this
is not necessarily the same as expressing a "reluctance" or
"unwillingness" to move,
**Page 13**
particularly as plaintiff testified that she clearly advised Mr.
Reilly that she would relocate to Reston to keep her position.
Moreover, when she told Mr. Reilly that she preferred not to move,
she did not realize (because Sprint had not advised her) that
**West Page 1102**
her job was in jeopardy or that Sprint had made a final
decision to move her position to Reston. Plaintiff was speaking
"off the record" as Mr. Reilly had asked her to do. Defendant
also contends that summary judgment in its favor is warranted
because plaintiff has no evidence that Mr. McKinley had an
improper motive when he moved Mr. Barli into the position. In a
related vein, defendant contends that plaintiff must show more
than pretext in this case – she must come forward with
affirmative evidence that her age or sex was a determining factor
in Sprint's decision because her pretext evidence is insufficient
for a jury to find in her favor. The court rejects these
arguments. As set forth above, a reasonable jury could conclude
based on the totality of the circumstances found in the record
that Sprint's motives in moving Mr. Barli into plaintiff's
position and reassigning plaintiff to the special projects
position were discriminatory. No more is required from plaintiff.
*See Reeves v. Sanderson Plumbing Prods., Inc.,* **530 U.S. 133,**
**147** (2000) (evidence of pretext may, together with the elements
of the prima facie case, suffice to show intentional
discrimination); *Randle v. City of Aurora,* **69 F.3d 441,** **451**
(10th Cir. 1995) (because a jury may find illegal discrimination
upon nothing more than a prima facie case and pretext, such a
showing at the summary judgment stage is sufficient to get the
case to the jury).

   Defendant's final argument in support of its motion for summary
judgment is that plaintiff has no evidence that Mr. McKinley did
not honestly believe that plaintiff was reluctant to relocate and
act in good faith upon that belief in deciding to put Mr. Barli
into the Director/ISM position.
**Page 14**
*See Bullington v. United Air Lines, Inc.,* **186 F.3d 1301,** **1318**
(10th Cir. 1999) (the relevant inquiry is not whether defendant's
reasons for its employment decisions were "wise, fair or

correct," but whether defendant "honestly believed those reasons
and acted in good faith upon those beliefs"). Again, the court
disagrees. Plaintiff's evidence is sufficient to show that Mr.
McKinley seized on plaintiff's less-than-enthusiastic initial
reaction to the relocation question as an excuse to put Mr. Barli
in the position, without giving plaintiff a chance to provide an
unequivocal (and quite possibly an affirmative) response. In such
circumstances, a trial is required on plaintiff's claims.

   **IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion
for summary judgment (doc. #79) is denied.

   **IT IS SO ORDERED.**

[fn1] Indeed, Sprint maintains a significant business presence in
Reston although Sprint's headquarters are located in Overland
Park, Kansas.

[fn2] Pursuant to Tenth Circuit Rule 36.3(B)(1), the court cites
this unpublished opinion for its persuasive value.

Copyright © 2006 Loislaw.com, Inc. All Rights Reserved

# EXHIBIT 7

## Loislaw Federal District Court Opinions

SEGARRA v. POTTER, (D.N.M. 2004)

TINA M. SEGARRA, Plaintiff, vs. JOHN E. POTTER, Postmaster General of

the United States, Defendant

No. CIV-02-1413 JB/LFG

United States District Court, D. New Mexico.

April 5, 2004

Hannah B. Best, Hannah Best & Associates, Albuquerque, New Mexico, for
Plaintiff

David C. Iglesias, Michael H. Hoses, Albuquerque, New Mexico, for
Defendant

### MEMORANDUM OPINION AND ORDER

JAMES O. BROWNING, District Judge

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Compel
Discovery and for Sanctions, filed January 28, 2004 (Doc. 35). The
primary issue is whether the Court should compel the Defendant to produce
a witness' personnel file and other documents related to that witness.
Because the Court finds the information relevant and also concludes that
it can protect any confidentiality interests, the Court will grant the
motion in part, set some terms of conditions for disclosure, and deny the
motion in part.

### FACTUAL BACKGROUND

Segarra is a long-term letter carrier for the United States Postal
Service ("USPS"). She is stationed at the Highland Station in
Albuquerque. She has been a union steward for several years.

In 1999, a supervisor named Rosarita Archuleta arrived at Highland
Station and began a campaign of harassment and discrimination against
Segarra. Several witnesses will testify that Archuleta was hostile to
women carriers in general and to Segarra in particular. The union
president, Bill Prestein, will testify that Archuleta garnered an unusual
number of complaints and grievances at Highland Station, was transferred
out in part because of them, and is now accumulating more
**Page 2**
grievances and complaints at her new location. The Defendant denies that
Archuleta was transferred out of Highland Station in part because of the
unusual number of complaints and grievances at that station. See
Defendant's Response to Plaintiff's Interrogatory No. 3. The parties have
therefore put into issue why Archuleta was transferred.

It is Segarra's contention that Archuleta discriminated against her on
the basis of her gender. It is the Defendant's defense that Archuleta
treated men and women the same. It is also Segarra's assertion, supported
by several witness, that Archuleta was vindictive and retaliatory against

those who challenged her misconduct. The Defendant argues that Archuleta had legitimate reasons for her actions against Segarra.

Segarra contends that there is a history of the USPS shielding and transferring renegade and troublesome supervisors. Segarra contends that this practice has caused dire consequences to some of its work force.

### PROCEDURAL BACKGROUND

Segarra served her Interrogatories and Request for Production of Documents on Defendants by mail on November 24, 2003. In discovery, Segarra requested Archuleta's Official Personnel File ("OPF"). See Request for Production No. 1. She also requested the names of people who filed grievances and other complaints, administrative and judicial, against Archuleta or named her as a subject of a complaint during the past five years. See Interrogatory No. 2. She also requested copies of the grievances and complaints. See Request for Production No. 2. Segarra also seeks the names of witnesses who have given statements about this matter and copies of the statements themselves. See Interrogatory No. 4; Request for Production No. 3.

Segarra asserts that the Defendant responded with no substantive information, but with

**Page 3**

boilerplate objections and also objected on the basis of confidentiality. See Defendant's Response to Plaintiff's Request for Production of Documents; Defendant's Response to Plaintiff's Interrogatories. The Defendant has refused to produce Archuleta's OPF, copies of grievances and complaints, or statements regarding the claims and defenses in this case. The Defendant objected to releasing the names of persons who have filed complaints against Archuleta. The Defendant also refused to divulge the names of witnesses who have given statements about this matter on the basis of privilege.

Upon receipt of the Defendant's response, Segarra's counsel wrote the Defendant's counsel, seeking to resolve this discovery dispute. See Letter from Hannah B. Best to Michael Hoses (served January 5, 2004). Segarra's counsel indicated that she would proceed with a motion to compel, but invited the Defendant to obviate the confidentiality concerns by a protective order. Segarra represents that, in a follow-up telephone call, the Defendant's attorney promised to respond to Segarra's January 5, 2004 letter in writing to the offer of a protective order, but did not do so. Segarra argues that the Defendant's conduct is dilatory and in bad faith.

On January 8, 2004, before taking Segarra's deposition, the Defendant's counsel informed Segarra's counsel that Archuleta would not authorize the release of her OPF because it contained confidential information having no bearing on the issues in this case. The Defendant's counsel also informed Segarra's counsel that he had reviewed the OPF and agreed with Archuleta's assessment regarding the contents of her file. As a compromise, the Defendant's counsel offered to submit the Archuleta file to Court for an *in camera* review and inspection to determine whether the OPF contained relevant information or information calculated to lead to the discovery of admissible evidence.

**Page 4**

The Defendant represents that Segarra's counsel rejected this offer. Segarra states that, upon the Defendant's offer to submit the Archuleta

file to the Court for an *in camera* inspection, Segarra's counsel agreed and asked the Defendant's counsel to make the arrangements and confirm them in writing. The Defendant's counsel did not send such a letter or provide written conformation of submission of the OPF to the Court for an *in camera* review.

Accordingly, Segarra proceeded with her motion to compel. Segarra moves the Court to compel the Defendant to produce the discovery she requested and to impose sanctions against the Defendant for necessitating this motion and for not conducting discovery in good faith. The Defendant opposes this motion.

### LEGAL ANALYSIS

### I. THE COURT WILL ALLOW SEGARRA AN EXTENSION OF TIME FOR FILING HER MOTION TO COMPEL, BUT WILL DENY THE MOTION FOR SANCTIONS AS UNTIMELY.

Rule 26.6 of the local rules provides that a party served with objections to an interrogatory or request for production of documents "must proceed under D.N.M.LR-Civ. 37.1 within twenty (20) calendar days of service of an objection unless the response specifies that documents will be produced or inspection allowed." D.N.M.LR-Civ. 26.6. Rule 26.6 also states that: "Failure to proceed within this time period constitutes acceptance of the objection. For good cause, the Court may sua sponte or on motion by a party, change the twenty (20) day period." Id.

Segarra needed to proceed under rule 37.1 by no later than January 21, 2004. Segarra filed her motion, however, on January 28, 2004. The Defendant argues that, because the Motion to Compel Discovery and for Sanctions is untimely, Segarra has accepted the Defendant's objections.

Although the party seeking discovery must bring motions to compel within 20 days of
**Page 5**
receiving timely objections, the rules also require the parties to attempt to make a good faith effort to resolve discovery disputes before the moving party brings the motion. In the interests of justice, and in an attempt to decide the motion on the merits, the Court will consider the motion to compel timely. There is some dispute whether Segarra's counsel thought the Defendant's counsel was working out its objection to the discovery. Segarra's counsel complied with the portion of the rule requiring good faith discussions, but the Defendant may not have kept its promises to cooperate. In any event, Rule 26.6 of the local rules permits the Court to enlarge, for good cause, the twenty day period. See D.N.M. LR-Civ. 26.6. Segarra makes a request for an extension, and the Court will grant an extension for the motion to compel.

The extension of time, however, will not apply to the portion of the motion requesting sanctions. While the Court believes that an extension of time is appropriate with respect to the motion to compel discovery responses, the motion for sanctions presents a different issue. Because the Plaintiff did not comply with the rules, she may not affirmatively invoke those same rules in an effort to punish the Defendant. The Court will deny that portion of the motion without reaching the merits.

### II. THE COURT WILL SUSTAIN THE DEFENDANT'S OBJECTION REGARDING THE PRODUCTION OF EEO COMPLAINTS BASED ON CONDUCT OTHER THAN GENDER DISCRIMINATION AND RETALIATION, BUT WILL OVERRULE THE REMAINDER OF THE DEFENDANT'S OBJECTIONS.

Result #1 Loislaw Federal District Court Opinions SEGARRA v. NORTON D.N.M. Page 4 of 9

Case 1:05-cv-00 ... Court Document 20-9 Filed 09/10/2006 N ... Page 5 of ...

Segarra appears to concede that confidentiality may be a legitimate
objection. In her letter to defense counsel, she suggested that the
Defendant produce the OPF and the names of complainants against Archuleta
pursuant to a protective order. See Letter from Hannah Best to Michael
Hoses. But the Defendant has not provided the Court with legal authority
to support its suggestion that the

**Page 6**

allegedly confidential information is protected in a lawsuit. With
respect to the Defendant's other objections, the Court believes that
there are ways to address the Defendant's concerns and still provide the
Plaintiff with necessary discovery.

## A. REQUEST FOR PRODUCTION NO. 1

In Request No. 1, Segarra seeks the production of Archuleta's OPF. That
Archuleta is a witness in this case may not, alone, justify granting
Segarra automatic access to Archuleta's OPF. See Haselhorst v. Wal-Mart
Stores. Inc., 163 F.R.D. 10, 11 (D. Kan. 1995) (finding that blanket
request for personnel files of any potential witness or other employee
whose name is mentioned in discovery is unwarranted; the mere fact that a
person may be a witness in a case does not automatically warrant access to
their personnel file). The particular claims at issue here, however, may
make the file relevant. Archuleta is more than a witness in this case;
she was originally named as a defendant, and her conduct forms the basis
of the lawsuit. See Complaint for Violation of Civil Rights, filed
November 7, 2002 (Doc. 1) (naming Rosarita Archuleta as defendant in her
official and individual capacities); First Amended Complaint for
Violation of Civil Rights, filed April 18, 2003 (Doc. 6)(same).

> Relevance in the discovery context is quite broad, and
> necessarily so where the central issue concerns the
> motive or intent behind the employment decision, which
> often must be inferred from other facts. . . .[I]t is
> not too strong to say that a request for discovery
> should be considered relevant if there is any
> possibility that the information sought may be
> relevant to the subject matter of the action.

Gatewood v. Stone Container Corp., 170 F.R.D. 455, 458 (S.D. Iowa
1996) (citation and internal quotation marks omitted). Segarra contends
that complaints by other men and women are relevant to both her
discrimination and retaliation claims. She further argues that, being
relevant, the complaints of both men and women are discoverable.

**Page 7**

Segarra maintains that evidence showing a pattern of discrimination
against a protected group is not only discoverable, but admissible. The
Court does not need to decide admissibility on this motion. It is
sufficient here to note that a pattern of preference for one group over
another does not have to compromise the whole picture, but pattern may be
an important piece of the whole picture and relevant to prove state of
mind.

Under Ortiz v. Norton, **254 F.3d 889** (10th Cir. 2001), such pattern
evidence could support an inference that the decision-maker harbored a
bias against female workers which might have affected other decisions,
including the decisions adverse to Segarra. See id. at 896. In Estes v.
Dick Smith Ford. Inc., **856 F.2d 1097** (8th Cir. 1988), overruled on other

grounds by, Foster v. University of Ark., **938 F.2d 111** (8th Cir. 1991),
the United States Court of Appeals for the Eighth Circuit stated:

    Circumstantial proof of discrimination typically
    includes unflattering testimony about the employer's
    history and work practices — evidence which in other
    kinds of cases may well unfairly prejudice the jury
    against the defendant. In discrimination cases,
    however, such background evidence may be critical for
    the jury's assessment of whether a given employer was
    more likely than not to have acted from an unlawful
    motive.

Estes v. Dick Smith Ford. Inc., 856 F.2d at 1103. Thus, information about
claims by other employees of gender discrimination is discoverable and
may be "highly relevant." Rodger v. Electronic Data Systems Corp.,
155 F.R.D. 537, 541 (E.D. N.C. 1994)("[I]n an employment discrimination
context, information regarding prior discrimination suits against the
defendant would be highly relevant to evaluate the defendant's employment
practices as a whole and provide evidence regarding intent and
willfulness."). See Rich v. Martin Marietta Corp., **522 F.2d 333, 344**
(10th Cir. 1975) (finding evidence of employment practices are relevant
when they likely would prove crucial to the
**Page 8**
establishment or rebuttal of a prima facie case); Morrison v. City and
County of Denver, 90 F.R.D. 289, 292 (D. Colo. 1978)("Since direct
evidence of discrimination is rarely obtainable, plaintiffs must rely on
circumstantial evidence and statistical data, and evidence of an
employer's overall employment practices may be essential to plaintiff's
prima facie case.").

    It is sufficient here for the Court to find that such information may
lead to admissible evidence about other witnesses, and evidence of
gender-based bias by the employer and its agents. The United States Court
of Appeals for the Tenth Circuit has held that such evidence is relevant
if reasonably tied to the adverse employment action, and the district
court has discretion under rule 403 to admit the evidence. See Minshall
v. McGraw Hill Broadcasting Co., Inc., **323 F.3d 1273, 1285-86** (10th Cir.
2003); Spulak v. K Mart Corp., **894 F.2d 1150, 1156** (10th Cir. 1990);
Gheesling v. Chater, 162 F.R.D. 649, 651 (D. Kan. 1995). The Court
concludes it might be an abuse of discretion to deny discovery of such
evidence. See Minshall v. McGraw Hill Broadcasting Co., Inc.,
323 F.3d at 1285-86; Spulak v. K Mart Corp.,
894 F.2d at 1156; Gheesling v. Chater,
162 F.R.D. at 651.

    The City challenges the admission of the Rowe verdict
    form under Fed.R.Evid. **404**(b), which generally
    excludes evidence of other acts for the purpose of
    proving a person acted similarly on other occasions.
    See Sanjuan v. IBP, 160 F.3d at 1297. However, "we
    have modified this general rule somewhat in the
    context of employee discharge cases requiring proof of
    discriminating intent." Coletti v. Cudd Pressure
    Control, **165 F.3d 767, 776** (10th Cir. 1999); see
    Sanjuan, 160 F.3d at 1297 (noting that "character
    evidence is admissible in civil trials to show motive
    or intent"). For example, in Sanjuan, we concluded the
    district court correctly applied Fed.R.Evid. **404** when

it admitted testimony of other employees about their
treatment by the defendant employer because the
evidence was relevant to the issue of the employer's
discriminatory intent to mistreat employees following
their work-related injuries. See id; Spulak v. K Mart
Corp., **894 F.2d 1150, 1156** (10th Cir. 1990)(holding,
in an ADEA action, that the district court properly
admitted testimony of other employees as probative of
the defendant's discriminatory intent); Curtis v.
Oklahoma City Pub. Schls. Bd. of Educ., **147 F.3d 1200,
1217** (10th Cir. 1998) (noting that "[t]estimony of
other employees may be relevant in assessing an
employer's retaliatory intent if the testimony
establishes a pattern of retaliatory behavior or tends
to discredit the

**Page 9**

employer's assertion of legitimate motives").

Schneider v. City and County of Denver. 47 Fed. Appx. 517, 525-26, 2002
WL 1938583, *7 (10th Cir. 2002) (footnote omitted). The evidence sought is
thus relevant.

   Segarra contends that, if Defendant did not keep a file on Archuleta,
it should have. Segarra contends that the Defendant should have every
complaint and grievance against this supervisor. Segarra argues that, if
the Defendant did not keep these complaints, the Court should require the
Defendant to do the work to reconstruct the record against her. In Wards
Cove Packing Co., Inc. v. Atonio, **490 U.S. 642** (1989) (litigation ended by
amendment of Title VII § 105 in 1991), the Supreme Court of the United
States acknowledged the difficulty of acquiring such evidence, but
promised that "liberal civil discovery rules give plaintiffs broad access
to employers' records in an effort to document their claims." Id. at
657. To require less could permit a cover-up.

   The Defendant represents that Archuleta's OPF contains, among other
things, her application for employment, health benefits and retirement
election, and pay increases and awards. The Defendant need not produce
these documents. The Defendant also represents, however, that Archuleta's
OPF does not contain a list of USPS employees who have filed union
grievances or EEO disciplinary actions taken against her. The Court
cannot order the Defendant to produce documents that do not exist.

   While the Defendant is still willing to submit a copy of Archuleta's
OPF to the Court for an in camera review to confirm the Defendant's
representations, and to determine whether the OPF contains information
that is relevant or that is calculated to lead to the discovery of
admissible evidence, and while Segarra still accepts this offer, the
Court does not think an *in camera* review of the entire file is the most
efficient procedure at this time. The Defendant should prepare and
produce

**Page 10**

to Segarra a detailed privilege log listing and describing all documents
in Archuleta's file. After reviewing this opinion, and the privilege
log, Segarra should specify the documents she wants. The Defendant should
produce, pursuant to a confidentiality order, the requested documents that
the Court has indicated should be produced. If there is any dispute, on
the confidentiality order, privilege log, or what should be produced, the
parties can contact Ms. K'Aun Sanchez, the Court's Courtroom Deputy, and

the Court will resolve the remaining dispute, perhaps at that time
reviewing *in camera* the remaining documents in dispute.

### B. INTERROGATORY NO. 2/REQUEST FOR PRODUCTION NO. 2

Interrogatory No. 2 asks the Defendant to identify all individuals who
have, within the past five years, filed grievances and/or EEO complaints
against Archuleta. Request for Production No. 2 seeks the production of
those grievances and/or complaints. The Defendant objected to the
discovery on the basis that it was over broad and unduly burdensome. The
Defendant also objected on the basis that the Privacy Act protects the
information sought. As noted above, the Court has determined that the
information sought is relevant or may lead to discoverable information.
The Court will therefore address the Defendant's other objections.

### 1. UNION GRIEVANCES

The Defendant represents that hundreds of union grievances are filed
with the USPS each year. The vast majority of these grievances relate to
matters arising under the Collective Bargaining Agreement between the
USPS and the carriers union — matters having nothing to do with Title VII
and claims of discrimination. Although the USPS maintains copies of all
grievances that are filed, it does not maintain a centralized data base
allowing it to identify complaints against particular supervisors.
Consequently, the USPS would have to manually review all complaints to
identify those
**Page 11**
filed against Archuleta. The Defendant contends that Segarra's request is
unduly burdensome.

As to the request for union grievances, the Court is not convinced this
production is unduly burdensome. The Defendant did not submit any
affidavit to support its contention. The word "hundreds" can mean 200 or
many more. The Court does not know; the Defendant did not meet its burden
of establishing that the request is unduly burdensome. Only two stations
are at issue — the Highland Station and the Uptown Station, to which
Archuleta was transferred after leaving Highland. The Defendant has a
choice. The Defendant can make the review itself or can make the
grievance files for the time period in question available to Segarra for
her review.

The Defendant also objects to this request on the basis that it seeks
information protected by the Privacy Act, **5 U.S.C. § 552a**, which
generally prohibits disclosure of records an agency maintains on
individuals. The Court will overrule this objection. Assuming without
deciding, that grievance files are covered by the Privacy Act, the
Defendant has not offered legal authority for its contention that the
Privacy Act would prohibit their disclosure. The Act lists eleven
exceptions to the general rule precluding disclosure in the absence of
the written consent of the individual to whom the record pertains, one of
which is disclosure "pursuant to the order of a court of competent
jurisdiction." **5 U.S.C. § 552a**(b)-11.

The Defendant has not provided any basis for sustaining its objections.
Accordingly, the Court will overrule the Defendant's objections with
respect to the grievance complaints. The Defendant is ordered to answer
Interrogatory No. 2 and produce documents in response to Request for
Production No. 2.

## 2. EEO COMPLAINTS

Segarra also seeks disclosure of EEO complaints against Archuleta. Archuleta, and perhaps
**Page 12**
the Defendant's attorney, have knowledge of and/or access to such records. The Defendant argues Segarra' request is overly broad because Segarra seeks the identification of all individuals who have filed EEO complaints against Archuleta, regardless of the basis of each complaint. The Defendant does not see how the identification of individuals filing complaints based on protected categories other than those that Segarra assert — gender and retaliation — are relevant or calculated to lead to the discovery of admissible evidence.

The Court agrees that the Defendant should not be required to produce EEO complaints against Archuleta that deal with protected categories other than the ones Segarra asserts in this action. Segarra asserts claims for gender discrimination and retaliation. Complaints based on other types of discrimination are neither relevant nor calculated to lead to the discovery of admissible evidence in this action. Accordingly, the Court will sustain the Defendant's objection to producing complaints related to categories other than gender or retaliation.**[fn1]**

The Defendant also argues that Segarra's request is unduly burdensome. The USPS would have to manually review all EEO complaints on file — approximately 1,500 — to identify all complainants asserting claims against Archuleta. The USPS local EEO office has two employees, Michael Westervelt (EEO Manager) and Lori Foster (Dispute Resolution Specialist). The Defendant contends that, to comply with Segarra's request, Westervelt or Foster will have to spend approximately three days reviewing current and archived records to identify all complaints. The Defendant maintains that Segarra's request is unreasonable.

The fact that USPS employees will have to spend a significant amount of time gathering the
**Page 13**
requested information does not make the request unreasonable. All discovery imposes a cost. The Court overrules the Defendant's objection of unreasonableness.

Finally, the Defendant objects to Segarra's discovery requests on the basis that the Privacy Act protects the information sought. The Defendant also objects on the basis that disclosure would violate the privacy rights of USPS employees requesting anonymity in connection with their EEO activities. Again, the Privacy Act specifically allows for disclosure pursuant to a court order. The Court thus reaches the same conclusion with respect to the EEO complaints that it reached with respect to the union grievances. The Defendant is ordered to answer Interrogatory No. 2 and produce documents in response to Request for Production No. 2.**[fn2]**

**IT IS ORDERED** that the Plaintiff's Motion to Compel Discovery and for Sanctions is granted in part and denied in part:

1. With respect to Archuleta's personnel file, the Defendant shall prepare and produce to the Plaintiff a detailed privilege log listing and describing all documents in the file. The Plaintiff shall then specify what it wants to see. The Defendant shall produce the requested

documents, pursuant to a confidentiality order, that the Court has indicated should be produced. If there is any dispute, on the confidentiality order, privilege log, or what should be produced, the parties can contact Ms. K'Aun Sanchez, the Court's Courtroom Deputy, and the Court will resolve the remaining issues in dispute.

2. With respect to the request for grievances, the Defendant shall make the necessary review and respond to the discovery requests, or make the grievance files for the time period in question available to Segarra for her review.

**Page 14**

3. With respect to the request for EEO complaints, the Defendant shall produce all EEO complaints against Archuleta, filed by either men or women, on the basis of gender discrimination or retaliation. In the alternative, the Defendant may make those complaints available for the Plaintiff to review.

4. With respect to the request for statements concerning the claims and defenses in this matter, the Defendant shall prepare and produce to the Plaintiff a detailed privilege log listing and describing all statements allegedly protected by the attorney client or work product privileges. The Plaintiff shall then specify which statements she believes are not immune from discovery. If the parties are unable to reach an agreement concerning what should be produced, the parties can contact Ms. K'Aun Sanchez, the Court's Courtroom Deputy, and the Court will resolve the remaining issues in dispute.

5. The Court will deny the Plaintiff's request for sanctions.

[fn1] The Court will order the Defendant to produce EEO complaints filed against Archuleta by both men and women.

.

[fn2] The Plaintiff's Interrogatory No. 4 and Request for Production No. 3 requested information concerning all statements given regarding the claims or defenses in this case, as well as copies of the statements themselves. The Defendant objected to these discovery requests and claimed that such statements are protected by the attorney client and attorney work product privileges. Segarra's Memorandum in Support of her motion contains only one line concerning these requests. Neither the Response nor the Reply contain any additional argument on this point. The Court will order the Defendant to produce a privilege log for the statements it believes are protected from discovery on the basis of a privilege. The Plaintiff will then be in a better position to determine whether a dispute exists.

Copyright © 2006 Loislaw.com, Inc. All Rights Reserved

# EXHIBIT 8

## Loislaw Federal District Court Opinions

McCRANE v. MARCONI MEDICAL SYS., INC., (E.D.Pa. 2002)

DIANE McCRANE Plaintiff, v. MARCONI MEDICAL SYSTEMS, INC.,

Defendant.

Civil Action No. 01-1518.

United States District Court, E.D. Pennsylvania.

March 28, 2002.

### MEMORANDUM AND ORDER

**J.M. KELLY, J.**

Presently before the Court are the following: (1) Plaintiff's Motion to Compel Defendants to Answer Certain Interrogatories and Requests for Production of Documents without Objection; (2) Defendant's Motion to Preclude the Admission of Evidence Regarding Damages Claimed in Plaintiff's Pretrial memorandum; and (3) Plaintiff's Motion in Limine to Preclude Certain Witnesses from Testifying at Trial. Plaintiff, Diane McCrane, asserts the following claims in her Complaint against Defendant, Marconi Medical Systems, Inc.: (1) violation of the Family And Medical Leave Act ("FMLA"), **29 U.S.C. § 2601** *et seq.*, (1994); (2) violation of the Americans With Disabilities Act ("ADA"), **42 U.S.C. § 12101** *et seq.*; (3) wrongful discharge under Pennsylvania law; (4) violation of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), **29 U.S.C. § 1161** *et seq.*; and Employee Retirement Income Security Act ("ERISA"), **29 U.S.C. § 1132** *et seq.* After considering the motions, relevant pleadings and evidence, and hearing oral argument made by counsel on March 25, 2002, the Court makes the following ruling.

### BACKGROUND

Plaintiff worked for Defendant **[fn1]** as a customer service employee from March 1997 until September 17, 1999 when she was terminated. On September 9, 1999, while reaching for certain files, Plaintiff stood on a stool in an awkward manner, which caused her knee to give way, causing immediate pain. That morning, Plaintiff went to her doctor, Dr. Edward J. Ciecko, who recommended that Plaintiff remain out of work.

After the date of the injury, it is undisputed that Plaintiff was absent from work until September 17, 1999 when Defendant fired her. The parties, however, differ greatly on what happened during the period between September 9th and September 17th. According to Plaintiff, she was following her doctor's advice to stay home and was in constant touch with her supervisor, Georgeanne Paczkoski ("Paczkoski"). Moreover, Plaintiff claims she requested worker's compensation forms from Paczkoski during their phone conversations but she never received the forms from Defendant. Paczkoski, on the other hand, claims that Plaintiff only called in once during the time period after her injury and termination, and did not inform her as to the exact nature of her injury. Moreover, she denies Plaintiff asked for worker's compensation forms.

It is also undisputed that the termination letter sent to Plaintiff by Defendant cited "job abandonment" as the reason for Plaintiff's termination. Plaintiff, however, claims that Defendant Corporation fired her because she attempted to exercise her lawful rights to pursue worker's compensation benefits. In response to the lawsuit, Defendant claims Plaintiff was fired because she failed to report to work, and failed to provide a physician statement indicating that she was unable to perform her job duties, for six consecutive days, as she had been instructed to do. Defendant also cites a history of poor attendance for firing Plaintiff.

On September 27, 1999, Plaintiff filed for worker's compensation benefits. On November 12, 1999, it was agreed that Plaintiff was entitled to worker's compensation benefits from September 9, 1999, the date of her injury, to October, 4 1999, **[fn2]** the date Dr. Ciecko released Plaintiff to return to work. Plaintiff's knee injury, however, worsened and Plaintiff underwent knee surgery on January 20, 2000. Plaintiff received worker's compensation benefits from January 20, 2000 to April 12, 2000. Due to complications, Plaintiff subsequently underwent a second surgery on August 19, 2000. Plaintiff has been receiving worker's compensation since then. In sum, it is undisputed that Plaintiff received worker's compensation benefits since the date of her injury with the exception of 32 weeks during the relevant period. During those 32 weeks, Plaintiff also received some unemployment compensation benefits. Plaintiff has not been able to find a job since her termination from Defendant Corporation.

On March 29, 2001, Plaintiff filed this lawsuit. Discovery in this case was to conclude October 15, 2001 but by Stipulation and Order, it was extended 60 days until December 15, 2001. The case was placed in the trial pool on February 4, 2002. On March 25, 2002, a hearing was held to hear argument on the various Motions before the Court. Defendant's Motion For Partial Summary Judgment is still pending before this Court. Upon hearing oral argument, the Court determined that the parties still have not resolved several discovery disputes, mainly the failure of both parties to fully disclose and answer the other party's request for interrogatories and production of documents. The Court will address each motion in turn.

## I. MOTION TO COMPEL PRODUCTION OF DOCUMENTS

In Plaintiff's Second Request for Production of Documents, she requested that Defendant produce the following:

All documents referring to the worker's compensation claim which plaintiff Diane McCrane filed against defendant, including all correspondence between defendant and defendant's worker's compensation insurance carrier which reference Diane McCrane and/or her worker's compensation claim.

Defendant answered by stating:

Defendant objects to this request as it requests documents referring to the plaintiff's worker's compensation claim which was filed after plaintiff's termination and which are therefore irrelevant. Defendant also objects to this request as seeking information protected by the attorney-client privilege and disclosure of trial preparation materials beyond

the scope of permissible discovery under
F.R.C.P.(26)(b)(3).

In Plaintiff's Third Request for Production of Documents, she
requested:

1. All attendance records of the seven employees
assigned to the Order Express operation of the Trevose
office from March, 1997 to October 1, 2000.

2. All documents referring to any attendance issues
pertaining to the seven employees assigned to the
Order Express operation of the Trevose office from
March, 1997 to October 1, 2000.

Defendant responded to both requests as follows:

Defendant objects to this request as it seeks
documentation that is irrelevant and may contain
sensitive and/or confidential material which would
implicate privacy interests of individuals not parties
to this lawsuit. Defendant also objects to this
request as overly broad and unduly burdensome.
Documents referring to the attendance of employees
could embrace a broad spectrum of materials in many
different forms. In addition, the OrderExpress
operation which employed plaintiff is no longer in
existence. Therefore a search of the sort requested
would require a review of voluminous number of
documents housed in the state of Ohio with attendant
unreasonable expenditures of time and expense.

Plaintiff rejected Defendant's offer to produce time sheets in
lieu of the attendance records.

### DISCUSSION

Federal Rule of Civil Procedure **26**(b)(1) provides:

Parties may obtain discovery regarding any matter,
not privileged, which is relevant to the subject
matter involved in the pending action . . . . It is
not grounds for objection that the information sought
will be inadmissible at the trial if the information
sought appears reasonably calculated to lead to the
discovery of admissible evidence.

Relevancy under Rule 26(b) is broadly construed. See Oppenheimer Fund,
Inc. v. Sanders, **437 U.S. 340, 351** (1978). The scope of discovery,
however, is not without its limits and is "committed to the sound
discretion of the trial court." Miller v. Hygrade Food Products Corp.,
**89 F. Supp.2d 643, 657** (E.D.Pa. 2000) (citations omitted). Moreover, the
party seeking discovery has the burden of showing relevancy. Id.

### 1. Attendance Records

The Court finds that documents relating to other employee's attendance
records are relevant to the Plaintiff's asserted claims and to
Defendant's asserted defenses. Although Defendant offered time sheets, in

lieu of the attendance records, they do not satisfy the Plaintiff's discovery request as time sheets do not indicate the type of disciplinary actions taken against the other employees similarly situated as the Plaintiff. The Court, however, finds the scope of the Plaintiff's discovery request as to the attendance records overly broad. Therefore, the Court will limit the discovery of documents relating to the attendance records of the seven other employees, to documents dating back to 18 months prior to Plaintiff's discharge. This should suffice to provide Plaintiff with any relevant evidence she seeks and make the production of document less onerous for the Defendant.

Accordingly, the Defendant is ordered, within twenty (20) days of this Order, to produce the requested attendance records of the seven other similarly situated employees, provided the records are available. Considering the records are now located in some warehouse in Cleveland, Ohio, Defendant is directed to make a search of those records using reasonable means and effort. In addition, Defendant is directed to produce the previously offered time sheets, since they may act to supplement the attendance records where none is available or missing. Furthermore, Defendant, may, in the interest of protecting any confidential or privacy concerns of third party individuals, redact social security numbers and any other information Defendant deems confidential. Where disputes arise, the Court will view *in camera* the contested portions of the documents.

## 2. Plaintiff's Worker's Compensation Claim Documents

Defendant objects to Plaintiff's request for documents related to the Plaintiff's worker's compensation claim based on relevancy, attorney-client privilege and redundancy. Documents relating to Plaintiff's worker's compensation claims are clearly relevant to the Plaintiff's claims. At this time, the Court need not discuss attorney-client privilege or work-product privilege because the Court finds that the Defendant has already satisfied the Plaintiff's request for production.

Plaintiff is already in possession of the requested documents. Defendant subpoenaed the relevant records from AIG, Defendant's worker's compensation carrier and the Plaintiff's own worker's compensation attorney. These materials were handed over to the Plaintiff before this Motion was filed. Plaintiff, not satisfied with these documents, further sought copies of the same documents which are in Defendant's files. The production of these copies, however, would be wasteful and redundant. Defendant has represented to this Court that all non-privileged responsive documents have been produced to the Plaintiff. Plaintiff has no basis for insisting on copies of exact same documents, other than hopeful conjecture that the copies in Defendant's files may contain some other non-privileged information that supports Plaintiff's legal theory. As such, Plaintiff's request to compel Defendant to produce copies of documents related to Plaintiff's worker's compensation claim is denied.

## II. EVIDENCE REGARDING DAMAGES

The second motion before the Court relates to Plaintiff's claimed damages in her Pretrial Memorandum, listed as: (1) back-pay; (2) compensatory damages; (3) liquidated damages under the FMLA; (4) punitive damages under the wrongful termination claim; (5) attorney's fees, expert fees and costs under various statutes; and (6) COBRA damages. Defendant seeks to have the Court preclude evidence of the claimed damages on the

following basis: (1) the Plaintiff failed to allege the damages with specificity; (2) the claimed damages are not cognizable under the Plaintiff's claim; (3) the claimed damages were not pleaded in Plaintiff's Amended Complaint; and (4) no evidence has been proffered in support of them. Although this case has already been placed in the trial pool, it is premature to discuss admissibility at this time because the parties are clearly still in the midst of several discovery disputes. As such, the Court will treat this motion as a discovery motion to compel Plaintiff to answer certain interrogatories and produce documents related to Plaintiff's claimed damages and reserve the issue of admissibility at trial for another time.

## DISCUSSION

This Court's Pretrial and Trial Procedures require that Plaintiff include in its Pretrial Memoranda an "itemized statement of damages or other relief sought." Furthermore, Local Civil Rule 16.1(b)(3)(A) specifies that parties seeking damages "shall provide a detailed description of each item and state the amount of damages claimed." The Defendant also specifically requested that Plaintiff provide the Defendant with Plaintiff's claimed damages, the method of computation, and any supporting documentation of the claimed damages. The statement of claimed damages provided by Plaintiff in her Pretrial Memorandum is not specific enough to satisfy this Court's standing order. It also appears from the pleadings and argument at hearing that Plaintiff has not satisfied Defendant's discovery requests.

As such, Plaintiff shall, within ten (10) days of this Order, provide a more detailed, specific list of itemized damages, show the method of computation and list or provide the Defendant with specific documentation, if any, to support the claimed damages as requested by the Defendant's discovery requests. For each item, the Court makes the following notation.

**1. Back-pay**: Both parties agree Plaintiff has been receiving worker's compensation benefits with the exception of 32 weeks of the relevant period. There is also evidence that Plaintiff received unemployment benefits. As agreed by the parties, these amounts will most likely reduce the total amount of back-pay Plaintiff will be claiming. Therefore, the Plaintiff shall provide a summary of the relevant time periods with a breakdown of the amounts claimed for each relevant time period, and show the exact method of computation for the amount of back-pay to which Plaintiff is claiming she is entitled. Plaintiff shall also provide any supporting documentation she has not yet provided to Defendant.

**2. Compensatory Damages**: Plaintiff shall set forth elements of the claimed compensatory damages and show how Plaintiff satisfies each element. Apart from the monetary amount related to pain and suffering, Plaintiff shall provide the method of computation and enumerate in detail the amount and basis for each claimed compensatory damage. Plaintiff shall also provide any supporting documentation she has not yet provided to Defendant.

**3. Liquidated Damages under the FMLA**: Plaintiff shall provide the method of computation and enumerate in detail the amount and basis for the claimed statutory fees.

**4. Punitive damages**: The issue of punitive damages will be addressed in this Court's resolution of Defendant's Partial Summary Judgment Motion

and Leave to Amend Defendant's Partial Summary Judgment Motion, which asks this Court to dismiss Plaintiff's claim for punitive damages.

**5. Attorney's fees, expert fees and costs:** The issue of attorney's fees is not a matter for the jury but within the province of the court. It is, therefore, reserved until the final resolution of the case. On the other hand, Defendant is entitled to information concerning the costs of any expert fees. Plaintiff is ordered to provide the Defendant with information, including any documents, on the past and future costs of any experts it has retained and may possibly use at trial.

**6. $4,800 under COBRA for inferior insurance coverage:** Plaintiff shall produce all documents, including receipts and evidence of payment, related to the alleged inferior insurance coverage Plaintiff was forced to pay for as a result of Defendant's failure to comply with COBRA. Furthermore, the Plaintiff is directed to provide the method of computation and enumerate specifically the amount and basis for the computation of the claimed amounts.

**7. $54,800 of statutory COBRA damages:** Plaintiff shall provide a breakdown of relevant time periods and enumerate specifically the method of computation and show the basis for the computation of the claimed amounts.

### III. PREVIOUSLY UNIDENTIFIED TRIAL WITNESSES

On January 7, 2002, after discovery closed and less than one month before this case was to be placed in the trial pool, Defendant listed eight new trial witnesses in its Pretrial Memorandum. The Defendant seeks to preclude them from testifying at trial. The eight witnesses are Plaintiff's former co-workers who will testify regarding the Plaintiff's "job performance, attendance record, her alleged accident, the time frame following her accident and termination." Defendant did not identify these individuals either in its Self Executing Disclosures or in its response to Plaintiff's Interrogatories.

#### DISCUSSION

Federal Rule of Civil Procedure **26**(e) imposes on litigants a duty to supplement discovery responses. Defendant's argument that Plaintiff had notice merely because the names of these individuals were mentioned by Plaintiff in her deposition is without merit. Defendant should have given notice earlier. As such, this Motion will be treated as a Motion to Compel Defendant to Answer Certain Interrogatories, rather than a motion to preclude witnesses from testifying at trial.

Moreover, this Court's standing Order states that the Pretrial Memorandum is to contain "A list of witnesses to be presented with a brief statement of the nature of their testimony. Witnesses not listed may not be called in the party's case in chief." Defendant's Pretrial Memorandum fails to articulate the specific nature of the proposed witnesses' testimony. Defendant's description of the proposed witnesses' testimony basically encompasses the whole case. Therefore, the information contained in the Plaintiff's Pretrial Memorandum does not satisfy the Plaintiff's obligations.

Therefore, the Court orders Defendant to cure its failure to supplement the Plaintiff's interrogatories and the defect in its Pretrial Memorandum by articulating the exact nature of the proposed witness' testimony and

providing the names, addresses, and phone numbers of each proposed witness
to the Plaintiff within ten (10) days of this Order. Plaintiff shall have
thirty (30) days in which to depose any of those eight witnesses should
it choose to do so after Defendant's submission as directed by this
Court.

### ORDER

**AND NOW**, this day of March, 2002, in consideration of Plaintiff's Motion
to Compel Defendant to Answer Certain interrogatories and Requests for
Production of Documents without Objection (Doc. No. 7); Defendant's
Motion to Preclude the Admission of Evidence Regarding Damages Claimed in
Plaintiff's Pretrial memorandum (Doc. 17); and Plaintiff's Motion In
Limine To Preclude Certain Witnesses From Testifying at Trial (Doc. 18),
the following is **ORDERED**:1. Plaintiff's Motion to Compel Defendant to
Answer

Certain interrogatories and Requests for Production of Documents
without Objection (Doc. No. 7) is **GRANTED** in part and **DENIED** in part.

A. Defendant shall, within twenty (20) days of this Order, produce
attendance records and time sheets of seven other employees at the
Trevose office dating back 18 months from Plaintiff's termination,
September 17, 1999.

B. Plaintiff's motion to compel documents related to Plaintiff's
worker's compensation claim without objection is denied.

2. Defendant's Motion to Preclude the Admission of Evidence Regarding
Damages Claimed in Plaintiff's Pretrial Memorandum (Doc. 17), which the
Court deems as a Motion to Compel Evidence Regarding Damages Claimed in
Plaintiff's Pretrial Memorandum, is **GRANTED** in part and **DENIED** in part.

A. Plaintiff shall, within ten (10) days of this Order, comply
with the instructions in Part II, pages 10-12, of this Memorandum
and Order.

B. Defendant's request for evidence relating to Plaintiff's attorney's
fees incurred in this case is denied.

3. Plaintiff's Motion In Limine To Preclude Certain Witnesses From
Testifying at Trial (Doc. 18), which the Court deems as a Motion
to Compel Defendant to Answer Certain Interrogatories, is **GRANTED**.

A. Defendant is **ORDERED** to provide the Plaintiff with a brief but
specific description of the nature of the intended testimony of each of
the eight witnesses identified in its pre-trial memorandum within 10 days
of the date of this Order.

B. Plaintiff shall have thirty (30) days in which to depose any of
those eight witnesses should it choose to do so after Defendant's
submission as directed by the Court in subparagraph 3A of this Order.

[fn1] At the time Plaintiff worked for Defendant, it was known as Picker
International, Inc. Plaintiff worked at the OrderExpress operation,
located in Trevose, Pennsylvania. Defendant's headquarters are located in
Cleveland Ohio. Subsequent to the filing of this lawsuit, Defendant's
name was changed to Philips Medical Systems Inc. The caption of this case
does not reflect the name change. The parties may file a stipulation if

they choose to change the caption of this case to reflect the latest name change.

[fn2] On October 1, 2000, the operation at the Trevose office which had employed Plaintiff was discontinued. As a result, although Dr. Ciecko released the Plaintiff to return to work on October 4, 1999, Plaintiff's former position as a customer service employee no longer exists at the Trevose office. All other employees at the Trevose office, however, were given the choice of relocating to Cleveland, Ohio.

Copyright © 2006 Loislaw.com, Inc. All Rights Reserved

EXHIBIT 9

**INTERROGATORY NO. 9:**

Please identify by name, business address and occupation any and all individuals who you intend to call to testify as an expert witness at the trial of this action, and please state:

a.   the subject matter on which each such expert witness is expected to testify;

b.   the substance of the facts and opinions to which each such expert is expected to testify; and

c.   a summary of the grounds for each opinion.

**ANSWER NO. 9:**

Verizon has not made a decision regarding the designation of trial experts in this matter. This Answer will be seasonably supplemented in accordance with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court, District of Massachusetts.

**INTERROGATORY NO. 10:**

Please identify by name, address and telephone number all of the witnesses whom the Defendant Verizon Communications Inc. expects to call at the trial and/or hearing of this matter, and state the corresponding substance of the testimony of each such witness.

**ANSWER NO. 10:**

Verizon has not made a decision regarding the designation of witnesses in this matter. This Answer will be seasonably supplemented in accordance with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court, District of Massachusetts.

Without waiving this objection, any or all of the following witnesses may be called to testify at a hearing or trial on this matter:

1.   Kathleen Miller, Plaintiff.

Ms. Miller has knowledge of her claims and the factual basis of her claims. Plaintiff also has knowledge of her medical history and requests for FMLA leave, as well as her attendance and disciplinary history at Verizon.

2.   Plaintiff's treating physicians, nurses and health care providers, including but not limited to:
Connecticut River Internists
Judith Haupt, N.P.
Dr. Adam Blackskin
Dr. Joseph Viadero
Dr. Wesley Green
Dr. William Young

BOS_515067_3/WROSEBUSH

Plaintiff's treating health care providers have relevant knowledge of Plaintiff's health and FMLA leave history, as well as her alleged disability.

3. Deb McDonald, former employee of Verizon

Plaintiff's supervisor during her employment with Verizon. Ms. McDonald has knowledge of Plaintiff's employment history, including Plaintiff's attendance, leave and disciplinary history.

4. Cathy Hanrahan, former employee of Verizon

Supervisor/attendance administrator. Ms. Hanrahan has knowledge of Plaintiff's employment history, including Plaintiff's attendance, leave and disciplinary history.

5. Paula Raposa, Verizon employee

Manager, Attendance Department. Ms. Raposa has knowledge of Plaintiff's attendance, leave and disciplinary history. She also has knowledge of applicable attendance policies and previously submitted an Affidavit concerning the same to the Massachusetts Commission Against Discrimination ("MCAD").

6. Mary Ellen Wood, Verizon employee

Manager. Ms. Wood sent the termination letter to the Plaintiff and signed the Position Statement submitted by Verizon to the MCAD.

7. Paul McGovern, Verizon employee

EEO Management Consultant. Participated in the MCAD proceeding on behalf of Verizon.

8. Verizon's management, including but not limited to:

Hans Peterson
Laurie Mozeleski
Maura Conlan
Mark Beauregard
Sally Sullivan

The identified members of Verizon's management were involved in Plaintiff's union grievances of the progressive discipline she received due to her poor attendance record.

9.    Verizon's Employee Assistance Program, including but not limited to:

    Peter Magner
    Joan Kennedy

    Verizon's EAP. Mr. Magner and Ms. Kennedy have knowledge of Plaintiff's refusal to seek the assistance of the EAP, as instructed, regarding her medical issues and attendance record. Mr. Magner previously submitted an Affidavit concerning the same to the Massachusetts Commission Against Discrimination ("MCAD").

10.    Members/Employees of the Communications Workers of America Union, including but not limited to:

    Melissa Morin, President of local union
    Kristina Santos
    Howard Gilhooly
    Chris Parker
    Janine Baker
    Michelle Wisell

    Union members have knowledge of Plaintiff's leave and disciplinary history, including the grievances of her discipline and termination. They also have knowledge of Plaintiff's refusal to meet with the EAP at Verizon, as she was instructed to do. Some of these members made admissions regarding Plaintiff's attendance, failure to attend the EAP, and Verizon's leniency in disciplining the Plaintiff.

**INTERROGATORY NO. 11:**

    Please describe in as much detail as possible the events and communications leading up to the Plaintiff's last day of employment with the Defendant Verizon Communications Inc., and state:

    a.    the conversations that transpired regarding the same;
    b.    the participants in each such conversation;
    c.    the details of what was said and by whom in each such communication;
    d.    the details of any response(s), verbal and/or non-verbal, to each such communication;
    e.    where the communication occurred and the place where each person involved actually participated;
    f.    the substance of what each party to the communication said; and
    g.    whether any documents exists which set forth, summarize, refer to, or relate to the substance of the communication and, if so, identify such documents and attach them to your answer.

BOS_515067_3/WROSEBUSH