UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHLEEN MILLER, )<br><br>Plaintiff, )<br><br>v. )<br><br>VERIZON COMMUNICATIONS INC., )<br><br>Defendant. ) | Civil Action No. 05-30117-KPN |

## DEFENDANT'S MOTION TO STRIKE AND OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant Verizon Communications Inc. ("Verizon") hereby moves to strike the Plaintiff's Motion to Compel Production of Documents and Answers to Interrogatories ("Motion to Compel") because Plaintiff Kathleen Miller ("Plaintiff") failed to comply with Local Rule 37.1 prior to filing her Motion to Compel.

Verizon also opposes the Motion to Compel on its merits because the discovery is either not in dispute, or the Plaintiff is not entitled to the discovery sought; it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible evidence. This is a relatively straightforward disparate treatment case in which the Plaintiff claims she was terminated because of her alleged disability (diabetes). Plaintiff, however, seeks to turn this case into a pattern and practice/disparate impact case, casting her discovery net so far and wide as to capture the personnel files and purported claims of others going back five years. She does so, however, having never alleged that Verizon engaged in any pattern or practice of discrimination which had any impact on other employees; indeed, all of her allegations focus exclusively on Verizon's purported wrongdoing to her alone. Moreover, disclosure of

information and documents in response to some of Plaintiff's discovery requests would violate the privacy rights of other Verizon employees (or former employees) of Verizon without any compelling reason to do so.

For the reasons set forth herein, Plaintiff's Motion to Compel should be stricken, or alternatively, denied in its entirety.

## SUMMARY OF THE CASE

While Plaintiff alleges that she was discriminated against because of her disability, the written discovery undertaken in this matter, and in the prior proceeding at the Massachusetts Commission Against Discrimination, belies that allegation. To the contrary, the Plaintiff has presented no evidence that she requested a reasonable accommodation for her alleged disability or was retaliated against for the myriad medical and disability leaves she was afforded by Verizon before and after her diagnosis with diabetes in February, 2000. Rather, the evidence clearly demonstrates that the Plaintiff was habitually absent over the entire course of her employment with Verizon (1998 to 2003), including in the years pre-dating her diabetes diagnosis. For the most part, her absenteeism was unrelated to her diabetes. For example, she had absences for pink eye, pulmonary embolism or torn muscle, sore ribs, a contagious parasite caught on vacation, a hoarse voice, injuries resulting from a fall down stairs, and an ovarian cyst. (Chart of attendance issues 1998-2003, VER 0121-0122, attached hereto as **Exhibit A**). Many of these absences – 25 in 1999; 46 in 2000; 65 in 2001; and 34 in 2002 - were unexcused by the Family and Medical Leave Act ("FMLA") or disability leave, and violated Verizon's attendance policy.

Nevertheless, Verizon exercised extreme patience with the Plaintiff, progressively disciplining her for unexcused absences over a lengthy period before finally terminating her in 2003 for violating the attendance policy. (Chart of warnings/discipline (2000-2003), VER 0304-

BOS_528397_1.DOC/WROSEBUSH

0307, attached hereto as **Exhibit B**; Absence/Tardiness Record 2002, VER 0835-0838, attached hereto as **Exhibit C**). As part of that process, Verizon warned and suspended the Plaintiff numerous times for leave not covered by FMLA, disability leave or otherwise excused. (Examples of warnings and suspensions, Miller 0038-0044 and VER0751, attached hereto as **Exhibit D**). Verizon gave the Plaintiff a Final Warning in August, 2002 for attendance violations unrelated to the disability or medical leave she was granted. (**Exh. D**, Miller 0040; Chart for grievance for Final Warning, VER0301-0303, attached hereto as **Exhibit E**). In fact, the Plaintiff's own union representative admitted (in a grievance the Plaintiff filed arising out of her discipline for attendance problems) that Verizon had been lenient in disciplining the Plaintiff and had "bent over backward to help her." (Grievance Fact Sheet, VER 0282-0286, p. 0285, attached hereto as **Exhibit F**). Verizon even went to such lengths as job assigning the Plaintiff to the Employee Assistance Program (the purpose of which was to assist the Plaintiff with attendance issues) as a condition of reducing one of her suspensions; however, the Plaintiff refused to avail herself of the EAP's services. (Affidavit of Peter Magner, VER 0134, and record from disciplinary action, VER 0839, attached hereto as **Exhibit G**).

As further evidence of Verizon's leniency, between the Plaintiff's Final Warning in August 2002 and her termination in February 2003, Verizon granted the Plaintiff FMLA leave on four (4) occasions for a variety of medical complaints, including "stomach," "respiratory problems," being "sick" and being ill, which the Plaintiff reported was "not blood sugar" related. Verizon also refrained from disciplining or terminating the Plaintiff for four (4) additional unexcused absences following her Final Warning in August 2002. (**Exhs. A and B**). On January 22, 2003, Plaintiff left work claiming she had a stomach problem. She failed to return the following day. (**Exh. A**). When the Plaintiff attempted to apply for FMLA leave for these absences (her 5th and 6th unexcused absences following her Final Warning), her claim was denied

because she had failed to work enough hours in the previous twelve (12) months to qualify for FMLA. (Denial Letter 1/23/03, VER 0064, attached hereto as **Exhibit H**). At that point, *after* calling in sick for the sixth time after her Final Warning and being denied FMLA, the Plaintiff retroactively sought to use vacation or personal time to excuse her January 22 and 23, 2003 absences. She was not permitted to do so in accordance with Verizon's policies. In fact, the Plaintiff's union representative conceded at the grievance procedure for these absences that the substitution of vacation time for sick time after the fact was not permitted. (Grievance Fact Sheet, VER 0296, attached hereto as **Exhibit I**). Therefore, the Plaintiff was terminated effective February 11, 2003 as a result of unsatisfactory attendance and failure to comply with Verizon's attendance policy. (Termination letter, VER 0066, attached hereto as **Exhibit J**).

Now, the Plaintiff seeks to establish her disability discrimination and retaliation claims, for which she has proffered no direct evidence, by seeking discovery about the personnel files, disabilities, and discrimination claims (if any) of numerous other employees over an extended period of time. On January 4, 2006, Verizon properly and timely asserted its objections to the Plaintiff's discovery requests of this genre: the requests, quite simply, constitute a fishing expedition and irrelevant sidetrack. On February 27, 2006, Plaintiff's counsel sent a letter via facsimile (and received by mail on March 1, 2006) to counsel for Verizon purportedly pursuant to Local Rules 7.1 and 37.1, requesting supplementation of Verizon's discovery responses and asking Verizon's counsel to contact him after she had an opportunity to review the correspondence, "so that we may schedule a telephonic discovery conference." (Correspondence from Plaintiff's counsel to Verizon's counsel, attached hereto as **Exhibit K**). At the close of the letter, Plaintiff's counsel contradicted his earlier instructions to review the correspondence and schedule a telephonic conference, and demanded that Verizon's counsel respond to the letter "within the next two business days so that we may narrow the areas of disagreement and ideally

resolve these issues short of the need for the Plaintiff to file a Motion to Compel." (**Exh. K**).
Such instructions do not comport with the requirements of Local Rule 37.1 because it is the
Plaintiff's burden to schedule and conduct a Rule 37.1 conference.

On March 10, 2006, counsel for Verizon sent Plaintiff's counsel an e-mail
acknowledging the February 27, 2006 correspondence and indicating an intent to respond
shortly. (E-mail communication, 3/10/06, attached hereto as **Exhibit L**). An hour later, without
any telephone conference or further discussion as proposed in the Plaintiff's correspondence --
and as required by Local Rule 37.1 -- Plaintiff filed her Motion to Compel. (ECF Notification of
the filing of the Motion to Compel, attached hereto as **Exhibit M**). Despite Verizon's requests
that the Motion be withdrawn, Plaintiff's counsel refused. (E-mail communications dated
3/10/06 through 3/14/06, attached hereto as **Exhibit N**).

<div align="center">

**ARGUMENT**

</div>

I.     **PLAINTIFF'S MOTION TO COMPEL SHOULD BE STRICKEN IN ITS
       ENTIRETY FOR FAILURE TO COMPLY WITH LOCAL RULE 37.1.**

Plaintiff has failed to comply with Local Rule 37.1, which requires counsel seeking to
compel discovery to arrange for and conduct a conference in order to narrow issues of dispute
prior to filing a motion to compel pursuant to Fed. R. Civ. P. 37. Rather than doing so,
Plaintiff's counsel sent a letter asking Verizon's counsel to review his correspondence and to
contact him once the review was complete to arrange for a discovery conference. While counsel
for Verizon took ten (10) days (rather than the seven (7) days permitted) to respond to Plaintiff's
counsel's correspondence, during that period of time, both parties were trying to arrange for the
depositions of five (5) witnesses (which had been postponed a number of times by the Plaintiff's
counsel and once by mutual agreement). Between March 1, 2006 and March 10, 2006 (when the
Motion to Compel was filed), counsel for the parties exchanged numerous telephone calls and e-

<div align="center">

- 5 -

</div>

mails pertaining to the depositions. At no time did either party raise the Plaintiff's request for supplemental discovery responses.

Rather than engage in a dialogue in response to Verizon's correspondence (**Exh. L**), Plaintiff's counsel filed the Motion to Compel an hour later. (**Exh. M**). Thereafter, Verizon requested that Plaintiff withdraw the Motion, which was not in keeping with Local Rule 37.1 (not to mention the professional and courteous manner in which the litigation had proceed until that time). The Plaintiff refused. (**Exh. N**).

These actions do not comply with the letter or spirit of Local Rule 37.1. Accordingly, the Court should strike Plaintiff's Motion to Compel.

## II. PLAINTIFF'S MOTION TO COMPEL SHOULD BE DENIED BECAUSE SHE IS NOT ENTITLED TO THE DISCOVERY SOUGHT.

### A. Information and Documents Relating to Disability Or Retaliation Claims Made or Filed By Other Employees Are Irrelevant to the Plaintiff's Claims, Unduly Burdensome and Not Likely to Lead to the Discovery of Admissible Evidence in Plaintiff's Case.[1]

---

[1] The disputed discovery in this category includes the following:

**REQUEST NO. 1**
Copies of any and all documents and correspondence relating and/or referring to disability and/or handicap discrimination claims and/or retaliation claims made and/or filed against the Defendant Verizon Communications Inc. in the last ten years.

**RESPONSE NO. 1**
Verizon objects to this Request on the ground that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the Plaintiff has not alleged a disparate impact theory of liability, nor is her claim based upon an alleged pattern or practice of discriminating against employees with alleged disabilities. Rather, Plaintiff's claim is based upon her individual termination from Verizon. Other disability claims against Verizon, to the extent that they exist and/or are meritorious, are not relevant to the Plaintiff's claim. Therefore, this Request exceeds the scope of discovery permitted by Fed. R. Civ. P. 26. Verizon further objects on the ground that this Request seeks information protected from disclosure by the attorney-client privilege and the work product doctrine. Without waiving these objections, Verizon responds as follows: Verizon has produced copies of all non-privileged documents and correspondence relating to or referring to Plaintiff's disability or retaliation claims [**VER0001-1224**].

**REQUEST NO. 2:**
Copies of any and all documents, correspondence, records and/or video and/or audio tape relating and/or referring to statements relating to disability and/or handicap discrimination claims and/or retaliation claims made by employees at Verizon Communications Inc. during the Plaintiff's employment with the Defendant Verizon Communications Inc. to the present.

BOS_528397_1.DOC/WROSEBUSH

According to the Plaintiff, "claims of discrimination and/or retaliation, especially in the same geographic location as that of the Plaintiff's employment, is expected to provide circumstantial evidence of discriminatory animus." (**Exh. K**, p. 4). Additionally, the Plaintiff claims that the information sought "is expected to show a pattern or practice of discrimination and/or retaliation." (**Exh. K**, p. 5). However, the Plaintiff's position that she needs this evidence to prove her claim contradicts the rather simple theory of liability set forth in Plaintiff's Complaint and her Motion to Compel. According to the Plaintiff's Complaint, the "Plaintiff was wrongly and illegally denied her requests for reasonable accommodation as a qualified handicapped person, [and terminated] in violation of state and federal law." (Complaint, ¶¶ 9, 15). Additionally, "management of [Verizon] made statements that led the Plaintiff to believe

---

**RESPONSE NO. 2:**

Verizon objects to this Request on the ground that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the Plaintiff has not alleged a disparate impact theory of liability, nor is her claim based upon an alleged pattern or practice of discriminating against employees with alleged disabilities. Rather, Plaintiff's claim is based upon her individual termination from Verizon. Other disability claims against Verizon, to the extent that they exist and/or are meritorious, are not relevant to the Plaintiff's claim. Therefore, this Request exceeds the scope of discovery permitted by Fed. R. Civ. P. 26. Verizon further objects on the grounds that this Request seeks information protected from disclosure by the attorney-client privilege and the work product doctrine. Without waiving these objections, Verizon responds as follows: Verizon has produced copies of all non-privileged documents and correspondence relating and/or referring to Plaintiff's disability and/or handicap discrimination claims and/or retaliation claims **[VER0001-1224]**.

**INTERROGATORY NO. 20:**

Please identify all handicap and/or disability discrimination and/or retaliation claims filed against the Defendant Verizon Communications Inc. in the last ten years, and state:
a.  the name, address, job title and telephone number of each complaining party;
b.  the forum in which each such complaint was filed, including internally with the Defendant;
c.  the date of the filing of each such complaint;
d.  the outcome of each such complaint; and
e.  the attorney representing each such complaining party, if applicable.

**ANSWER NO. 20:**

Verizon objects to this Interrogatory on the ground that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Verizon is a national company with thousands of employees. Moreover, Plaintiff has not alleged a disparate impact theory of liability, nor is her claim based upon an alleged pattern or practice of discriminating against employees with alleged disabilities. Rather, Plaintiff's claim is based upon her individual termination from Verizon. Other disability or retaliation claims against Verizon, to the extent that they exist and/or are meritorious, are not relevant to the Plaintiff's claim. Therefore, this Interrogatory exceeds the scope of discovery permitted by Fed. R. Civ. P. 26. Verizon further objects on the ground that this Interrogatory seeks information protected from disclosure by the attorney-client privilege and the work product doctrine.

BOS_528397_1.DOC/WROSEBUSH

that her requests for leave for her handicap and disability upset them" (Complaint, ¶ 13), and therefore, "Plaintiff believes that she was retaliated against based on her handicap and disability and for taking leave for her handicap and disability." (Complaint, ¶ 14). The Plaintiff's Memorandum in Support of her Motion to Compel similarly describes her claim. (Plaintiff's Memorandum, "Background and Nature of the Case", pp. 1-2).

While the Plaintiff's Motion to Compel goes to great lengths to recast her allegations as a pattern and practice claim, the Plaintiff's allegations, at best, constitute wrongful termination/retaliation and failure to accommodate claims. Such claims do not justify the burdensome and costly discovery the Plaintiff now seeks. "Despite the generally held view that liberal discovery should be permitted in actions alleging unlawful discrimination, the scope of discovery is not without limits. The responses sought must comport with the traditional notions of relevancy and must not impose an undue burden on the responding party. Discovery should be tailored to the issues involved in the particular case." Robbins v. Camden City Board of Ed., 105 F.R.D. 49, 55 (D. N. J. 1985)(internal citations omitted).

Nowhere in the Plaintiff's Complaint or in the Motion to Compel does the Plaintiff identify any evidence even remotely suggesting a pattern or practice of discrimination by her supervisors against handicapped individuals in the Springfield office of Verizon. For example, nowhere does Plaintiff allege – nor can she within the confines of Rule 11 -- that her supervisor treated similarly situated handicapped employees unfairly or took action against other employees for taking disability leave. The Plaintiff's Motion also relies on case law relevant to disparate impact cases to seek broad discovery in this case, see e.g. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657 (1989). Unlike Ward, the Plaintiff here cannot to point to any allegation suggesting disparate impact. To the contrary, Plaintiff does not allege that the attendance policy or any other policy or practice in Verizon's Springfield office adversely affected handicapped

individuals in the Plaintiff's position. Plaintiff did not raise any claims of disparate impact or a pattern and practice of discrimination at the administrative level either. (EEOC/MCAD Charge of Discrimination, VER 0254-57, attached hereto as **Exhibit O**). She should not be permitted to raise inferences out of thin air now, or be permitted extensive discovery in a vain attempt to prove such baseless claims. See Russell v. Enterprise Rent-A-Car Co., 160 F.Supp.2d 239, 257-58 (D. R.I. 2001).

Despite the fact that the Plaintiff's administrative claim and her Complaint raise straightforward claims of disparate treatment, retaliation and failure to accommodate, the Plaintiff now asks the Court to compel Verizon to identify any other claims of handicapped discrimination and retaliation brought against Verizon in the last ten (10) years, and to produce documents and correspondence that may refer or relate to those claims. Apparently conceding that the originally propounded discovery was unreasonable, the Plaintiff unilaterally narrowed the discovery sought regarding claims of handicapped discrimination and retaliation to the Plaintiff's location of employment (the Springfield office of Verizon) and for the last five years. (**Exh. K**, p. 4-5). However, even taking this constriction into consideration, the requested discovery still far exceeds what is reasonable. Moreover, the cases cited by the Plaintiff, do not justify the discovery sought.[2]

---

[2] For example, in Marchese v. Secretary, Civ. Act. No. 03-3082 (E. D. LA. October 12, 2004), pp. 4-6, Exhibit 5 to Plaintiff's Memorandum of Law, the discovery sought and permitted is unclear. Nevertheless, the Louisiana court recognized that broad requests for claims of discrimination for excessive periods of time are not warranted. While the district court granted the Motion to Compel in part, it recognized that courts must set reasonable boundaries on the type of discovery permissible in a particular case, balancing the needs and rights of the plaintiff and the defendant. This includes limiting discovery to the particular type of discrimination alleged in the complaint, to a reasonable period of time, and to the unit where the supervisor and the plaintiff worked. In Segarra v. Potter, Civ. Act. No. 02-1413 (D. N. M. 2004), also cited by the Plaintiff, the district court in New Mexico allowed discovery of other discrimination claims against a particular supervisor where the Plaintiff alleged that the supervisor was "vindictive and retaliatory against those [employees] who challenged her conduct," pp. 1-2, Exhibit 7 to Plaintiff's Memorandum of Law. Here, no similar allegation has been made by the Plaintiff against any supervisor in the Springfield office which would justify this type of discovery.

BOS_528397_1.DOC/WROSEBUSH

Rather, the discovery, if permitted would be extremely burdensome to Verizon, and is not justified in light of the Plaintiff's allegations, both before this Court and at the administrative level. In the five-year period for which Plaintiff seeks discovery about claims made or filed against Verizon alleging disability discrimination or retaliation, there were between approximately 45 and 80 employees in the Springfield office at any one time. In order for Verizon to respond to this discovery request, it would have to first determine the identity of every employee that worked in that office over the last five years, then determine whether any person who worked in the Springfield ever "made or filed" a claim of disability discrimination or retaliation and, if so, if there are any documents in Verizon's possession, custody or control relating and/or referring to disability discrimination or retaliation claims.

Even if Verizon could overcome the logistical and financial burden of searching for such claims and related documents and correspondence, the discovery sought is irrelevant to the Plaintiff's claims. Her rise and fall on: 1) whether she is a qualified handicapped person who requested and was denied a reasonable accommodation; and 2) whether she was retaliated against for taking FMLA/disability leave. Whether other employees have asserted claims – meritorious or frivolous - against Verizon in the last five years – meritorious or frivolous – has no bearing on whether Verizon denied the Plaintiff's request for an accommodation or retaliated against the Plaintiff for taking disability leave. Verizon should not be required to bear the burden of responding to such a broad request without an offer of proof that it is actually relevant to this case. See Fed. R. Civ. P. 26(b)(2)(discovery may be limited where the burden or expense of the proposed discovery outweighs its likely benefit to the case, taking into account the needs of the case, the amount in controversy, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues).

BOS_528397_1.DOC/WROSEBUSH

Moreover, even if the information sought by the Plaintiff could be easily identified and produced, its probative value is clearly outweighed by its undue prejudice to Verizon. The allegations, defenses, witnesses, and circumstances of other cases, vary greatly. Correspondence and documents pertaining to such claims would have no evidentiary value in proving (or disproving, for that matter) the Plaintiff's claim. Allowing the Plaintiff to engage in time consuming discovery of these irrelevant and tangential issues simply is not warranted.

## B.    Verizon Has Already Produced, and Plaintiff Already Had, Copies of All Policies Applicable Concerning Her Claims.[3]

---

[3] The disputed discovery in this category includes the following:

**REQUEST NO. 9:**
Copies of any and all documentation and correspondence relating and/or referring to the written and/or verbal policies and procedures of the Defendant Verizon Communications Inc. concerning disability and/or handicap discrimination and/or retaliation in the last ten years.

**RESPONSE NO. 9:**
Verizon objects to this Request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Therefore, this Request exceeds the scope of discovery permitted by Fed. R. Civ. P. 26. Without waiving these objections, Verizon responds as follows: Verizon has produced the following documents in response to the Plaintiff's Request: Verizon's Job Brief for the Plaintiff's position **[VER0053-0055]**; Verizon's [Bell Atlantic's] attendance policy, "North Guidelines Attendance – New England"**[VER0108-119; VER1161-1178]**; Verizon New England, Inc./Communications Workers of America's vacation policy **[VER0136-138]**; Verizon's Equal Opportunity & Zero Tolerance Policy **[VER1028-1032]**; Verizon's Code of Business Conduct **[VER1033-1123]**; and Verizon's Disability Benefit Plans **[VER1124-1160]**.

**REQUEST NO. 10:**
Copies of any and all documentation and correspondence relating and/or referring to the policies and procedures of the Defendant Verizon Communications Inc. concerning disability and/or handicap discrimination and/or retaliation that applied to the Plaintiff while she was employed with the Defendant Verizon Communications Inc.

**RESPONSE NO. 10:**
Verizon objects to this Request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Therefore, this Request exceeds the scope of discovery permitted by Fed. R. Civ. P. 26. Without waiving these objections, Verizon responds as follows: Verizon has produced the following documents in response to the Plaintiff's Request: Verizon's Job Brief for the Plaintiff's position **[VER0053-0055]**; Verizon's [Bell Atlantic's] attendance policy, "North Guidelines Attendance – New England"**[VER0108-119; VER1161-1178]**; Verizon New England, Inc./Communications Workers of America's vacation policy **[VER0136-138]**; Verizon's Equal Opportunity & Zero Tolerance Policy **[VER1028-1032]**; Verizon's Code of Business Conduct **[VER1033-1123]**; and Verizon's Disability Benefit Plans **[VER1124-1160]**.

**INTERROGATORY NO. 12:**
Please describe in as much detail as possible all written policies and/or procedures of the Defendant Verizon Communications Inc. with regard to discrimination based upon handicap and/or handicap discrimination, disability and/or disability discrimination, and/or the Family and Medical Leave Act which were in place during the time that the Plaintiff was employed with the Defendant Verizon Communications Inc., including in your answer when, where and how any such policies and/or procedures were posted, and attach any and all such policies and/or procedures to your answer.

BOS_528397_1.DOC/WROSEBUSH

Had Plaintiff initiated a Local Rule 37.1 conference, all issues involving Verizon's policies could have easily been resolved.     The Plaintiff's request for all disability discrimination/retaliation policies in the last ten (10) years and correspondence regarding those policies that applied to the Plaintiff while she was employed with Verizon was overly broad. Plaintiff apparently is willing to narrow the request.     However, Verizon has already responded by providing all of the policies in its possession which applied to discrimination/retaliation claims, as well attendance at Verizon during the Plaintiff's employment.     Moreover, the Plaintiff herself identified these policies in her discovery responses, as well as the "Equal Opportunity/Zero Tolerance Policy Toolkit" and "Eyes on Diversity & Business Compliance: Affirmative Action and Equal Opportunity Handbook."     The fact that the Plaintiff produced the policies to the Defendant in the course of discovery should answer any question about whether or not the Plaintiff received these policies or knew that they applied to her.     Moreover, other documents produced in discovery also establish that the Plaintiff was aware of Verizon's attendance policy. (See, e.g. **Exhs. C** and **D**).

---

**ANSWER NO. 12:**
Pursuant to Fed. R. Civ. P. 33(d), Verizon refers the Plaintiff to the following documents, which were produced by Verizon in response to Plaintiff's First Request for Production of Documents: Verizon's Job Brief for the Plaintiff's position **[VER0053-0055]**; Verizon's [Bell Atlantic's] attendance policy, "North Guidelines Attendance – New England"**[VER0108-119; VER1161-1178]**; Verizon New England, Inc./Communications Workers of America's vacation policy **[VER0136-138]**; Verizon's Equal Opportunity & Zero Tolerance Policy **[VER1028-1032]**; Verizon's Code of Business Conduct **[VER1033-1123]**; and Verizon's Disability Benefit Plans **[VER1124-1160]**.

**INTERROGATORY NO. 13:**
Please describe in as much detail as possible all verbal/oral policies and/or procedures of the Defendant Verizon Communications Inc. with regard to discrimination based upon handicap and/or handicap discrimination, disability and/or disability discrimination, and/or the Family and Medical Leave Act which were in place during the time that the Plaintiff was employed with the Defendant Verizon Communications Inc., including in your answer when such policies and/or procedures were in place and how such policies and/or procedures were conveyed to employees of the Defendant.

**ANSWER NO. 13:**
Please refer to Verizon's Answer to Interrogatory No. 12.

BOS_528397_1.DOC/WROSEBUSH

All of the policies produced by Verizon applied to the Plaintiff during her tenure. The Zero Tolerance Policy took effect in May, 2001; the union contract took effect on August 6, 2000; and the Disability Benefits Plan took effect in January, 2001. The Code of Conduct was in place following Verizon's formation, in 2000. The Toolkit and the Handbook produced by the Plaintiff, applied to managers (Plaintiff was not a manager) in charge of receiving complaints and complying with Verizon's anti-discrimination policies during the Plaintiff's employment. Therefore, there is no dispute regarding the relevant policies applicable to the Plaintiff and her claims, Plaintiff's attempt to manufacture one, notwithstanding.

Verizon does not have responsive documentation pertaining to "verbal policies." The anti-discrimination and attendance policies were all written, not verbal. To the extent that the practice in the Springfield office varied from the written policies, if at all, employees were notified of those differences in writing.

## C.    Plaintiff Is Not Entitled to The Personnel, Payroll Records, Time Sheets, Attendance Records and Other Information Pertaining to the Disabilities of All Employees in the Springfield Office.[4]

---

[4] The disputed discovery in this category includes the following:

**REQUEST NO. 12:**
Copies of any and all documentation and correspondence relating and/or referring to employees hired, contracted or otherwise directed by the Defendant Verizon Communications Inc. to perform work for the Defendant that was in any way similar to and/or the same as any and/or all of the duties performed by the Plaintiff as an employee for the Defendant Verizon Communications Inc., including but not limited to payroll records and personnel files of all such employees and/or persons in the last five years.

**RESPONSE NO. 12:**
Verizon objects to this Request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the request seeks all documentation and correspondence relating to all Verizon employees who performed Plaintiff's customer service duties for the last five years. Verizon is a national company with thousands of employees. As such, this Request is unduly burdensome and not likely to lead to the discovery of relevant information. Therefore, this Request exceeds the scope of discovery permitted by Fed. R. Civ. P. 26.

Even assuming Verizon could readily identify these employees, Verizon objects on the ground that this Request seeks personnel and payroll records of employees other than the Plaintiff. This information is protected from disclosure by the privacy statute in Massachusetts, Mass. Gen. Laws ch. 214, §1B. Moreover, personnel records are specifically excluded from the category of documents subject to public disclosure. Mass. Gen. Laws ch. 4, § 7(c). A release of this information by Verizon may constitute a substantial interference with an employees' right to privacy, and could subject Verizon to liability.

BOS_528397_1.DOC/WROSEBUSH

Without waiving these objections, Verizon responds as follows: Verizon has produced all non-privileged documents relating to Plaintiff's requests for family and medical leave and disability leave, her attendance record, disciplinary record, grievance record, termination, and MCAD claim, as well as applicable Verizon policies **[VER0001-1224]**.

**REQUEST NO. 14:**
Copies of any and all personnel files and time sheets and attendance records and/or similar such documents relating to all employees who were in the same and/or similar position and/or who handled the same and/or similar job responsibilities as the Plaintiff in the last five years.

**RESPONSE NO. 14:**
Verizon objects to this Request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the request seeks all documentation and correspondence relating to all Verizon employees who performed Plaintiff's customer service duties for the last five years. Verizon is a national company with thousands of employees. As such, this Request is unduly burdensome and not likely to lead to the discovery of relevant information. Therefore, this Request exceeds the scope of discovery permitted by Fed. R. Civ. P. 26.

Even assuming Verizon could identify these employees, Verizon objects on the ground that this Request seeks personnel and payroll records of employees other than the Plaintiff. This information is protected from disclosure by the privacy statute in Massachusetts, Mass. Gen. Laws ch. 214, §1B. Moreover, personnel records are specifically excluded from the category of documents subject to public disclosure. Mass. Gen. Laws ch. 4, § 7(c). A release of this information by Verizon may constitute a substantial interference with an employees' right to privacy, and could subject Verizon to liability.

Without waiving these objections, Verizon responds as follows:Documents relevant to Plaintiff's attendance record have been produced **[VER0057-60; VER0064; VER0066; VER0102-106; VER0121-134; VER0282-307; VER0634-983]**.

**INTERROGATORY NO. 15:**
Please identify all handicapped and/or disabled employees whose employment was terminated at the location in which the Plaintiff was employed in the last fives years versus non-handicapped and/or non-disabled employees terminated in the last five years and state their corresponding names, addresses, telephone numbers, job titles, and reasons given for termination.

**ANSWER NO. 15:**
Verizon objects to this Interrogatory on the ground that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Interrogatory seeks all documentation and correspondence relating to the "identity of all...disabled employees whose employment was terminated at the location in which the Plaintiff was employed in the last five years versus...non-disabled employees terminated in the last five years..." Verizon is a national company with thousands of employees. As such, this Interrogatory is unduly burdensome and not likely to lead to the discovery of relevant information.

Moreover, the Plaintiff has not alleged a disparate impact theory of liability, nor is her claim based upon an alleged pattern or practice of discriminating against employees with alleged disabilities. Rather, Plaintiff's claim is based upon her individual termination from Verizon. Verizon's termination of other employees (and the reason for those terminations) is irrelevant to the Plaintiff's claim, and not likely to lead to the discovery of admissible evidence. Therefore, this Interrogatory exceeds the scope of discovery permitted by Fed. R. Civ. P. 26.

Even assuming Verizon could readily identify all employees it terminated for the last five years who worked in Ms. Miller's location, Verizon objects on the ground that this Interrogatory seeks private personnel information concerning employees other than the Plaintiff. This information is protected from disclosure by the privacy statute in Massachusetts, Mass. Gen. Laws ch. 214, §1B. Moreover, personnel records are specifically excluded from the category of documents subject to public disclosure. Mass. Gen. Laws ch. 4, § 7(c). A release of this information by Verizon may constitute a substantial interference with an employees' right to privacy, and could subject Verizon to liability.

BOS_528397_1.DOC/WROSEBUSH

Verizon further objects on the ground that this Interrogatory seeks information protected from disclosure by the attorney-client privilege and the work product doctrine.

**INTERROGATORY NO. 16:**
Please identify all handicapped and/or disabled employees who were subject to adverse action other than the termination of their employment at the location in which the Plaintiff was employed in the last five years versus non-handicapped and/or non-disabled employees subjected to adverse action other than the termination of their employment at the location in which the Plaintiff was employed in the last five years and state their corresponding names, addresses, telephone numbers, job titles, and reasons given for termination.

**ANSWER NO. 16:**
Verizon objects to this Interrogatory on the ground that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Interrogatory seeks the identity of "all…disabled employees who were subject to adverse action other than termination of their employment at the location in which the Plaintiff was employed in the last five years versus…non-disabled employees…in the last five years…" Verizon is a national company with thousands of employees. As such, this Interrogatory is unduly burdensome and not likely to lead to the discovery of relevant information.

Moreover, the Plaintiff has not alleged a disparate impact theory of liability, nor is her claim based upon an alleged pattern or practice of discriminating against employees with alleged disabilities. Rather, Plaintiff's claim is based upon her individual termination from Verizon. Verizon's discipline, transfer or other actions pertaining to other employees (and the reason for those actions) are irrelevant to the Plaintiff's claim, and are not likely to lead to the discovery of admissible evidence. Therefore, this Interrogatory exceeds the scope of discovery permitted by Fed. R. Civ. P. 26.

Even assuming Verizon could readily identify all employees "who were subject to adverse action" for the last five years who worked in Ms. Miller's location, Verizon objects on the ground that this Interrogatory seeks private personnel information concerning employees other than the Plaintiff. This information is protected from disclosure by the privacy statute in Massachusetts, Mass. Gen. Laws ch. 214, §1B. Moreover, personnel records are specifically excluded from the category of documents subject to public disclosure. Mass. Gen. Laws ch. 4, § 7(c). A release of this information by Verizon may constitute a substantial interference with an employees' right to privacy, and could subject Verizon to liability.

Verizon further objects on the ground that this Interrogatory seeks information protected from disclosure by the attorney-client privilege and the work product doctrine.

**INTERROGATORY NO. 18:**
Please describe in detail by name, address, telephone number, job title and job duties, all employees hired, contracted or otherwise directed by the Defendant Verizon Communications Inc. to perform work for the Defendant Verizon Communications Inc., after the Plaintiff's termination of employment, which work was in any way similar to any and/or all of the duties performed by the Plaintiff as an employee for the Defendant Verizon Communications Inc., and attach to your answer all related documents identifying such persons (including but not limited to payroll records and the personnel files of all such employees).

**ANSWER NO. 18:**
Verizon objects to this Interrogatory on the ground that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Interrogatory seeks the identity of all employees hired by Verizon to perform work similar to the work performed by the Plaintiff after her termination. Verizon is a national company with thousands of employees. As such, this Interrogatory is unduly burdensome and not likely to lead to the discovery of relevant information.

Even assuming Verizon could readily identify these employees, Verizon objects on the ground that this Interrogatory seeks private personnel information, including the payroll records and personnel files of employees other than the Plaintiff. This information is protected from disclosure by the privacy statute in Massachusetts, Mass. Gen. Laws ch. 214, §1B. Moreover, personnel records are specifically excluded from the category of documents

BOS_528397_1.DOC/WROSEBUSH

Through the various interrogatories and document requests identified in footnote 4, the Plaintiff seeks to require Verizon to provide private information and documentation concerning all of the employees in Verizon's Springfield office from between 5 and 10 years ago (or from the time of Plaintiff's termination) to the present. Such information includes personnel files/information, payroll records/information, attendance records/information, *disciplinary records/information, information and records on the disabilities of employees, and information and records on the requested accommodations* granted to those employees. Additionally, the Plaintiff wants Verizon to determine of who was "disabled" and who was "non-disabled" for each employee who worked in the Springfield office in the requested time period and then disclose their physical/medial condition, the accommodations they requested, whether the

---

subject to public disclosure. Mass. Gen. Laws ch. 4, § 7(c). A release of this information by Verizon may constitute a substantial interference with an employees' right to privacy, and could subject Verizon to liability.

**INTERROGATORY NO. 21:**
Please identify all employees of Verizon Communications Inc. by name and job title that were or are considered handicapped and/or disabled, and/or physically impaired, and/or to have or have had a medical condition, at the location where the Plaintiff was employed in the last ten years, identify the respective handicap, disability, physical impairment and/or medical condition, and state whether such employees requested an accommodation for their respective handicap, disability, physical impairment and/or medical condition, identifying any accommodation requested, the date of the request and state whether the accommodation was granted.

**ANSWER NO. 21:**
Verizon objects to this Interrogatory on the ground that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Interrogatory seeks the identity of "all employees of Verizon Communications Inc. by name and job title that were or are considered handicapped and/or disabled, and/or physically impaired, and/or to have or have had a medical condition, at the location where the Plaintiff was employed in the last ten years." As such, this Interrogatory is unduly burdensome and not likely to lead to the discovery of relevant information. Verizon is not in a position of identifying which, if any, of the employees who have worked at Ms. Miller's location in the last ten years were regarded as having a disability or otherwise had a medical condition which may qualify them as disabled.

Even assuming Verizon could readily identify these employees, Verizon objects on the ground that this Interrogatory seeks private personnel and medical information concerning employees other than the Plaintiff. This information is protected from disclosure by the privacy statute in Massachusetts, Mass. Gen. Laws ch. 214, §1B. Moreover, personnel records are specifically excluded from the category of documents subject to public disclosure. Mass. Gen. Laws ch. 4, § 7(c). In addition, to the extent an employee provided medical information to Verizon, it is protected from disclosure by HIPPA. A release of this information by Verizon may constitute a substantial interference with an employees' right to privacy and a violation of HIPPA, and could subject Verizon to liability.

BOS_528397_1.DOC/WROSEBUSH

accommodations were granted, and whether the employees (disabled or not) were subject to an "adverse employment action" or termination.

Such discovery is, on its face, not only ambiguous and onerous, but also impossible to comply with. As set forth above, the Springfield office had between 45 and 80 employees during the time periods identified in the Plaintiff's discovery requests. These employees had different titles, responsibilities and supervisors. Moreover, the employees with responsibilities similar to those of the Plaintiff worked in a pool to answer customer calls. Employees hired after the Plaintiff were not hired to replace the Plaintiff *per se*, but were hired to work in the pool. Therefore, it would be impossible to comply with the request for information on the employee(s) who "replaced" the Plaintiff, and it would be unduly burdensome to produce the requested information for each of the employees hired in the Springfield office after the Plaintiff's termination (February 2003) to the present.

More importantly, this sweeping discovery request infringes on the privacy rights of all of the employees who worked in the Springfield office for the period identified in the Plaintiff's discovery. Courts in Massachusetts have consistently recognized that individuals have a heightened privacy interest in their personnel records[5], which employers have a duty to protect. Bratt v. Int'l Business Machines Corp., 392 Mass. 508, 518 (1984); Whittingham v. Amherst College, 164 F.R.D. 124, 127 (D. Mass. 1995); Skelley v. Trustees of Fessenden School, 1994 WL 928172, *8 (Mass. Super. 2002)(Brassard, J.). That is because "personnel files contain perhaps the most private information about an employee within the possession of an employer." Whittingham, 164 F.R.D. at 127. A release of information from a personnel file may constitute a substantial interference with that right to privacy. Bratt, 392 Mass. 508, 518 (1984); Skelley,

---

[5] The privacy statute in Massachusetts, Mass. Gen. Laws ch. 214, §1B, is applicable to the personnel records and other private information sought by the Plaintiff. Personnel records are also excluded from the category of documents subject to public disclosure. Mass. Gen. Laws ch. 4, § 7(c).

BOS_528397_1.DOC/WROSEBUSH

1994 WL 928172, *8. Here, the Plaintiff wants not only demographic information, but personnel records, payroll information, *information about employees' medical conditions and disabilities, accommodations they requested and/or were granted*, attendance records, time cards and their *disciplinary records along with their contact information* essentially for every employee who worked in the Springfield office. In short, she seeks the most sensitive information about Verizon's employees.

This Court in Whittingham recognized that a plaintiff is not entitled to an order requiring a defendant to "hand over entire files of employees without any particularized showing that any, let alone all, of the information therein is relevant to [the Plaintiff's] claims." 164 F.R.D. at 127. Where a Plaintiff has made no real showing that a group of employees suffered similar treatment or that there was a pattern or practice of discrimination, the Plaintiff is not entitled to such discovery. Id. Even in disparate treatment cases, "discovery has been limited to employees within certain work units who *have suffered similar treatment as the plaintiff.*" Id. (emphasis added). In order for the Plaintiff to be entitled to the records of employees in order to compare herself to them for purposes of demonstrating disparate treatment, she has the burden of identifying other employees in the Springfield office who were similarly situated to the Plaintiff "in terms of performance, qualifications and conduct [i.e. attendance], without such differentiating or mitigating circumstances that would distinguish their situations." Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994)(internal quotation marks and citations omitted). Here, the Plaintiff has not identified any such employee.

Furthermore, the cases Plaintiff relies on are inapposite to this case. For example, in McCrane v. Marconi Medical Systems, Inc., Civ. Act. No. 01-1518 (E. D. Pa. 2001), Exhibit 8 to Plaintiff's Memorandum of Law, the plaintiff asked for the personnel records of seven particular employees assigned to a specific operation for a period of three years. The court limited that

request to a period of 18 months before the plaintiff's termination and permitted the defendant to redact confidential information. Similarly, in <u>Garrett v. City and County of San Francisco</u>, 818 F.2d 1515 (9th Cir. 1987), the plaintiff sought the production of personnel records for 16 specifically identified employees in order to show disparate treatment based on race. Neither of these cases applies to the claims Plaintiff has asserted against Verizon (failure to accommodate/wrongful termination/retaliation) or to the discovery she seeks, which would include the records of at least 45-80 unspecified employees, whom the Plaintiff has failed to demonstrate are similarly situated to her.

While discovery may be broad, the Plaintiff must still demonstrate that the personnel records she seeks are more than marginally relevant, and that her purported need for the records outweighs the privacy interests of the individuals whose records are sought. <u>Whittingham</u>, 164 F.R.D. at 127-28. The Plaintiff can make no such demonstration here. She has not identified a single employee in the Springfield office who allegedly suffered similar discriminatory treatment by the same supervisor(s), let alone a pattern or practice of discrimination in that office or by those decision makers. Therefore, she is not entitled to burden Verizon with this discovery or invade the privacy of dozens of employees who work (or have worked) in Verizon's Springfield office over the last 5 to 10 years.

**D.    Identification of Witnesses and Acceptance of Service of Deposition Notices and Trial Subpoenas.**

In Interrogatory No. 17, the Plaintiff asked the defendant to identify witnesses with discoverable information and "asks that the Defendant delineate which of the identified individuals it will accept service of deposition and/or trial subpoenas on behalf of, and for those individuals identified who the Defendant will *not* accept such service, to please provide the Plaintiff with their last known addresses and telephone numbers." Verizon does not take issue with this request. It has already accepted service of deposition notices on behalf of the five (5)

BOS_528397_1.DOC/WROSEBUSH

witnesses that the Plaintiff seeks to depose, including former employees.    When Plaintiff identifies those witnesses to whom she will issue a trial subpoena, Verizon either will agree to accept service of the subpoena on the witness(es)' behalf, or advise the Plaintiff of their last known addresses and telephone numbers.    However, Verizon should not be required to engage in this exercise until after its Motion for Summary Judgment has been ruled upon.    Here again, had Plaintiff's counsel simply conferenced with Verizon's counsel prior to filing the instant motion, he could have avoided burdening the Court with this non-dispute.

## CONCLUSION

For the reasons set forth herein, Verizon respectfully requests that the Plaintiff's Motion to Compel be stricken, or alternatively, denied in its entirety.

VERIZON COMMUNICATIONS INC.,

By its attorneys,
____/s/ Windy L. Rosebush_____
Timothy P. Van Dyck, (BBO #548347)
Windy L. Rosebush, (BBO #636962)
EDWARDS ANGELL PALMER &
DODGE LLP
111 Huntington Avenue

Dated: March 27, 2006                              Boston, MA 02199

## CERTIFICATE OF SERVICE

I, Windy L. Rosebush, hereby certify that on March 27, 2006, I caused a copy of the foregoing document to be served on Michael O. Shea, Esq., 451 Main Street, Wilbraham, MA 01095, by filing the same electronically.

____/s/ Windy L. Rosebush_____

BOS_528397_1.DOC/WROSEBUSH

# Exhibit A

VER 0121

| date | attendance issue | reason per 1477 (attendance record) | FMLA approval/denial | discipline |
|------|------------------|--------------------------------------|----------------------|------------|
| 12/18/1998 | 1st day absent | fever | not eligible (new hire) | |
| 1/25/1999 | 1st day absent | stomach virus | not eligible | |
| 3/15/1999 | 1st day absent | went hm sick -- no details | not eligible | |
| 5/19/1999 | 1st day absent | sick -- no details | not eligible | written warning 6/7/99 |
| 8/10/1999 | 1st day absent | sick -- no details | FMLA aproved | |
| 10/25/1999 | 1st day absent | sore throat | FMLA approved | |
| 11/19/1999 | tardy | no reason given | n/a | |
| 11/23/1999 | 1st day absent | left work ill -- no details | FMLA approved | |
| 12/27/1999 | 1st day absent | no details | FMLA approved | |
| 2/16/2000 | 1st day absent | stomach virus | FMLA approved | |
| 4/3/2000 | 1st day absent | diabetes level high | FMLA denied | written warning 5/26/00 |
| 5/23/2000 | 1st day absent | stomach | FMLA approved | |
| 6/19/2000 | 1st day absent | pink eye | FMLA approved | |
| 7/27/2000 | left work early | not feeling well | n/a | |
| 7/28/2000 | tardy | no reason given | n/a | |
| 8/2/2000 | 1st day absent | diabetes w/complications to meds | FMLA approved | |
| 8/23/2000 | 1st day absent | pulmonary embolism or trn mscle | FMLA approved | |
| 8/31/2000 | 1st day absent | sore ribs | FMLA approved | suspension -- CHECK |
| 10/3/2000 | 1st day absent | blood sugar, diarrhea | FMLA approved | |
| 10/16/2000 | 1st day absent | stomach | FMLA approved | |
| 11/13/2000 | 1st day absent | problems with diabetes | FMLA approved | |
| 12/6/2000 | 1st day absent | problems with glands | FMLA approved | |
| 12/18/2000 | 1st day absent | flu | FMLA approved | |
| 12/29/2000 | 1st day absent | stomach upset | FMLA approved | |
| 1/15/2001 | 1st day absent | stomach upset | FMLA approved | |
| 2/5/2001 | 1st day absent | sick - migraine | FMLA denied | written warning, changed to verbal 3/30/03 |
| 2/14/2001 | 1st day absent | | FMLA approved | |
| 3/23/2001 | left work early | vomiting | FMLA approved "3/22/01" | |
| 3/26/2001 | 1st day absent | contageous parasite from trip | FMLA approved per 1477 | |
| 4/16/2001 | 1st day absent | migraine | FMLA approved | |
| 4/20/2001 | tardy | no reason given | FMLA denied | counseled for tardiness |
| 5/8/2001 | 1st day absent | sick -- no details | FMLA approved | |
| 5/16/2001 | 1st day absent | stomach, possibly due to meds | FMLA approved 5/17/01 | |
| 5/22/2001 | 1st day absent | | intermittent FMLA approval | |
| 6/4/2001 | 1st day absent | | intermittent FMLA approval | |
| 6/15/2001 | 1st day absent | | intermittent FMLA approval | |
| 6/22/2001 | left work early | sick | n/a | Suspended 1 day |
| 6/23/2001 | 1st day absent | sick -- no details | FMLA denied "6/22/01" | |
| 7/9/2001 | 1st day absent | vomiting | FMLA denied | no action taken -- see 1477 7/30/01 |
| 7/24/2001 | left work early | sick after appointment | n/a | no action taken |
| 8/2/2001 | 1st day absent | possible strep throat -- swollen glands | FMLA denied | Suspension -- 5 days; union withdrew grievance |
| 8/3/2001 | left work early | ill | n/a | no action taken |
| 8/16/2001 | 1st day absent | no reason given | FMLA denied | no action taken -- see 1477 7/30/01 |

VER 0122

| Date | Event | Reason | FMLA | Action |
|---|---|---|---|---|
| 9/18/2001 | tardy | cold | n/a | no action taken |
| 9/18/2001 | left work early | ill | n/a | no action taken |
| 9/20/2001 | 1st day absent | "called with hoarse voice" | FMLA denied | Suspension -- 30 day, amended to 20 days |
| 12/4/2001 | left work early | ill | n/a | no action taken |
| 12/31/2001 | left work early | flu | n/a | no action taken |
| 3/5/2002 | | | | job assigned to EAP |
| 3/18/2002 | left work early | headache | n/a | no action taken |
| 3/21/2002 | 1st day absent | head, sinus cold | FMLA approved | |
| 4/10/2002 | 1st day absent | hurt back falling down stairs | FMLA denied | Suspension -- 14 days |
| 5/29/2002 | left work early | ill | n/a | no action taken |
| 6/18/2002 | left work early | emergency room | n/a | no action taken |
| 6/19/2002 | 1st day absent | ovarian cyst | FMLA denied | Suspension -- 30 days -- final warning given |
| 10/10/2002 | went home ill | stomach | n/a | no action taken |
| 10/15/2002 | went home ill | no reason given | n/a | no action taken |
| 10/16/2002 | went home ill | "sick" | n/a | no action taken |
| 10/17/2002 | 1st day absent | "not blood sugar" | FMLA approved | |
| 11/4/2002 | went home ill | stomach | n/a | no action taken |
| 11/5/2002 | 1st day absent | stomach | FMLA approved | |
| 11/21/2002 | 1st day absent | respiratory problems | FMLA approved | |
| 12/11/2002 | 1st day absent | sick | FMLA approved | |
| 12/30/2002 | went home ill | ill | n/a | no action taken |
| 1/22/2003 | went home ill | | n/a | see next entry |
| 1/23/2003 | 1st day absent | stomach | FMLA denied | Terminated effective 2/11/03 |

**Exhibit B**

Kathleen Miller
NCSD 6/22/98
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

| Date | Day of Week | Reason | FMLA/FCL Approved/Denied | Discipline |
|---|---|---|---|---|
| **2000** | | | | |
| 2/16 – 2/29 DS | | | FMLA APPROVED | |
| 4/3 DS | | | FMLA APPROVED | Written Warning done on 5-26-00 |
| 5/23 – 5/25 DS | | | FMLA APPROVED | |
| 6/19, 6/21 DS | | | FMLA APPROVED | |
| 7/27 AP 5.5 hrs | | | | |
| 7/28 6 min tardy | | | | |
| 8/2 – 8/4 DS | | | FMLA APPROVED | |
| 8/6 – 8/18 STRIKE | | | | |
| 8/23 – 8/25 DS | | | FMLA APPROVED | |
| 8/31 DS | | | FMLA APPROVED | SUSPENSION – on 9-16 (suspended 9-6 – 9-15) |
| 10/3, 10/4 DS | | | FMLA APPROVED | |
| 10/16 DS | | | FMLA APPROVED | |
| 11/13 – 11/15 DS | | | FMLA APPROVED | |
| 11/26 15 min tardy | | | | |
| 12/6, 12/7 DS | | | FMLA APPROVED | |
| 12/18 – 12/21 DS | | | FMLA APPROVED | |
| 12/29 DS | | | FMLA APPROVED | |
| **2001** | | | | |
| 1/15 – 1/19 DS | | | FMLA APPROVED | |
| 2/5 – 2/9 DS | | | FMLA denied | Verbal Warning (was originally written warning but changed per 01SD103. 3-30-01 |
| 2/14 – 2/16 DS | | | FMLA APPROVED | |
| 3/23 AP 4. hrs | | | | |
| 3/26 – 3/28 DS | | | FMLA | |

VER 0304

Kathleen Miller
NCSD 6/22/98
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

| Date | Day of Week | Reason | FMLA/FCL Approved/Denied | Discipline |
|---|---|---|---|---|
| 2000 | | | | |
| 2/16 – 2/29 DS | | | FMLA APPROVED | |
| 4/3 DS | | | FMLA APPROVED | Written Warning done on 5-26-00 |
| 5/23 – 5/25 DS | | | FMLA APPROVED | |
| 6/19, 6/21 DS | | | FMLA APPROVED | |
| 7/27 AP 5.5 hrs | | | | |
| 7/28 6 min tardy | | | | |
| 8/2 – 8/4 DS | | | FMLA APPROVED | |
| 8/6 – 8/18 STRIKE | | | | |
| 8/23 – 8/25 DS | | | FMLA APPROVED | |
| 8/31 DS | | | FMLA APPROVED | SUSPENSION – on 9-16 (suspended 9-6 – 9-15) |
| 10/3, 10/4 DS | | | FMLA APPROVED | |
| 10/16 DS | | | FMLA APPROVED | |
| 11/13 – 11/15 DS | | | FMLA APPROVED | |
| 11/26 15 min tardy | | | | |
| 12/6, 12/7 DS | | | FMLA APPROVED | |
| 12/18 – 12/21 DS | | | FMLA APPROVED | |
| 12/29 DS | | | FMLA APPROVED | |
| 2001 | | | | |
| 1/15 – 1/19 DS | | | FMLA APPROVED | |
| 2/5 – 2/9 DS | | | FMLA denied | Verbal Warning (was originally written warning but changed per 01SD103. 3-30-01 |
| 2/14 – 2/16 DS | | | FMLA APPROVED | |
| 3/23 AP 4. hrs | | | | |
| 3/26 – 3/28 DS | | | FMLA | |

VER 0305

| | | | | |
|---|---|---|---|---|
| | | | APPROVED | |
| 4/16, 4/17 DS | | | FMLA APPROVED | |
| 4/20 15 min tardy | | | | **Counseled for Tardiness** |
| 5/8 – 5/10 DS | | | FMLA APPROVED | |
| 5/22 DS | | | FMLA APPROVED | |
| 6/4 – 6/6 DS | | | FMLA APPROVED | |
| 6/15 – 6/20 DS | | | FMLA denied | **Written Warning** done on 7-5-01 |
| 6/22 AP 4.0 hrs | | | | |
| 6/23 DS | | | FMLA APPROVED | |
| 7/9, 7/10 DS | | | FMLA denied – but no action taken see 7-30 note | |
| 7/24 AP 3.5 hrs | | | | |
| 8/2 DS | | | FMLA denied | **Suspension (5 days) done on 8-23-01 (**union withdrew this at 3rd step)** |
| 8/3 AP 3.5 hrs | | | | |
| 8/16 – 8/22 DS | | | FMLA denied | On 9-4-01 Final FMLA denial received, decision made not to suspend – see notes |
| 9/18 11 min tardy | | | | |
| 9/18 AP 2.75 hrs | | | | |
| 9/20 DS | | | FMLA denied | **Suspension (30 days) done on 10/5/01** (** union grievance settlement 10 days given back) |
| 12/4/01 AP 3.25 hrs | | | | |
| 12/31/01 AP 3.5 hrs | | | | |
| 2002 | | | | |
| 3/5/02 Job assigned to EAP | | | | |
| 3/18 AP 3.5 hrs | | | | |
| 3/21 – 3/27 DS | | | FMLA APPROVED | |
| 4/10 – 4/12 DS | | | FMLA denied | **Suspension (14 days) done on 4-25-02** |

**VER 0306**

| | | | | |
|---|---|---|---|---|
| 5/29 AP 3.25 hrs | | | | |
| 6/18 AP 6.5 hrs | | | | |
| 6/19 – 6/21 DS | | | FMLA denied | Suspension (30 days) done on 7-8-02 **FINAL WARNING** |
| 10/15 AP 3.5 hrs | | | | |
| 10/16 AP 4.0 hrs | | | | |
| 10/17 – 10/30 DS | | | FMLA APPROVED | |
| 11/4 AP 3.75 hrs | | | | |
| 11/5 – 11/8 DS | | | FMLA APPROVED | |
| 11/21 – 11/25 DS | | | FMLA APPROVED | |
| 12/11 – 12/16 DS | | | FMLA APPROVED | |
| 12/30 AP 1.5 hrs | | | | |
| 2003 | | | | |
| 1/22/03 APS 5.75 hrs | | | | Suspension Done on 2/10/03 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**VER 0307**

Exhibit C

# Verizon Employee Absence/Tardiness Record

**Year** 2002

| Employee | KATHLEEN MILLER | | Social Security No | 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 | Title | SERV REP | Work Location | 295 WORTHINGTON ST    SPRINGFIELD CSSC | Net Credited Service date | June 22, 1998 |
| Residence - Street No./ Name | 17 LORITA LANE | | | | City | NORTHFIELD | State MA | Zip Code 01360 | Telephone No. | 413-498-0078 |

| Day of the Month | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | Absence Days | Occ | Tardy Occ | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | H | APX 7.5 | | | | | APX 7.5 | ABT 2 | | | | | | | | APX 3 | APX 7.5 | | | ANX 7.5 | | | | | | | | | V 7.5 | V 7.5 | V 7.5 | 0 | 0 | 0 | Jan |
| | V 7.5 | | | | | ABT 2.5 | ABT 1.5 | V | | ABT 2.75 | ABT 1 | ABT 3.5 | ABT 2 | ABT 0.5 | | | | H | ABT | APX 1 | APX 2 | | | APX 1.5 A 2.0 | | | | | | | | 0 | 0 | 0 | Feb |
| | | | | | | | | | | | | ABT 1 | | | | | | AP 3.5 | ABT 1.5 | A 1.5 | DS FS | DS FS | DS FS | DS FS | DS FS | ABT 1 | | | | | 5 | 0 | 0 | Mar |
| | | | | ABT 1.5 | | | | | ABT 4.75 | DS | DS | DS | | | X | ABT 3.5 | | | | | du | SI 7.5 | SI 7.5 | SI 7.5 | SI 7.5 | SI 7.5 | | | | | 3 | 0 | 0 | Apr |
| | SI 7.5 | SI 7.5 | SI 7.5 | | | SI 7.5 | SI 7.5 | SI 7.5 | SI 7.5 | SI 7.5 | | SI 7.5 | | X | | A 1.5 | | | | | | ABT 3 | | H | | AP 3.25 | A 2 | | | | | 3 | 0 | 0 | May |
| | | | | | | A 4.5 | | H | | | | | | | | APS 6.5 | DS | DS | DS | | X | APJ 7.5 | | | | | | | | | 3 | 1 | 0 | Jun |
| | | | | | H | | | | SI | SI | SI | SI 4.25 | | SI | SI | SI | | | | SI | SI 1 | SI | SI | SI | SI | SI | SI | SI | | | 0 | 0 | 0 | Jul |
| | SI | SI | | | SI | SI X | X | | | | | | | | | | | | ABT 1.25 | 2 | | | | | | | | | | | 0 | 0 | 0 | Aug |
| | H | | | | | | 1 | | | V | V | V | V | | 3 | | | | | | | | | | | | | | | | 0 | 0 | 0 | Sep |
| | | | 2 | | | | | AP 3.5 | | | | FH | AP 4 | DS FS | DS FS | DS FS | DS FS | 4 | IBF | IBF | | | IBF | IBF | IBF | X | | 11 | 0 | 0 | Oct |
| | | | AP 3.75 | IBF X (relapse) | IBF | IBF | IBF | | | 3 | ABT 1.5 | X | | | | | | | IBF (relapse) | IBF | IBF | 5 | IBF | du | X | H | FH X | | | 8 | 0 | 0 | Nov |
| | | | | A 1.5 | 4 | | | | DS FS | DS FS | DS FS | | DS FS | X | | | | | | HC 6 | H | | | | | AP 1.5 | | 4 | 1 | 0 | Dec |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | | | | |

| Previous Year-Days carried Over | | |
|---|---|---|
| Vacation / excused Work Days | Taken: | |
| Holidays Occ. during Vacation | | |

| Carried Over to Next Year | | |
|---|---|---|
| Vacation/Excused Work Days | Holidays occurred during vacation | Total days |

**Current Year Vacation**

| | Taken | | | | |
|---|---|---|---|---|---|
| 10 | 1/29 | 1/30 | 1/31 | 2/1 | 2/8 |
| | 9/16 | 9/17 | 9/18 | 9/19 | 9/20 |

| Excused Work Days | | | Taken: | |
|---|---|---|---|---|
| Paid Excused Whole Days | 4 | | 1/2 | 1/7 |
| | | | X | 1/17 |
| Paid Excused half days | | 1/16 | 3.0 | |
| | | 2/20 | 4.0 | |
| | | 2/21 | 3.0 | |
| | | 2/25 | 1.6 | |
| Unpaid Excused Day | | 1/21 | 7.5 | |

| EWD Hourly | |
|---|---|

This year Incidental / Disability & other Absence

| Total Incidental Absence Days | Total Disability & other Days |
|---|---|

| Floating Holidays | |
|---|---|
| Taken: | 10/15 |

| Holidays occurring during vacation | |
|---|---|
| Holiday | Taken On |

| Total This Year | | | |
|---|---|---|---|
| 2002 | | | |
| Fmla | | | |
| 2001 | 65.00 | 7.00 | 5.00 |
| Fmla | 22.00 | | |
| 2000 | 46.00 | 14.00 | 2.00 |
| Fmla | 37.00 | | |
| 1999 | 25.00 | 7.00 | 0.00 |
| Fmla | | | |
| 1998 | 2.00 | 1.00 | 0.00 |
| Fmla | | | |
| 1997 | | | |
| Fmla | | | |
| No. of years | | | |
| Perfect attendance | | | |

46

**VER 0835**

| Date Abs/Tardy | D'' of ( ) | Reason for Abs/tardy | | Investigation, Interview Details & Action Taken | Contact | Name, title & Date |
|---|---|---|---|---|---|---|
| 2/12/2002 | T | | | Congratulated Kathy on perfect attendance for Jan | DLL | D. Loyd, Team Coach |
| 2/25/2002 | M | A | | 2.0 approved unpaid time OK per Hans, Dr appt (also used last remaining APX time) | | C. Hanrahan, Admin |
| 3/5/2002 | T | | | Kathy was job assigned to EAP as settlement to grievance # 01SD107 @ 1:15PM today, 03-05-02, to 365 State Street, Springfield, Ma. | | |
| | | | | Kathy refused to go. | DLL | D. Loyd, Team Coach |
| 3/16/2002 | F | | | Thanked Kathy for another month perfect attendance | DLL | D. Loyd, Team Coach |
| 3/18/2002 | M | AP | 3.5 | Kathy went home sick after 1/2 of her tour - headache | DLL | D. Loyd, Team Coach |
| 3/20/2002 | W | A | | 1.5 unpaid time, initially taken as APX, has used all EWD time, changed to unpaid time | | C. Hanrahan, Admin |
| 3/21/2002 | TH | DS | FS | Kathy called in sick, spoke with Diane | DKC | C. Hanrahan, Admin |
| 3/22/2002 | Fri | DS | FS | Kathy called , out sick w/head and sinus cold, She said she spoke to her Dr yesterday | SSS | S Sullivan, TL, 032202 |
| 3/25/2002 | M | DS | FS | Kathi called in sick | DLL | D. Loyd, Team Coach |
| 3/26/2002 | TU | DS | FS | Kathy called in sick | JLC | J Corbett, Team Leader |
| 3/27/2002 | W | DS | FS | Kathy called in sick - coughing and sore throat | DLL | D. Loyd, Team Coach |
| 3/28/2002 | Th | | | Kathy returned to work and will be filing FMLA | DLL | D. Loyd, Team Coach |
| 4/5/2002 | | | | Received FMLA approval for absence March 18-27 | | C. Hanrahan, Admin |
| 4/10/2002 | W | DS | | Kathy called in sick, hurt back, spoke with Judy | | C. Hanrahan, Admin |
| 4/10/2002 | | | | Received initial FMLA denial for absence beginning 4/10, not FMLA eligible due to hours worked (1,239.50) | | C. Hanrahan, Admin |
| 4/10/2002 | W | DS | | Kathy called in sick, fell downstairs during nite, hurt back, going for x-rays toda, will call with more info when knows more | JLC | J Corbett, Team Leader |
| 4/11/2002 | Th | DS | | Kathy called in sick - hurt back | DLL | D. Loyd, Team Coach |
| 4/12/2002 | F | DS | | Kathy called in sick - hurt back | DLL | D. Loyd, Team Coch |
| 4/15/2002 | Mon | | | Rteurn to duty w/Kathy, adv EAP and VZ Attendance policy, also adv Final determination not back yet, Kathy said she had recived | SSS | S Sullivan, TL, 041502 |
| | | | | denial, she had called to check hours when she received the denial, she hoped she wouldn't lose her job over this absence | | |
| 4/25/2002 | TH | | | Received Final FMLA denial for absence April 10-12, not FMLA eligible | | C. Hanrahan, Admin |
| 4/25/2002 | Th | SI | | Suspended Kathy for attendance reasons - FMLA was denied | DLL | D. Loyd, Team Coach |
| 4/26, 4/27 | F, S | SI | | Suspended | | C. Hanrahan, Admin |
| 4/29 - 5/3/02 | M-F | SI | | Suspended | | C. Hanrahan, Admin |
| 5/6 - 5/10 | M-F | SI | | Suspended | DLM | D. McDonald, Team Coach |
| 5/11/2002 | Sat | | | April Attendance review, Kathy is still suspended for attendance | DLM | D. McDonald, Team Coach |
| 5/13/2002 | M | | | Cld Kathy @ home and advised her to report to work on 05-14-she agreed, | DLM | D. McDonald, Team Coach |

Continue on G-550-A/1477A

T  Tardy      V  Vacation      APX Personal time or EWD/MPD      H  Holiday (designated)      F  Holiday (floating)      R Restricted Duty

| Incidental Absence | | |
|---|---|---|
| **Paid** | | **Not Paid** |
| DS= Dept. Sickness (1-7 days) | FS=Dept Sickness / FMLA / Approved | AA = Half Day Due To Illness, Off Duty Accident & Other |
| DSA= Dept. Sickness Off Duty Accident | APS= Half Day Due To Illness | |
| APA= Half Day Due To On Job Accident | APD= Half Day Due To Off Duty Accident | I = Illness, Off Duty Accident (1-7 Days) | FA = Authorized Leave Of Absence For Care Of Family (1-7 Days) |

| Disabilities & Other Absence | | | |
|---|---|---|---|
| B = Illness Benefits | IBE = "IBA" Beyond 6 Months | ANC = "ACP" Over 52 Weeks | AB = Other Absence Not Paid |
| BA = Illness Benefits Off Duty Accide | AC = Accident Benefits | ACR = Accident Benefits-Relapse | FB = Other Authorized Absence Not Paid |
| BP = "IB" Beyond 6 months | ACP = "AC" Beyond 6 Months Thru 52 Weeks | APB = Other Absence Not Paid | IBF = Illness Benefit FMLA Approved |

VER 0836

| Date Abs / Tardy | D... of C... | Reason for Abs / tardy | | Investigation, Interview, Details & Action Taken | Contact | Name, Title & Date |
|---|---|---|---|---|---|---|
| 5/14/2002 | T | | | Kathy returned to work today from suspension. Kathy was advised that continued failure to achive and maintain a satisfactory | | |
| | | | | attendance level could result in more severe disciplinary action. Present were Deborah McDonald, Team Leader, Laurie Mozeleski, | | |
| | | | | Team Leader, Kathy Miller, and Kristina Santos, Union Steward. See Return to Work letter on file. | DLM | C. Hanrahan, Admin |
| 5/20/2002 | M | A | | Kathy had Dr's appt - 1.5 "A" time | DLM | D. McDonald, Team Coach |
| 5/29/2002 | W | AP | | 3.25 left early ill, spoke with Judy | | C. Hanrahan, Admin |
| 5/31/2002 | F | A | | 2.0 unpaid time OK per Deb | | C. Hanrahan, Admin |
| 6/3/2002 | M | A | | Kathy left @ 1:30-"A" time - MRI (4.5 hrs) | DLM | D. McDonald, Team Coach |
| 6/17/2002 | M | | | Adv Kathy that since returning from suspension, she has had perfect attendance | DLM | D. McDonald, Team Coach |
| 6/18/2002 | T | APS | | 6.5  Kathy left work to go to emergency room and did not return - never released from hospital until 9:30PM | DLM | D. McDonald, Team Coach |
| 6/19/2002 | W | DS | | Kathy called in sick - will call the 800# and report yesterday as 1st day out | DLM | D. McDonald, Team Coach |
| 6/20/2002 | Th | DS | | Kathy called in sick-hopes to be back tomorrow | DLM | D. McDonald, Team Coach |
| 6/21/2002 | F | DS | | Kathy still sick, spoke with Sally | | C. Hanrahan, Admin |
| 6/24/2002 | M | | | Welcomed Kathy back to work Ida. Explnd  this absence is not FMLA appvd (not enough time worked) however no discipline wl occur | | |
| | | | | until final determination rcvd. Kathy has an ovarian cyst that may require surgery.  Has follow-up dr appt 7/18/02 | DKC | D. Chandler, Trg Mgr |
| 7/5/2002 | F | | | Received Final FMLA denial for absence June 19-21, not FMLA eligible | | C. Hanrahan, Admin |
| 7/5/2002 | F | | | No action taken yet regarding FMLA non-approval pending Kathy' s request to speak with Hans. | DLM | D. McDonald, TL |
| 7/8/2002 | M-F | SI | | Suspended Kathy for attendance - FMLA was denied for 6/19-6/21 absence (4.25 HRS) | DLM | D. McDonald, TL |
| 7/15 - 7/19 | M-F | SI | | Suspended | | C. Hanrahan, Admin |
| 7/22 - 7/26 | M-F | SI | | Suspended | | C. Hanrahan, Admin |
| 7/29 - 8/1 | M-F | SI | | Suspended | | C. Hanrahan, Admin |
| 8/5 - 8/6 | Mon-Tues | SI | | Suspended | | C. Hanrahan, Admin |
| 8/7/2002 | W | | | Kathy ret'd from suspension-she is on Final Warning for 1 year, see letter on file | DLM | D. McDonald, Team Coach |
| 10/10/2002 | Th | AP | | 3.5 Kathy went home sick - stomach | DLM | D. McDonald, Team Coach |
| 10/16/2002 | W | AP | | Kathy went home sick | DLM | D. McDonald, Team Coach |
| 10/17/2002 | Th | DS | FS | Kathy called in sick - called the 800# - low blood count | DLM | D. McDonald, Team Coach |
| 10/18/2002 | F | DS | FS | Kathy called in sick - low blood count | DLM | D. McDonald, Team Coach |
| 10/19/2002 | S | DS | FS | Kathy called in sick, spoke with Diane, still recovering from low blood sugar, expects to be back Monday | | C. Hanrahan, Admin |
| 10/21/2002 | M | DS | FS | Kathy called in sick | DLM | D. McDonald, Team Coach |
| 10/22/2002 | T | DS | FS | Kathy called in sick - thinks illness is not related to low blood - nauseaus, etc. | DLM | D. McDonald, Team Coach |
| 10/23/2002 | W | DS | FS | I spoke with Kathy today, she is feeling better, and has an appt with her Dr today.  She hopes to return tomorrow | | C. Hanrahan, Admin |
| 10/23/2002 | W | | | Kathy called in sick, feeling better | JLC | J Corbett, Team Leader |
| 10/24/2002 | | IBF | | Starts IB today | | |
| 10/30/2002 | | | | Received Aetna certification, return to work notification  through 10/ | | |
| 10/31/2002 | Th | | | Kathy ret'd to work and will be filing for FMLA | DLM | D. McDonald, Team Coach |
| 4-Nov | M | AP | | Kathy went home sick - stomach | DLM | D. McDonald, Team Coach |
| 11/5/2002 | | IBF (relapse) | | Relapse of IB, called Aetna to advise.  Also called Kathy to advise of IB relapse, she hopes to be back tomorrow. | | C. Hanrahan, Admin |
| 11/11/2002 | | | | Received Aetna certification through today, Kathy should be returning to work tomorrow | | C. Hanrahan, Admin |
| 11/12/2002 | T | | | Kathy ret'd to work ON 11/11-wl be filing for FMLA | DLM | D. McDonald, Team Coach |
| 11/21/2002 | TH | IBF (relapse) | | IB relapse, Kathy spoke with Sally, called Aetna to advise | | C. Hanrahan, Admin |
| 11/22/2002 | F | IBF | | Kathy called in sick - respiratory problems | DLM | D. McDonald, Team Coach |
| 11/23/2002 | S | IBF | | Kathy called in sick | JLC | J Corbett, Team Leader |
| 11/26/2002 | | | | Received call from Aetna, Kathy was certified through 11/24, advised Aetna that Kathy did not return to work on 11/25, today is DU | | |
| 11/26/2002 | T | | | I spoke with Kathy, she will return to work tomorrow.  She said she is feeling better, but still has cough.  She already called her Dr to.. | | |

| Abs/ Tardy | of ( | Abs / tardy | Investigation, Intervie\ ...ails & Action Taken | Contact | Name, ...e & Date |
|---|---|---|---|---|---|
| | | | have them send additional clinical information to certify her claim for Monday. | | C. Hanrahan, Admin |
| 11/27/2002 | W | | Kathy ret'd to work-will be filing for FMLA-explained EAP, etc. | DLM | D. McDonald, Team Coach |
| 11/27/2002 | | | Received call from Aetna, Kathy was certified for Monday 11/25 | | C. Hanrahan, Admin |
| 12/2/2002 | | | Received FMLA approval for relapse absence beginning 11/5 | | C. Hanrahan, Admin |
| 12/5/2002 | TH | A | 1.5 approved unpaid time, snowstorm, left early | | C. Hanrahan, Admin |
| 12/11/2002 | W | ~~DS~~ FS | Kathy called in sick, spoke with Laurie | | C. Hanrahan, Admin |
| 12/12/2002 | TH | ~~DS~~ FS | I spoke with Kathy, she said she has already been contacted by Aetna and has given her Dr info to them. Advised take care. | | C. Hanrahan, Admin |
| 12/13/2002 | F | ~~DS~~ FS | Kathy still out sick | | C. Hanrahan, Admin |
| 12/16/2002 | M | ~~DS~~ FS | Spoke with Kathy, hopes to be back tomorrow | | C. Hanrahan, Admin |
| 12/17/2002 | | | Return to duty w/Kathy, she will file FMLA, adv EAP and VZ attendance policy | DLM | d. McDonald, Team Coach |
| 12/30/2002 | M | AP | 1.5 left ill | | C. Hanrahan, Admin |
| 1/22/2003 | W | | Received FMLA approval for absence December 11-16 | | C. Hanrahan, Admin |

VER 0838

Exhibit D

November 1, 2001

Subject: Return to Work Letter

Kathleen Miller
Service Representative
NCSD 6-22-98

A meeting was held on November 1, 2001, at 295 Worthington St., Springfield, MA to discuss the circumstances of your one month suspension beginning October 5, 2001. In attendance were Sally Sullivan, Team Leader, Diane Chandler, Training Specialist, Kathleen Miller, Service Representative, and _Kristina Sartos_, Union Steward.

Ms. Miller was suspended on October 5, 2001 for continued unsatisfactory attendance. Ms. Miller's most recent absence of September 20, 2001 was unapproved, due to not having enough hours to be eligible for FMLA.

You are now advised that continued failure to achieve and maintain a satisfactory attendance level could result in more severe disciplinary action.

Ms. Miller has been informed that a copy of this letter will be placed in her personnel file. The attendees were provided a copy of this letter.

Ms. Miller was asked if she understood the contents of this letter and she replied Yes/No.

_declined to sign_
Kathleen Miller
Service Representative

_Sally Sullivan_
Sally Sullivan
Team Leader

_declined to sign_
Union Steward

_Diane K Chandler_
Diane Chandler
Training Specialist

May 14, 2002

Subject:  Return to Work Letter

Kathleen Miller
Service Representative
NCSD  6-22-98

A meeting was held on May 14, 2002, at 295 Worthington St., Springfield, MA  to
discuss the circumstances of your most recent suspension beginning April 25, 2002.  In
attendance were Deborah McDonald, Team Leader, Laurie Mozeleski, Team Leader,
Kathleen Miller, Service Representative and Kristina Santos, Union Steward.

Ms. Miller was suspended on April 25, 2002 for continued unsatisfactory attendance.
Ms. Miller's most recent absence April 10-12, 2002 was unapproved, due to not having
enough hours to be eligible for FMLA.

Ms. Miller is now advised that continued failure to achieve and maintain a satisfactory
attendance level could result in more severe disciplinary action.

Ms. Miller has been informed that a copy of this letter will be placed in her personnel
file.  The attendees were provided a copy of this letter.

Ms. Miller was asked if she understood the contents of this letter and she replied Yes.


_Declined to sign_
Kathleen Miller
Service Representative

_Deborah L McDonald_
Deborah McDonald
Team Leader

_Declined to sign_
Kristina Santos
Union Steward

_Laurie A Mozeleski_
Laurie Mozeleski
Team Leader

August 7, 2002

Subject: Final Warning

Kathleen Miller
Service Representative
NCSD  6-22-98

A meeting was held today in the Springfield CSSC, 295 Worthington St., Springfield, MA.

In attendance were Kathy Miller, Service Representative; Deborah McDonald, Team Leader; Lynn Lacasse, Union Steward and Judith Corbett, Team Leader.

The purpose of this meeting was to return Ms. Miller back from suspension for violation of the Verizon Attendance Policy. Ms. Miller had an unapproved absence June 19-21, 2002. Ms. Miller was previously suspended for her unapproved absences on June 22-23, 2001, August 2, 2001, September 20, 2001 and April 10-12, 2002.

I have informed Ms. Miller that any future infraction of the Verizon Attendance Policy including full day absence not FMLA approved, partial day absence, unapproved absence or tardiness may result in further disciplinary action up to and including termination. I have also informed Ms. Miller that she is returned on final warning for one full year and a copy of this memo will be placed in her personnel file.

Ms. Miller was asked if she understood the contents of this letter and she replied Yes/No.


_Declined to sign_
Kathleen Miller
Service Representative

_Declined to sign_
Lynn Lacasse
Union Steward

_Deborah L. McDonald_
Deborah McDonald
Team Leader

_Judith Corbett_
Judith Corbett
Team Leader

Return from Suspension


August 30, 2001


Kathleen Miller
Service Representative


A meeting was held today at 295 Worthington St, Springfield, MA to discuss the circumstances of Kathy's 5 day suspension on August 23, 2001 for failure to comply with the VZ attendance policy due to her absence beginning August 2, 2001. In attendance were Sally Sullivan, Team Leader, Laurie Mozeleski, Team Leader, Kathleen Miller, Service Rep and Michelle Wisell, Union Representative.

Kathy previously had been suspended for 1 day on July 11, 2001 for her absence beginning June 22, 2001.
Kathy was placed on written warning on July 5, 2001 for an absence beginning June 15, 2001. She had been placed on a reiterated verbal warning on March 30, 2001 for failure to comply with the Verizon corporate Attendance Policy due to an absence beginning February 5, 2001.

Kathy is now being returned on written warning. She has been advised of the Verizon Corporate attendance policy and EAP availability. She has also been advised that future failure to comply with the Verizon Attendance policy including absence, tardy, or going home sick may result in further disciplinary action.

Kathy was read a copy of this letter and asked if she understood it. She replied yes. She was also informed that a copy of this letter would be placed in her personnel file.

_Sally S Sullivan_ _____ Team Coach

_Laurie A Mozeliski_ _____ Team Coach

_declined to sign_ _____ Employee

_declined to sign_ _____ Union Steward

Return from Suspension

July 12, 2001

Kathleen Miller
Service Representative

A meeting was held today at 295 Worthington St, Springfield, MA to discuss the circumstances of Kathy's 1 day suspension on July 11, 2001 for failure to comply with the VZ attendance policy due to her absence beginning June 22, 2001. In attendance were Sally Sullivan, Team Leader, Deborah Loyd, Team Leader, Kathleen Miller, Service Rep and Kristina Santos, Union Representative.

Kathy was placed on written warning on July 5, 2001 for an absence beginning June 15, 2001. She had been placed on a reiterated verbal warning on March 30, 2001 for failure to comply with the Verizon corporate Attendance Policy due to an absence beginning February 5, 2001. Previously, she had been placed on written warning for attendance on May 16, 2000 for an absence beginning April 3, 2000 and had regressed to verbal as of October 3, 2000.

Kathy is now being returned on written warning. She has been advised of the Verizon Corporate attendance policy and EAP availability. She has also been advised that future failure to comply with the Verizon Attendance policy including absence, tardy, or going home sick may result in further disciplinary action.

Kathy was read a copy of this letter and asked if she understood it. She replied yes. She was also informed that a copy of this letter would be placed in her personnel file.

_Sally Sullivan_ _____ Team Coach

_Deborah L. Loyd_ _____ Team Coach

_declined to sign_ _____ Employee

_declined to sign_ _____ Union Steward

Written Warning

July 5, 2001

Kathleen Miller
Service Representative

A meeting was held today at 295 Worthington St, Springfield, MA. In attendance was Sally Sullivan, Team Coach, Laurie Mozeleski, Team Coach, Kathleen Miller, Service Rep and _Michelle Wisell_ Union Representative.

The purpose of the meeting was to advise Kathy that she is now being placed on written warning for continued unsatisfactory attendance and failure to comply with the Verizon corporate Attendance Policy. Kathy was absent beginning June 15, 2001. Previously, Kathy was absent beginning February 5, 2001 for which a verbal warning was reiterated. Previously, she had been placed on written warning for attendance on May 16, 2000 for an absence beginning April 3, 2000 and had regressed to verbal as of October 3, 2000.

Kathleen is now advised that future failure to comply with the Verizon Attendance policy including absence, tardy, or going home sick may result in further disciplinary action.

Kathy was advised of the Verizon attendance policy during this meeting and EAP availability.

Kathy was informed that a copy of this letter would be placed in her personnel file. Kathleen was asked if she understood the contents of this letter and she replied Yes/No.

_Sally Sullivan_ _____ Team Coach

_Laurie A Mozelesh_ _____ Team Coach

_declined to sign_ _____ Employee

_declined to sign_ _____ Union Steward

Miller 0043

Verbal - per 01 SD¹⁰³
(2/26/02)

Written Warning

March 30, 2001

Kathleen Miller
Service Representative

A meeting was held today at 295 Worthington St, Springfield, MA. In attendance was
Sally Sullivan, Team Coach, Diane Chandler, Training Manager, Kathleen Miller,
Service Rep and *Kristina Santos*    Union Representative.

verbal

The purpose of the meeting was to advise Kathy that she is now being placed on written
warning for continued unsatisfactory attendance and failure to comply with the Verizon
corporate Attendance Policy. Kathy was absent beginning February 5, 2001. Previously,
she had been placed on written warning for attendance on May 16, 2000 for an absence
beginning April 3, 2000 and had regressed to verbal as of October 3, 2000.

Kathleen is now advised that future failure to comply with the Verizon Attendance policy
including absence, tardy, or going home sick may result in further disciplinary action.

Kathy was advised of the Verizon attendance policy during this meeting and EAP
availability.

Kathy was informed that a copy of this letter would be placed in her personnel file.
Kathleen was asked if she understood the contents of this letter and she replied Yes/No.

*Sally S Sullivan*    Team Coach

*Diane K Chandler*    ~~Team Coach~~ *Training Specialist*

*declined to sign*    Employee

*declined to sign*    Union Steward

Miller 0044

Subject:    Letter of Warning                                    5/16/00

Employee Name: Kathleen Miller
Title:        Service Representative
NCSD:         06/22/98


     A meeting was conducted on 5/16/00 at 295 Worthington St, Springfield Ma to administer a written warning. In attendance were Diane Chandler, Training Manager, Deborah Loyd, Team Leader, and Kathleen Miller, Service Rep. Kathleen declined union representation.

     This letter of warning was administered as a result of your continued unsatisfactory attendance. Previously on 3/10/00 you regressed to verbal warning from a written warning that had been reiterated on 9/10/99. Due to your non-FMLA approved absence on 4/3/00, you are now placed back on written warning. You are now advised that your continued failure to achieve and maintain a satisfactory attendance level may result in more severe disciplinary action.

Kathleen Miller was informed that a copy of this letter will be placed in her personnel file. The attendees were provided a copy of this letter.

Kathleen Miller was asked if she understood the contents of this letter and she replied yes.


_Decline to sign_
Employee (Name/Title)

_Diane Chandler, Training Mgr_
Manager (Name/Title)


_Declined union representation_
Witness (Name/Title)

_Deborah Loyd, Team Leader_
Manager (Name/Title)


VER 0751

# Exhibit E

Kathleen Miller   02SD108

This is a grievance for her suspension 7-8-02 through 8-6-02.  (30 day suspension)
       Now on Final Warning for 1 year.    SEE ATTACHMENT F

FYI –

1.  We settled a case at second step with Melissa Morin present.  We gave back 10 days
    from a 30 day suspension, (01SD107 suspension on 10-05-01, settled on 1-31-02) and
    sent employee to EAP.  We believe that this grievance was a settlement of all
    situations prior to this one ****       SEE ATTACHMENT D-1

2.  suspension 4-25 – 5-13-2 was not grieved.  (14 business day suspension)
                                    SEE ATTACHMENT E


HISTORY:



**2000**

sick 2-16 - 2-29  FMLA approved
sick 4-3
5-26 written warning for 4-3 absence  (this will remain in effect until 10-4 per notes)
sick 5-23 - 5-25 FMLA approved
sick 6-19  6-21 FMLA approved
7-27 homesick 5.5 hours
7-28 tardy 6 min
sick  8-2 - 8-4 FMLA approved
strike 8-6 - 8-18 FMLA approved
sick 8-23 - 8-25 FMLA approved
sick 8-31
SUSPENSION  9-6 - 9-15   returned from suspension 9-16
sick 10-3 - 10-4  FMLA approved
sick 10-16  FMLA approved
sick 11-13 - 11-15 FMLA approved
11-26 tardy 15 min
sick 12-6 - 12-7  FMLA approved
sick 12-18 - 12-21  FMLA approved
*******EAP OFFERED ON 12-26
sick 12-29 FMLA approved
*******EAP OFFERED AGAIN ON 1-2-01

**2001**

sick 1-15 - 1-19  *** 5 days ***  FMLA approved
sick 2-5 - 2-9  *** 5 days ***     FMLA WAS DENIED, SHE APPEALED IT, FMLA
DENIAL STANDS ****  **** see action taken below ***
sick 2-14 - 2-16  FMLA approved.
3-23 home sick 4 hours
sick 3-26 - 3-28  FMLA approved
*******EAP OFFERED AGAIN ON 3-29-01

3-30 VERBAL WARNING  (for February 5 - 9 absence) (WAS ORIGINALLY
WRITTEN WARNING, BUT PER GRIEVANCE 01SWD103 CHANGED TO
VERBAL)    ATTACHMENT A

sick 4-16, 4-17 FMLA approved
4-20 tardy 15 min
4-23 COUNSEL FOR TARDINESS
sick 5-8 - 5-10  **3 days ***  FMLA approved
sick 5-22  FMLA approved
sick 6-4 - 6-6  FMLA approved
sick 6-15 - 6-20  *** 4 days***      **** see action taken below ***
home sick 6-22 4 hours
sick 6-23       **** see action taken below ***

7-5 WRITTEN WARNING (for June 15 - 20, 2001 absence )   ATTACHMENT B

*******EAP OFFERED AGAIN ON 7-5-01

sick 7-9, 7-10  ****** fyi ******No disciplinary step taken for FMLA denied July
9,10, 2001 absence to encourage Kathy to work towards better attendance  see 7-30 note
on 1477's

7-11 SUSPENSION FOR 1 DAY ( for June 23, 2001  absence)   ATTACHMENT C

*******EAP OFFERED AGAIN ON 7-12-01

7-24 home sick 3.5 hours
sick 8-2  **** see action taken below ***
home sick 8-3  3.5 hours
sick 8-16,17,18, 20,21,22,  ***6 days*** 9-4 final denial received on August 16 - 22
absence, decision made not to suspend,  see 9-4 note on 1477's

8-23 SUSPENSION FOR 5 DAYS  (for 8- 2 absence)   ATTACHMENT D  *** UNION
WITHDREW THIS AS 3RD STEP!!

9-18 tardy 11 min
9-18 home sick 2.75 hours NO ACTION TAKEN UPON RETURN.
9-20 sick
9-21 ********EAP OFFERED AGAIN ON 9-21-01

10-5 SUSPENSION FOR 30 days ( for September 20 absence)    ****AT TH
MEETING EAP WAS OFFERED AGAIN ***
on 1-31-02 grievance 01SD107 was settled, 10 days given back for 30 day suspen
SEE ATTACHMENT D-1

12-4-01 went home sick 3.25 hours, NO ACTION TAKEN UPON RETURN

12-31-01 went home sick 3.5 hours NO ACTION TAKEN UPON RETURN

2002

3-5-02 JOB ASSIGNED TO EAP

3-18-02 went home sick 3.5 hours  NO ACTION TAKEN UPON RETURN

3-21 through 3-27 sick FMLA approved

4-10-02  through 4-12-02 sick  NOT FMLA approved

4-25-02 suspended  through 5-13.  14 day suspension  - RTD 5-14-02
SEE ATTACHMENT E

5-29-02 went home sick 3.25 hours NO ACTION TAKEN UPON RETURN

6-18-02 left work sick 6.5 hours went to emergency room
6-19 thruogh 6-21 sick   NOT FMLA approved

7-8-02 – 08-06-02 suspended 1 month, returned on Final Warning 1 year
SEE ATTACHMENT F

VER 0303

# Exhibit F

# GRIEVANCE FACT SHEET

Date Created: 01/23/2002

| | | | |
|---|---|---|---|
| Unit: 1S | Manager: Sally S Sullivan | 2nd Level: Hans G Peterson | 3rd Level: Brenda Sowers |

GRIEVANCE #: 01SD107

○ Pending
○ Step 1
● Step 2
○ Step 3
○ On Hold
○ Remanded
○ Advanced

○ Denied
○ On Hold
● Adjusted

☒ Closed    Date Closed: 01/31/2002

Terms of Settlement:

Reason behind decision (History):

NAME: Miller, Kathleen

STATUS: RFT

NCS DATE: 06/22/1998

TIME ON TITLE:

REPORT Springfield:

DISCIPLINE ● Yes    DISCIPLINE STEP:  ☐ Verbal Warning
             ○ No                      ☐ Written Warning
                                       ☐ Suspension
                                       ☐ Termination

DATE OF INCIDENT:

LAST CODE OF CONDUCT:

ADDITIONAL DOCUMENTATION:

**VER 0282**

Type of Grievance:  Attendance

```
NATURE OF GRIEVANCE:
(REFER CONTRACT ARTICLE IF APPROPRIATE)
```

```
UNION POSITION:
Request reduction in 30 day suspension.
```

```
COMPANY POSITION:
Correct action taken in accordance with VZ Attendance policy
```

```
CHRONOLOGY OF EVENTS:
2000

sick 2-16 - 2-29  FMLA approved
sick 4-3
5-26 written warning for 4-3 absence  (this will remain in effect until 10-4 per notes)
sick 5-23 - 5-25 FMLA approved
sick 6-19  6-21 FMLA approved

7-27 homesick 5.5 hours

7-28 tardy 6 min

sick  8-2 - 8-4 FMLA approved
strike 8-6 - 8-18 FMLA approved
sick 8-23 - 8-25 FMLA approved

sick 8-31

SUSPENSION  9-6 - 9-15 (for 8-31 absence)   returned from suspension 9-16

sick 10-3 - 10-4  FMLA approved
sick 10-16  FMLA approved
sick 11-13 - 11-15 FMLA approved

11-26 tardy 15 min

sick 12-6 - 12-7  FMLA approved
sick 12-18 - 12-21  FMLA approved

*******EAP OFFERED ON 12-26

sick 12-29 FMLA approved

*******EAP OFFERED AGAIN ON 1-2-01

2001

sick 1-15 - 1-19  *** 5 days ***  FMLA approved

sick 2-5 - 2-9 *** 5 days ***     FMLA WAS DENIED, SHE APPEALED IT, FMLA DENIAL STANDS ****  **** see action taken
below ***

sick 2-14 - 2-16  FMLA approved
3-23 home sick 4 hours
sick 3-26 - 3-28  FMLA approved

*******EAP OFFERED AGAIN ON 3-29-01

3-30 VERBAL WARNING  (for February 5 - 9 absence)  (WAS ORIGINALLY WRITTEN WARNING, BUT PER GRIEVANCE
```

01SWD103 CHANGED TO VERBAL)

sick 4-16, 4-17 FMLA approved

4-20 tardy 15 min
4-23 COUNSEL FOR TARDINESS

sick 5-8 - 5-10 **4 days *** FMLA approved
sick 5-22 FMLA approved
sick 6-4 - 6-6 FMLA approved

sick 6-15 - 6-20 *** 4 days***       **** see action taken below ***

home sick 6-22 4 hours

sick 6-23       **** see action taken below ***

7-5 WRITTEN WARNING (for June 15 - 20, 2001 absence )

********EAP OFFERED AGAIN ON 7-5-01

sick 7-9, 7-10   ****** fyi ******No disciplinary step taken for FMLA denied July 9,10, 2001 absence to encourage Kathy to work
towards better attendance  see 7-30 note on 1477's

7-11  SUSPENSION FOR 1 DAY ( for June 23, 2001  absence)

********EAP OFFERED AGAIN ON 7-12-01

7-24 home sick 3.5 hours

sick 8-2   **** see action taken below ***

home sick 8-3  3.5 hours

sick 8-16,17,18, 20,21,22.  ***6 days*** 9-4 final denial received on August 16 - 22 absence, decision made not to suspend,  see
9-4 note on 1477's

8-23 SUSPENSION FOR 5 DAYS  (for August 2 absence)

9-18 tardy 11 min

9-18 home sick 2.75 hours

9-20 sick

9-21  ********EAP OFFERED AGAIN ON 9-21-01

10-5 SUSPENSION FOR INDEFINITE TIME FRAME ( for September 20 absence)       ****AT THIS MEETING EAP WAS
OFFERED AGAIN ***

---

DATE STEP 1: 12/06/2001

IN ATTENDANCE:
  Union: Kristina Santos, Howard Gilhooly
  Mangagment: Hans Peterson, Laurie Mozeleski

DECISION RENDERED: denied

---

NOTES OF 1ST STEP GRIEVANCE:

Hans presented: Read background of prior chronology
of events leading to suspension ( see above)
Hans - We have been very lenient in discipline not

taken. This is very serious and she needs to take care
of her condition.
Kristina - We appreciate that you have bent over
backwards to help her. We are still requesting a
reduction
Hans - She has an ongoing condition we told her about
clinic- EAP
Kristina - She has tried. Again we are looking for a
reduction, even 15 days
Hans - I will hold under advisement and get back to
you.
Kristina - Can we set a date?
Hans- Next week by this time.


Hans denied this.

NOTE TAKER: Laurie Mozeleski


DATE STEP 2: 01/31/2002

IN ATTENDANCE:
   Union: Chris Parker, Janine Baker, Melissa Morin
   Mangagment: Hans Peterson, Maura Conlan, Mark Beauregard

DECISION RENDERED: Reduce to 10 day suspension and work assign to EAP. Non-precedence including origional discipline
Date Step 2 Letter Sent:   Link to letter:


NOTES OF 2ND STEP GRIEVANCE:
Hans Peterson - Was sick 01-15 to 01-19-01. 5 days FMLA approved.
02-05-01 to 02-09-01 5 days FMLA Denied written warning 03-30-01 later reduced to verbal 01-sd-103
02-14 to 02-16-01 FMLA approved
02-23-01 went home sick 4 hours
03-26-03-28-01 sick fmla approved
05-08- 05-10-01 FMLA approved
-5-22-01 fmla approved
06-04-06-06-01 FMLA approved
06-15-06-20-01 FMLA denied written warning 07-05-01
Maura Conlan – Why denied? Not enough hours worked
Hans Peterson - 06-22-01 sick 4 hours
06-23 - FMLA denied suspended 1 day on 07-11-01 (hours not enough)
Discussed EAP
07-09-07-10-01 not approved but no discipline taken just discussion to improve attendance
07-24-01 sick 3 1/2 hours
08-02 out sick again Denied suspended 5 days 08-23-01

Melissa Morin - ? if documented discussion on suspension? What was date that that took place.

Hans Peterson - 08-16, 08-17, 08-18, 08-20, 08-21, 08-22 6 days total denied by FMLA. Again conversation and no action taken.
Meeting occurred on 09-24

VER 0285

Janine Baker - Only 2 pages 1477 only goes through May. Heard second step prior on 11-29

Melissa Morin - In order to proceed need 1477

Maura Conlan - In prior grievance asked if Janine prepare to hear grievances without all files.

Company provided requested information

Maura Conlan - Asked if Janine Baker had discussion with grievant as said she would from prior grievance step.

Janine Baker - Yes coming out of denial now.

Melissa Morin - Feels EAP cab help and may need outside medical review to be sure. Needs to be in a clinic to help balance needs. Joanne and Peter can help with work but others outside. When job assigned do we provide EAP with reason why assigned?

Hans Peterson - No only give vague information.

Melissa Morin - Will discuss with Peters about situation may request medical evaluation. Union requests suspension be reduced and job assigned to EAP. Suspensions went from 1 day to 5 days to 19 days.

Maura Conlan - Requests to review records

Hans Peterson - Has serious problem and want to work with her on them. She is familiar with resources out there.

Maura Conlan - Question if returned on final warning

Hans Peterson - No she didn't

Maura Conlan - Reviewed records and felt she isn't at that point yet. Offered 10 day suspension and work assign to EAP non precedence setting including past discipline.

Union accepted.


NOTE TAKER:

---

DATE STEP 3:

IN ATTENDANCE:
  Union:
  Mangagment:

DECISION RENDERED:

---

NOTES OF 3RD STEP GRIEVANCE:


NOTE TAKER:

02/04/2002

VER 0286

**Exhibit G**

COMMONWEALTH OF MASSACHUSETTS

COMMISSION AGAINST DISCRIMINATION

KATHLEEN MILLER,        )
       Claimant        )        Docket No. 013 SEM 1853
                    )
v.        )
                    )
VERIZON,        )
       Respondent        )

## AFFIDAVIT OF PETER MAGNER

1. I am Peter Magner. I am an employee of Verizon New England, Inc. ("Verizon" or "the Company") assigned to its Employee Assistance Program ("EAP").

2. EAP provides confidential assessment, counseling, referral and follow up to employees who have personal issues, including but not limited to medical conditions which impact their personal lives and/or job performance.

3. EAP commonly provides assessment and referral services for employees whose medical condition may impact their ability to provide regular attendance. Services provided commonly include referral to Company or outside medical resources which work with the employee and his or her health care providers, if any, to determine matters such as whether the employee is taking appropriate steps to manage his or her condition and whether the Company should offer the employee specific reasonale accommodations to improve his or her ability to satisfactorily perform job duties.

4. Review of EAP records reveals that Kathleen Miller, the Claimant in the above discrimination Charge, did not seek the assistance of EAP.

Signed on the pains of perjury this 7TH day of May, 2004.

_Peter Magner_ _(signature)_
Peter Magner

**VER 0134**

Kathleen Miller 02SD108

01/15/01- 01/19/01  DS  FMLA Approved
01/22/01  Ret'd to work
02/05/01-02/09/01  DS  FMLA Denied
02/12/01. Ret'd to work
02/14/01-02/16/01  DS  FMLA Approved
02/20/01  Ret'd to work (left early-sick)
03/23/01-03/28/01  DS
03/29/01  Ret'd to work
03/30/01  Placed on written wrng for 2/5-2/9 absences
******02/26/01  Per grievance 01SD103, written wrng changed to verbal warning thru 08/12/01.
04/16/01-04/17/01  DS  Approved
04/18/01  Ret'd to work
04/20-01  Tardy 15'
04/23/01  Counseld for 04/20 tardy
******04/30/01  To resolve grievance 01SD103, agreed to reiterate verbal warning for 02/05/01 absence and remove
03/30/01 warning.
05/08/01-05/10/01  DS  Approved
05/11/01  Ret'd to work
05/17/01  DS Approved
05/18/01  Ret'd to work
05/22/01  DS  Approved
05/23/01  Ret'd to work
06/04/01-06/06/01  DS  Approved
06/07/01  Ret'd to work
06/15/01-06/20/01  DS  Denied
06/21/01  Ret'd to work - Adv written warning for 06/15 occ when Final
06/22/01  APS 4.0 - Home sick
06/23/01  DS  Denied
06/25/01  Ret'd to work
07/05/01  Placed Kathy on written warning for 06/15 occasion
07/09/01-07/10/01  DS Denied
07/11/01  Ret'd to work - Suspended
07/12/01  Ret'd from 1 day suspension for absence beginning 06/22/01-adv ret'd on written warning for absence, tardy
and going home sick
07/30/01  Discussed Final Denial of 07/09 absence - No action taken
08/02/01-08/22/01  DS  Denied
08/23/01  Ret'd to work - Suspended for 08/02 absence
08/30/02  Ret'd from 5 days suspension
09/04/01  Final FMLA denial rec'd for 08/16 absence - adv will not suspend
09/20/01  DS  Denied
09/21/01  Ret'd to work
10/05/01  Suspended for 09/20 absence
11/01/01  Ret'd from 1 month suspension
******02/04/02  As a result of grievance settlement 01SD107, Kathy was given back 9 days of suspension 10/19-10/31,
2001
******03/05/02  Kathy was job assigned to EAP as settlement to grievance 01SD107 @ 1:15 today (365 State Street)-
Kathy refused to go
03/21/01-03/27/01  DS  Approved
03/28/01  Ret'd to work
04/10/02-04/12/02  DS
04/15/02  Ret'd to work
04/25/02  Rec'd Final FMLA Denial for 04/10-04/12 absences
04/25/02  Suspended
05/14/02  Kathy ret'd to work from mid suspension
06/18/02  6.5 APS
06/19/02-06/21/02  DS Denied
06/24/02  Ret'd to work
07/05/02  Rec'd Final FMLA denial for 06/19-06/21 absences - Kathy requested to speak with Hans
07/08/02  Suspended for 06/19-06/21 absences

VER 0839

# Exhibit H



FMLA System@HRNYNEX
01/23/2003 12:18 PM

To:      SPRINGFIELD CSSC MANAGERS@VZNotes
cc:
Subject: FMLA Denial Letter Sent To: BAJONSW  KATHLEEN A MILLER

If this absence is related to an approved Anticipated Disability leave of absence, FMLA
administration does not apply.

## Verizon
## Absence Reporting Center

01/23/2003

KATHLEEN A MILLER
17 Lorita Lane
Northfield MA 01360

Re:  Absence beginning 01/22/2003

Dear Kathleen A Miller

You have been denied Family and Medical Leave Act (FMLA) leave for the absence indicated
above for the following reason:

**You are administratively ineligible for FMLA. You have not worked twelve
hundred and fifty (1250) hours in the twelve month period immediately preceding
the commencement of the absence.**

Your absence may be subject to the provisions of the established attendance plan and practices in your
area.

You may request an administrative review of this decision by submitting your request, along with
supporting documentation, in writing to:

Verizon
Absence Reporting Center
FMLA Coordinator
4 West Red Oak Lane, 3rd Floor
While Plains, NY 10604
Fax  (877) 786-4500

Your request must be received by our office via fax or mail, by **02/06/2003 (14 days from the date of
thisletter)**  Please allow for appropriate mail time  We strongly recommend that you retain a copy of the
administrative review request, supporting documentation, and proof of mailing/faxing for your records.

You are responsible for communicating with your Supervisor/Absence Administrator during your absence
period.

If you have any questions, please contact your FMLA Administrator at (800) 377-7333, or visit Verizon's
Absence Management intranet web site at http://hr.verizon.com/job/0150_manageabsence.shtml.

**VER 0064**

# Exhibit I

Type of Grievance:  Attendance

NATURE OF GRIEVANCE:
(REFER CONTRACT ARTICLE IF APPROPRIATE)
attendance  suspension/termination

UNION POSITION:
bring back employee

COMPANY POSITION:
termination was just.

CHRONOLOGY OF EVENTS:
Pleae review the attendance matrix for Kathleen Miller.

quick overview:

6-19 - 6-21 DS

Suspension  7-8-2002

1-22-2003  APS  5.75 hours

Suspension 2/10/2003

(employee had many FMLA approved illnesses in between)

DATE STEP 1: 03/13/2003

IN ATTENDANCE:
  Union: Michelle Wisell, Kristina Santos
  Mangagment: Hans G. Peterson, Paula J. Raposa

DECISION RENDERED: denied

NOTES OF 1ST STEP GRIEVANCE:

Paula -- reviewed 1-22-03 absence and suspension on 2-10-2003
Kristina - kathy has a disability and didn't have enough hours. her doctor put her on medication.  She did send a letter to use vacation or ewd time.  I know we don't do that.  We are going to loose an employee.  She had the time.

Hans - Kathy has been an ongoing attendance problem for years.  We have tried to help her and job assigned her to EAP.  She refused to go - when asked by union president as well.  Now she is sick again.  Just because she didn't have the hours.  If she had the time she should have taken it.   We have shown her leniency.  We need people to come to work.  I am denying it.  She has been terminated.
Kristina - abut EAP  - agreed upon by Janine
hans - No, by Melissa
Kristina - She didn't know.
Hans - We talked to her.  I am not taking her back.  She is fired.

NOTE TAKER: Paula J. Raposa

**VER 0296**

# Exhibit J

**verizon**

20 Shattuck Rd
Andover, MA 01810

March 21, 2003

Kathleen Miller
17 Lorita Lane
Northfield, MA 01360

Ms. Miller,

This is to notify you of your termination of employment with Verizon effective
February 11, 2003.

Your termination is the result of continued unsatisfactory attendance and failure
to comply with the Verizon attendance policy.

Enclosed is a separation notice (Form 1255) for presentation to the Division of
Employment Security if application for unemployment compensation is made.

Sincerely,

*Mary Ellen Wood*

Mary Ellen Wood
NE Consumer Sales & Solutions Center

**VER 0066**

# Exhibit K



**LAW OFFICE**
**OF**
**MICHAEL O. SHEA, P.C.**

451 MAIN STREET
WILBRAHAM, MA 01095

TEL: 413.596.8005
FAX: 413.596.8095

February 27, 2006

***SENT VIA FACSIMILE & MAIL***
***FACSIMILE NO. (617)439-4170***
Windy L. Rosebush, Esq.
Edwards & Angell, LLP
101 Federal Street
Boston, MA 02110

*Re:*    ***Miller v. Verizon Communications, Inc.***
         ***U.S. District Court-Civil Action No. 05-30117-KPN***

Dear Attorney Rosebush:

I am writing pursuant to Local Rules 7.1 and 37.1 to address a number of outstanding
discovery issues that have been raised by the *Defendant's Answers to Interrogatories*
and *Defendant's Response to Plaintiff's Requests for Production of Documents.*
Please contact me once you have reviewed these issues so that we may schedule a
telephonic discovery conference.

### *Defendant's Answers to Interrogatories*

#### Interrogatory Nos. 12 and 13

**Interrogatory No. 12** asked for detailed description of written policies and/or
procedures regarding handicap and/or disability discrimination and/or the Family
Medical Leave Act (FMLA) which were in place during the Plaintiff's tenure.
**Interrogatory No. 13** asked for the same information, however with reference to
any <u>verbal</u> policies and/or procedures. While the Defendant did refer the Plaintiff to
specific policies in its Answer to Interrogatory No. 12, it failed to include, as was
requested, <u>when, where, and how</u> such policies and/or procedures were posted. This
information relates to the Plaintiff's claims in that it clarifies which policies and/or
procedures were in place when, thus indicating when these policies and/or
procedures were in effect during a specified period of time and how Verizon
employees were to know this information. Moreover, the Defendant's Answer to
Interrogatory No. 13 simply referred the Plaintiff to its Answer to Interrogatory No.
12, thereby evading the question of whether the Defendant did, in fact, have any
verbal policies or procedures regarding handicap and/or disability discrimination
and/or the FMLA during the Plaintiff's tenure with the Defendant. Therefore, we
ask that the Defendant supplement its Answers to Interrogatory Nos. 12 and 13 to
provide the above-referenced missing information.

#### Interrogatory Nos. 15 and 16

**Interrogatory Nos. 15 and 16** asked for identifying information about handicapped
and/or disabled employees, as well as non-handicapped and/or non-disabled

employees, <u>at the location where the Plaintiff worked</u>, whose employment was terminated (Interrogatory No. 15) or subjected to other adverse action (Interrogatory No. 16) in the last five years and the reasons given for such termination of employment. We address the Defendant's various objections to answering these Interrogatories in turn, as substantially similar objections have been set forth for each Interrogatory.

First, in response to the charge that these Interrogatories are "overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence," the Plaintiff has reasonably limited these Interrogatories to a five-year period and the location where the Plaintiff worked. Thus, the Defendant's objection based on the fact that "Verizon is a national company with thousands of employees" is irrelevant to these Interrogatories, as Interrogatory Nos. 15 and 16 do not ask for information with reference to every Verizon employee nationwide. In addition and contrary to the Defendant's contention, the Plaintiff has not asked for "all documentation and correspondence" related to the employees referred to in Interrogatory Nos. 15 and 16, but rather has asked for the basic information of "names, addresses, telephone numbers, job titles, and reasons given for termination."

As for the Defendant's contention that the Plaintiff "has not alleged a disparate impact theory of liability, nor is her claim based upon an alleged pattern or practice of discriminating against employees with alleged disabilities," it is not clear how the Defendant came to this conclusion. The Federal Rules of Civil Procedure do not indicate that the Plaintiff must specify a disparate impact theory of liability and/or "pattern or practice" theory of liability when alleging violations of the Americans with Disabilities Act and/or Massachusetts General Laws Chapter 151B. Rather, the rules of pleading provide that, "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Fed.R.Civ.P. 8(e)(1). The Plaintiff's allegations of handicap and/or disability discrimination encompass the above-referenced theories of liability and thus the Plaintiff has properly asked for information with reference to Verizon employees in Interrogatory No. 15. *See e.g., Massachusetts Commission Against Discrimination Guidelines: Employment Discrimination on the Basis of Handicap – Chapter 151B, Section IX. Proving Handicap Discrimination.*

As for the Defendant's expressed concern about protecting third parties' privacy with regard to these Interrogatories, we propose that the Parties enter into a mutually-agreeable confidentiality agreement in order that such relevant information be produced while respecting such individuals' privacy concerns.

<u>Interrogatory No. 17</u>

**Interrogatory No. 17** asked for known addresses and telephone numbers of individuals' who are likely to have discoverable information. The Defendant answered by referring the Plaintiff to its Answer to Interrogatory No. 10, which provided a list of potential hearing and/or trial witnesses with accompanying general anticipated testimony. Given that the Defendant is under an obligation to seasonably supplement its Answer pursuant to the Federal Rules of Civil Procedure, at this stage we simply ask that the Defendant delineate which of the identified individuals it will accept service of deposition and/or trial subpoenas on behalf of; and for those individuals

identified who the Defendant will <u>not</u> accept such service, to please provide us with their last known addresses and telephone numbers.

<u>Interrogatory No. 18</u>

**Interrogatory No. 18** asked for information about employees who assumed the Plaintiff's job duties after the termination of her employment. The Plaintiff is willing to narrow this Interrogatory to the geographic location where the Plaintiff worked. Information about replacement employees is not only relevant but is central to a plaintiff's claims in a handicap and/or disability discrimination case. *See* <u>Flanigan-Uusitalo v. D.T. Industries, Inc.</u>, 190 F. Supp. 2d 105, 114 (D. Mass. 2001)(plaintiff must show that "she was replaced by a non-handicapped person or that the position she had occupied remained open and the employer sought to fill it" as part of her *prima facie* case, citing <u>Dartt v. Browning-Ferris Industries, Inc.</u>, 427 Mass. 1, 2 [1998]). As noted above, we are entirely willing to enter into a suitable confidentiality agreement on behalf of our Client in order to protect third-party individuals' privacy.

<u>Interrogatory No. 20</u>

**Interrogatory No. 20** sought information about handicap and/or disability discrimination claims and/or retaliation claims filed against Verizon in the last ten years. The Plaintiff is willing to narrow this request to a smaller time period of five years and the geographic location of the *Plaintiff's location of employment with Verizon. For the same reasons noted above with* reference to Interrogatory Nos. 15 and 16, the Defendant's issue with theories of liability is unfounded. The information sought by way of Interrogatory No. 20 is expected to show a pattern or practice of discrimination and/or retaliation and is, especially now, narrowly drawn to elicit such information. The Plaintiff has certainly alleged that the Defendant, through its agents, subjected the Plaintiff to adverse employment action based upon discriminatory animus, and claims of discrimination and/or retaliation, especially in the same geographic location as that of the Plaintiff's employment, is expected to provide circumstantial evidence of discriminatory animus.

<u>Interrogatory No. 21</u>

**Interrogatory No. 21** simply sought the names and job titles of Verizon employees, <u>at the Plaintiff's geographic location of employment with Verizon,</u> who were or are considered handicapped and/or disabled and/or physically impaired and/or to have or have had a medical condition, the identity of said handicap and/or disability and/or physical impairment and/or medical condition, whether and when the respective employees requested a reasonable accommodation, and whether the accommodation was granted. The Plaintiff is willing to narrow this request to a five-year period. Please clarify the Defendant's contention that it is "not in a position of identifying which, if any, of the employees who have worked at Ms. Miller's location in the last ten years were regarded as having a disability or otherwise had a medical condition which may qualify them as disabled." Surely there are employees, such as the Plaintiff, who have identified themselves, on paper or otherwise, as having a handicap and/or disability and/or physical impairment and/or medical condition. At the very least, the Defendant can, and should

subject to a confidentiality agreement, identify those employees since such information is relevant and the Defendant is "in a position" to do so.

### *Defendant's Responses to Plaintiff's Document Requests*

#### Request No. 1

**Request No. 1** sought documents related to handicap and/or disability discrimination claims and/or retaliation claims filed against Verizon in the last ten years. The Plaintiff is willing to narrow this request to a smaller time period of five years and the geographic location of the Plaintiff's location of employment with Verizon. For the same reasons noted above with reference to Interrogatory Nos. 15, 16, and 20, the Defendant's issue with theories of liability is unfounded. The information sought by way of Request No. 1 is expected to show a pattern or practice of discrimination and/or retaliation and the Plaintiff has now more narrowly drawn the Request to elicit such information. The Plaintiff has certainly alleged that the Defendant, through its agents, subjected the Plaintiff to adverse employment action based upon discriminatory animus, and claims of discrimination and/or retaliation, especially in the same geographic location as that of the Plaintiff's employment, is expected to provide circumstantial evidence of discriminatory animus.

#### Request No. 2

**Request No. 2** sought documents related to any Verizon employee statements regarding claims of disability and/or handicap discrimination and/or retaliation, during the time period of the Plaintiff's tenure of employment up to the present. In responding, the Defendant referred only to the non-privileged documents which it has produced relating to the Plaintiff. For the same reasons set forth above with reference to **Request No. 1**, these statements are relevant and discoverable, as the Plaintiff expects them to show discriminatory animus. While the Plaintiff has already narrowed this Request to cover the time period of her tenure with Verizon to the present, she is willing to further narrow this request to the location of her employment.

#### Request No. 9

**Request No. 9** sought copies of correspondence and other documents relating or referring to Verizon's written and/or verbal policies and/or procedures regarding disability and/or handicap discrimination and/or retaliation in the last ten years. The Defendant responded by producing copies of certain policies. *See* discussion above regarding **Interrogatory Nos. 12 and 13**. The Plaintiff is willing to narrow this Request to the time period of the Plaintiff's tenure of employment to the present. This Request is reasonable and relevant, as such documents are expected to show the disparate application of such policies among Verizon employees, thus revealing discriminatory intent and/or action taken against the Plaintiff.

#### Request No. 10

In **Request No. 10**, the Plaintiff reasonably requested copies of the same documents referred to in **Request No. 9**, but with reference to those policies and/or procedures <u>which applied to the</u>

Plaintiff during her tenure with Verizon. The Defendant did produce copies of policies in response to the Plaintiff's Request, without stating whether these represented all of the policies and/or procedures which applied to the Plaintiff during her employment with Verizon. The Plaintiff is entitled to, at the very least, copies of all of the policies and procedures regarding disability and/or handicap discrimination and/or retaliation which applied to the Plaintiff during her tenure. Such policies go directly to the heart of the Plaintiff's claims in this case. If the Defendant has in fact produced all such policies and procedures, the Defendant should so indicate in a supplemental response.

### Request No. 12

**Request No. 12** asked for documents relating to employees who assumed the Plaintiff's job duties after the termination of her employment. The Plaintiff is willing to narrow this Request to the geographic location where the Plaintiff worked. As noted above with reference to **Interrogatory 18**, information about replacement employees is not only relevant but is central to a plaintiff's claims in a handicap and/or disability discrimination case. *See* Flanigan-Uusitalo v. D.T. Industries, Inc., 190 F. Supp. 2d 105, 114 (D. Mass. 2001)(plaintiff must show that "she was replaced by a non-handicapped person or that the position she had occupied remained open and the employer sought to fill it" as part of her *prima facie* case, citing Dartt v. Browning-Ferris Industries, Inc., 427 Mass. 1, 2 [1998]). Also as noted above, we are entirely willing to enter into a suitable confidentiality agreement on behalf of our Client in order to protect third-party individuals' privacy.

### Request No. 14

**Request No. 14** properly asked for the personnel files, time sheets, attendance records, and other similar documents of all employees who held the same position as the Plaintiff, or who performed the same or similar job responsibilities as the Plaintiff, in the last five years. The Defendant responded by only producing documents "relevant to the Plaintiff's attendance record." The Plaintiff reiterates her request for the above-referenced documents and is willing to narrow this Request to the geographic location where she worked. Such documents clearly relate to the issue of disparate treatment and are therefore discoverable.

Please respond to the above-delineated, outstanding discovery issues in writing within the next two business days so that we may narrow the areas of disagreement and ideally resolve these issues short of the need for the Plaintiff to file a Motion to Compel.

Very truly yours,

Michael O. Shea/SG

Michael O. Shea

*cc: File*

Exhibit L



**Windy Rosebush**
03/10/2006 03:28 PM

To: "Anne Diebold" <anne@michaelshealaw.com>
cc: Timothy Van Dyck/Boston/EALaw@EALaw
Subject: Verizon/Miller/9C Letter

Anne,

I wanted to acknowledge Michael's letter of 2/27/06, which I received on 3/1.  I plan to respond shortly.  I similarly have discovery issues that I need to raise with you.

Regards,

Windy

# Exhibit M

**ECFnotice@mad.usco
urts.gov**

03/10/2006 04:27 PM

To: CourtCopy@mad.uscourts.gov
cc:
Subject: Activity in Case 3:05-cv-30117-KPN Miller v. Verizon
Communications, Inc. "Motion to Compel"

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents
once without charge. To avoid later charges, download a copy of each document
during this first viewing.**

### United States District Court

### District of Massachusetts

Notice of Electronic Filing

The following transaction was received from Shea, Michael O. entered on 3/10/2006 at
4:27 PM EST and filed on 3/10/2006

| | |
|---|---|
| **Case Name:** | Miller v. Verizon Communications, Inc. |
| **Case Number:** | 3:05-cv-30117 |
| **Filer:** | Kathleen Miller |
| **Document Number:** | 18 |

**Docket Text:**
MOTION to Compel *Production of Documents and Answers to Interrogatories* by
Kathleen Miller.(Shea, Michael)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=3/10/2006]
[FileNumber=1346044-0
]
[89bd7715c6104577b6a6366ba1fdd8ceb4a2ddab7dad56977c87f8d5917e094c084
c46fde8ef5f05a999f597ee14eb9c6c4bc616f0606fa774ad1f0f9cebf139]]

**3:05-cv-30117 Notice will be electronically mailed to:**

Anne S. Diebold    anne@michaelshealaw.com

Windy L. Rosebush    wrosebush@edwardsangell.com

Michael O. Shea     owenshea@aol.com

Timothy P. Van Dyck     tvandyck@EdwardsAngell.com

**3:05-cv-30117 Notice will not be electronically mailed to:**

# Exhibit N



**"Anne Diebold"**
**<anne@michaelsheala**
**w.com>**

To: <WRosebush@eapdlaw.com>
cc: "Michael O. Shea" <owenshea@aol.com>
Subject: Re: Activity in Case 3:05-cv-30117-KPN Miller v. Verizon
Communications,   Inc. "Motion to Compel"

03/13/2006 03:27 PM

Hi Windy: First, we stand by our position that the Plaintiff is entitled to the documents as set forth in Attorney Shea's letter, and our motion to compel. Second, you chose not to respond to Attorney Shea's letter, when it specifically requested that you do so in order for the parties to narrow the outstanding discovery issues, until late last Friday afternoon. You had plenty of opportunity to do so. As for your request that we withdraw the motion, I cannot make a unilateral decision today to withdraw the motion, as Attorney Shea is senior counsel on this case, has been in depositions all day, and I have not yet had a chance to discuss your request with him. We will let you know our position tomorrow.

Anne
----- Original Message -----
**From:** WRosebush@eapdlaw.com
**To:** Anne Diebold
**Cc:** TVanDyck@eapdlaw.com
**Sent:** Monday, March 13, 2006 9:40 AM
**Subject:** Re: Activity in Case 3:05-cv-30117-KPN Miller v. Verizon Communications, Inc. "Motion to Compel"


Anne,

Please let me know your position on withdrawing the motion to compel/memo in support. I do not believe that Plaintiff is entitled to these documents because they are not relevant and overly broad and unduly burdensome. Moreover, I do not think that sending a letter that does not comply with Local Rule 37.1 and then filing a Motion to Compel without so much as a telephone call (or mention during numerous telephone calls we have had to schedule depositions) complies with the letter or spirit of the rule. Please advise today, so that we may respond accordingly.

Windy



**"Anne Diebold"**
**<anne@michaelshealaw.com>**

To:      <WRosebush@eapdlaw.com>
cc:
Subject:      Re: Activity in Case 3:05-cv-30117-KPN Miller v. Verizon
Communications,   Inc. "Motion to Compel"

03/10/2006 06:42 PM


and of course this
----- Original Message -----

**From:** WRosebush@eapdlaw.com
**To:** Anne Diebold ; Owenshea@aol.com
**Cc:** TVanDyck@eapdlaw.com
**Sent:** Friday, March 10, 2006 4:51 PM
**Subject:** Activity in Case 3:05-cv-30117-KPN Miller v. Verizon Communications, Inc. "Motion to Compel"

Please withdraw this Motion forthwith. No conference has been held pursuant to the local rules. Moreover, I sent Anne an e-mail an hour ago indicating I intended to respond to your letter regarding discovery issues. Your courtesy is appreciated in this regard.

Thank you.

Windy

----- Forwarded by Windy Rosebush/Boston/EALaw on 03/10/2006 04:48 PM -----

ECFnotice@mad.uscourts.gov

To:    CourtCopy@mad.uscourts.gov

cc:

03/10/2006 04:27 PM    Subject:    Activity in Case 3:05-cv-30117-KPN Miller v. Verizon Communications, Inc. "Motion to Compel"

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### United States District Court

### District of Massachusetts

Notice of Electronic Filing

The following transaction was received from Shea, Michael O. entered on 3/10/2006 at 4:27 PM EST and filed on 3/10/2006

| | |
|---|---|
| **Case Name:** | Miller v. Verizon Communications, Inc. |
| **Case Number:** | 3:05-cv-30117 |
| **Filer:** | Kathleen Miller |
| **Document Number:** | 18 |

**Docket Text:**
MOTION to Compel *Production of Documents and Answers to Interrogatories* by
Kathleen Miller.(Shea, Michael)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=3/10/2006]
[FileNumber=1346044-0
]
[89bd7715c6104577b6a6366ba1fdd8ceb4a2ddab7dad56977c87f8d5917e094c084
c46fde8ef5f05a999f597ee14eb9c6c4bc616f0606fa774ad1f0f9cebf139]]

**3:05-cv-30117 Notice will be electronically mailed to:**

Anne S. Diebold     anne@michaelshealaw.com

Windy L. Rosebush     wrosebush@edwardsangell.com

Michael O. Shea     owenshea@aol.com

Timothy P. Van Dyck     tvandyck@EdwardsAngell.com

**3:05-cv-30117 Notice will not be electronically mailed to:**

Boston, Ft. Lauderdale, Hartford, New York, Providence, Short Hills, Stamford, West
Palm Beach, Wilmington, London (Representative office)

Disclosure Required Under IRS Circular 230: Edwards Angell Palmer & Dodge LLP
informs you that any tax advice contained in this communication, including any
attachments, was not intended or written to be used, and cannot be used, for the purpose
of avoiding federal tax-related penalties or promoting, marketing or recommending to
another party any transaction or matter addressed herein.

CONFIDENTIALITY NOTICE
This e-mail message from Edwards Angell Palmer & Dodge LLP is intended only for the
individual or entity to which it is addressed. This e-mail may contain information that is
privileged, confidential and exempt from disclosure under applicable law. If you are not

the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it.

Boston, Ft. Lauderdale, Hartford, New York, Providence, Short Hills, Stamford, West Palm Beach, Wilmington, London (Representative office)

Disclosure Required Under IRS Circular 230: Edwards Angell Palmer & Dodge LLP informs you that any tax advice contained in this communication, including any attachments, was not intended or written to be used, and cannot be used, for the purpose of avoiding federal tax-related penalties or promoting, marketing or recommending to another party any transaction or matter addressed herein.

CONFIDENTIALITY NOTICE
This e-mail message from Edwards Angell Palmer & Dodge LLP is intended only for the individual or entity to which it is addressed. This e-mail may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it.



**Windy Rosebush**
03/14/2006 11:04 AM

To: "Anne Diebold" <anne@michaelshealaw.com>
cc:
Subject: Re: Miller

This case has, to date, been run with mutual respect and professional courtesy, despite numerous postponements of depositions, and agreements for continuances, etc. It is unfortunate that you and Michael have decided to proceed in this manner given that history. We will be filing an Opposition within the time allowed by the Court.

"Anne Diebold" <anne@michaelshealaw.com>

**"Anne Diebold"**
<anne@michaelsheala
w.com>

03/14/2006 10:49 AM

To: <WRosebush@eapdlaw.com>
cc:
Subject: Miller

The information transmitted in this e-mail is intended only for the person or entity to whom or which it is addressed and may contain confidential and/or privileged material. If the reader of this message is not the intended recipient, you are hereby notified that your access is unauthorized, and any review, dissemination, distribution or copying of this message including attachments is strictly prohibited. If you are not the intended recipient, please contact the sender and delete the material from any computer.

Hi Windy:

We will not be withdrawing the Motion to Compel and thus will look for the Defendant's timely response to it.

Anne

Anne S. Diebold, Esq.
Law Office of Michael O. Shea, P.C.
451 Main Street
Wilbraham, MA 01095
Telephone No.: (413)596-8005
Facsimile No.: (413)596-8095

# Exhibit O

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Verizon Communications

295 Worthington Street
Springfield, MA 01103

Person Filing Charge:        Kathleen Miller
This Person (Check One):    (X) Claims to be aggrieved
                             ( ) Is filing on behalf of
Date of Alleged Violation:   02/10/03
Place of Alleged Violation:  Springfield,
EEOC Charge Number:          16CA302135
MCAD Docket Number:          03SEM01853

---

NOTICE OF CHARGE OF DISCRIMINATION WHERE AN FEP AGENCY WILL INITIALLY
PROCESS (See Attached Information Sheet For Additional Information)

You are hereby notified that a charge of employment discrimination under
　　　　[ ] Title VII of the Civil Rights Act of 1964
　　　　[ ] The Age Discrimination in Employment Act of 1967 (ADEA)
　　　　[X] The Americans Disabilities Act (ADA)
Has been received by
[ ]　　The EEOC and sent for initial processing to   MCAD
　　　　　　　　　　　　　　　　　　　　　　　　　　(FEP Agency)
[X]　　The Mass. Commission Against Discrimination
　　　　(FEP) Agency and sent to the EEOC for dual filing purposes.

While the EEOC has jurisdiction (upon the expiration of any deferral requirements if this is a Title VII
or ADA Charge) to investigate this charge, EEOC may refrain from beginning an investigation and
await the issuance of the Agency's final findings and orders. These final findings and orders will be given
weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe
that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by
you to the Agency in the course of its proceedings will be considered by the Commission when it
reviews the Agency's final findings and orders. In many instances the Commission will take no further
action, thereby avoiding the necessity of an investigation by both the Agency and the Commission. This
likelihood is increased by your active cooperation with the Agency.

[X]　As a party to the charge, you may request that EEOC review the final decision and order of the above
　　named Agency. For such a request to be honored, you must notify the Commission in writing within
　　15 days of your receipt of the Agency's issuing a final finding and order. If the agency terminates
　　its proceedings without issuing a final finding and order, you will be contacted further by the
　　Commission. Regardless of whether the Agency or the Commission processes the charge, the
　　Recordkeeping and Non-Retaliation provisions of Title VII and the ADEA as explained on the
　　second page of this form apply.

For further correspondence on this matter, please use the charge number(s) shown.

[ ]　An Equal Pay Act Investigation (29 U.S.C 206(d) will be conducted by the Commission concurrently
　　with the Agency's investigation of the charge.
[X]　Enclosure: Copy of the Charge

---

Basis of Discrimination
( ) Race　　　　　( ) Color　　　　　( ) Sex　　　　　　( ) Religion　　　( ) National Origin
( ) Age　　　　　(X) Disability　　　(X) Retaliation　　( ) Other

Circumstances of alleged violation:
　　SEE ENCLOSED COPY OF THE CHARGE OF DISCRIMINATION (or EEOC FORM 5)

EEOC Charge Number 16CA302135, EEOC Transmittal Letter to Respondent          **VER 0254**

## COMMONWEALTH OF MASSACHUSETTS
## COMMISSION AGAINST DISCRIMINATION

### CHARGE OF DISCRIMINATION

| | |
|---|---|
| Docket No.: 03230l 853 | EEOC/HUD Number: 16CA302135 |
| Filing Date:   June 25, 2003 | Violation Date: February 10, 2003 |

### Name Of Aggrieved Person Or Organization:

Kathleen Miller
17 Lorita Lane
Northfield, MA 01360

Telephone No.: (Complainant's Counsel (413) 733-1955)

### Name Of Employer/Persons Who Discriminated Against Me:

Verizon Communications
295 Worthington Street
Springfield, MA 01103

Number of Employees: 50 plus

### Cause Of Discrimination Based On:

Handicap, disability, Americans with Disabilities Act (ADA), Family Medical Leave Act (FMLA), retaliation, M.G.L. c. 151B, and Title VII of the Civil Rights Act of 1964, as amended

### The Particulars Are:

I, Kathleen Miller, the Complainant, believe that I was discriminated against by the above-named Respondent on the basis of my handicap, disability, Family Medical Leave Act (FMLA) leave and retaliation. The facts support violations of Massachusetts General Laws Chapter 151B, the FMLA, the Americans with Disabilities Act (ADA) and Title VII of the Civil Rights Act of 1964, as amended.

I began my employment on or about June of 1998 as a full-time employee under the job title of customer service representative. Over the time of my employment, I have always performed my job responsibilities well and received increases in wages.

**VER 0255**

I informed the Respondent that I was diagnosed with diabetes in or about February of 2000 when I was diagnosed.

I asked for disability leave to receive medical treatment for my diabetes in or about February of 2000. I requested reasonable accommodation with regard to my symptoms and treatment for the referenced medical condition. Prior to my discriminatory termination of employment, I requested a reasonable accommodation in that I requested some time off from work for further medical treatment, and I was denied that request. Prior to my discriminatory termination of employment, I also requested a modified work schedule. I was denied those requests for reasonable accommodation.

Instead of receiving reasonable accommodation my employment was terminated.

The Respondent's handbooks appear to provide for time off for personal and/or medical reasons.

I was out under FMLA and on disability leave and then my job was essentially terminated.

I believe that I could have performed the essential functions of my job with some reasonable accommodation.

The Respondent's management made statements that led me to believe that taking leave under the FMLA upset them and that my disability and handicap upset them.

I believe that I was retaliated against for taking time under the FMLA and for my handicap and disability.

I also had personal and vacation days that I could have used and I attempted to use and that was rejected.

Again, with some reasonable accommodation, I believe that I could continue to perform the essential functions of my job.

I believe that the Respondent's conduct is in violation of Massachusetts General Laws Chapter 151B, the FMLA, the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964, as amended.

---

I am requesting that the MCAD also file this Charge Of Discrimination with the EEOC, and I hereby give notice that I am requesting and preserving my rights to a jury trial on all claims so triable.

**VER 0256**

I swear or affirm that I have read this complaint and that it is true to the best of my knowledge, information and belief.

*Kathleen Miller*
Kathleen Miller

The Commonwealth of Massachusetts

Hampden, ss.                                                June 25, 2003

Then personally appeared the above-named Kathleen Miller and acknowledged the foregoing instrument to be her free act and deed, before me

Michael O. Shea, Notary Public
My Commission Expires: 11/15/07

Respectfully submitted,

THE COMPLAINANT
KATHLEEN MILLER
By Her Attorney

MICHAEL O. SHEA, ESQUIRE                        Date:  June 25, 2003
Law Office Of  Michael O. Shea
Tower Square, Suite 2308
1500 Main Street
Springfield, MA 01115-5168
Telephone:(413) 733-1955
Facsimile: (413) 731-3300
BBO # 555474

VER 0257