UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-30117-KPN

KATHLEEN MILLER,

            Plaintiff

v.

VERIZON COMMUNICATIONS INC.,

            Defendant



### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### I.    INTRODUCTION

The instant case involves several genuine issues of material fact which preclude it from being disposed of on summary judgment. The Defendant, Verizon Communications Inc. (alternately referred to as "Verizon" or "the Defendant"), has constructed a wall of pretext behind which lie the true reasons for the Plaintiff's wrongful termination of employment. The Defendant would have the Court believe that it terminated the Plaintiff's employment based on violations of Verizon's attendance policies. In reality, and as shown by admissible evidence produced by the Plaintiff, the Defendant, through its agents, terminated the Plaintiff's employment based on unlawful discrimination and failure to provide reasonable accommodations.[1]

---

[1] These facts are set forth in *Plaintiff's Material Facts In Dispute* filed herewith, and are referred to by the indication "*Facts*, ¶___."

The Defendant's management personnel discriminated against the Plaintiff based on her handicap and/or disability, while also discriminating and retaliating against the Plaintiff due to her expressed need for medical accommodation, which Verizon should have granted her.

## II.   THE SUMMARY JUDGMENT STANDARD

At the summary judgment stage, the inferences to be drawn from the facts, taken from affidavits, exhibits, and depositions, "must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, 369 U.S. 654, 655 (1962). See also, Lopez v. Corporation Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-325 [1986] and Adickes v. Kress & Co., 398 U.S. 144, 157 [1970]).

Courts urge a cautious approach in granting summary judgment to employers in discrimination cases where the employer's intent or motive is at issue. The First Circuit has urged courts to use restraint in granting summary judgment once a plaintiff has established a *prima facie* case of discrimination and pretext becomes the issue. Hodgens v. General Dynamics Corporation, 144 F.3d 151, 167 (1st Cir. 1998)(noting difficulty of determining whether employer's motive is legitimate or pretext given the "availability of seemingly neutral rationales under which employer can hide discriminatory intent")(internal citation omitted). Other Circuit courts and the United States Supreme Court support such restraint.

As shown in the following discussion, the Plaintiff's evidence raises genuine issues of material fact in dispute regarding the Defendant's actions and motive for terminating her employment. Therefore, her claims are appropriately left for a jury to decide at trial. *See* Hodgens, 144 F.3d at 167 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 [1986]).

### III.  ARGUMENTS

The Plaintiff has asserted claims under M.G.L.c. 151B and the ADA. Pursuant to said Statutes, she, therefore, must show that there is a material fact in dispute regarding the following: (1) she suffered from a disability (2) she was nevertheless able to perform the essential functions of her job, with or without reasonable accommodation, and (3) the Defendant took adverse action against her because of, in whole or in part, her disability. Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002)(citing Lessard v. Osram Sylvania, Inc., 175 F.3d 193, 197 [1st Cir. 1999]). To establish her reasonable accommodation claim, the Plaintiff must establish that Verizon knew of her disability and did not reasonably accommodate it, in addition to the first two elements just noted. *Id.* at 237-238.[2] The Plaintiff clearly presents material facts in dispute as to the elements of her claims.

#### A.  The Plaintiff Is Disabled As Defined By M.G.L.c 151B.

M.G.L.c. 151B defines "handicap" as "(a) a physical or mental impairment which substantially limits one or more major life activities of a person..." M.G.L.c.151B§1(17). M.G.L.c. 151B§1(17) has two additional subparts which must be read together with subpart (a), outlined herein, so that the true requirement under the law is that "every plaintiff must demonstrate ...an actual impairment, 'record of....impairment,' or being 'regarded as having an impairment' that 'substantially limits one or more major life activities.'" City of New Bedford v. Massachusetts Commission Against Discrimination, 440 Mass. 450 (2003), citing Murphy v. United Parcel Service, Inc., 527 U.S. 516, 521-522 (1999). *See also*, Dahill v. Police Dept. of Boston, 434 Mass. 233 (2001); Ocean Spray Cranberries, Inc. v. Massachusetts Commission

---

[2] Defendant has conceded, for purposes of summary judgment, that it had knowledge of the Plaintiff's disability.

3

Against Discrimination, 441 Mass. 632 (2004); and Dube v. Middelsex Corp., 59 Mass. App. Ct. 734 (2003).

"A person is 'regarded as' disabled …if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." City of New Bedford v. Massachusetts Commission Against Discrimination, 440 Mass. 450 (2003), citing Murphy v. United Parcel Service, Inc., 527 U.S. 516, 521-522 (1999). Therefore, the Plaintiff must show that the impairment, *as the Defendant perceived it*, was substantially limiting. Deas v. River West, L.P. 152 F.3d 471, 480 (5th Cir. 1998)(emphasis added). Whether a plaintiff has a disability is to be made on a case-by-case basis. Calero-Cerezo v. U.S. Dep.. of Justice, 355 F.3d 6, 20 (citing Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 [2002]; Sutton v. United Airlines, Inc., 527 U.S. 471, 483 [1999]). Whether a physical impairment constitutes a substantial limitation is often fact-dependent and not readily disposed of at the summary judgment stage. See School Bd. v. Arline, 480 U.S. 273, 287 (1987).

### 1. The Plaintiff Was Or Was Perceived As Substantially Limited In The Major Life Activity Of Working.

Since the Defendant concedes, for purposes of summary judgment, that the Plaintiff's diabetes constitutes a physical impairment within the meaning of Chapter 151B, and further concedes that working is a major life activity, the Plaintiff shall address only the remaining issue of whether the Plaintiff was substantially limited in her ability to work. The Plaintiff asserts that the Defendant perceived her as substantially limited in the major life activity of working.[3] Facts ¶¶27-47.

To show substantial limitation in the major life activity of working, a plaintiff must show that she was unable to perform a broad class of jobs in comparison to the average person with

comparable training, skills, and abilities. Sutton v. United Airlines, Inc., 527 U.S. 471, 491 (1999)(citing 29 C.F.R. § 1630.2[j][3][i]). In making this determination, courts should consider "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified." Id. (quoting 29 C.F.R. §§ 1630.2(j)(3)(ii)(A), (B). The Plaintiff has been unable to perform a wide class of jobs. Facts ¶¶ 27-47.

The Defendant perceived the Plaintiff as substantially limited in the major life activity of working, since she was unable to work during her various FMLA-approved leave due to her diabetes, and her requests for additional time off due to the side effects of the medications she was taking to control her diabetes after her FMLA-approved leave expired, and her requests to work a modified schedule to accommodate her diabetes.[4] Facts ¶¶ 27-47. See Deane v. Pocono Medical Center, 142 F.3d 138, 144 (3d Cir. 1998)( "even an innocent misperception based on nothing more than a simple mistake of fact as to the severity, or even the very existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability")(citing EEOC interpretive guidelines). See also, Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999) (in order for an employer to be considered as "regarding" an employee as limited in a major life activity, "it is necessary that [the employer] entertain misperceptions about the individual.).

The largest misconception regarding the Plaintiff's condition is evidenced by Verizon's insistence that the Plaintiff be referred (and ultimately job-assigned) to the Employee Assistance Program ("EAP"). Facts ¶¶ 76-78. EAP is a program for those employees that have drug or

---

[3] See Calero-Cerezo, 355 F.3d at 21 (1st Cir. 2004)(U.S. Supreme Court and First Circuit have assumed, without deciding, that "working" constitutes a "major life activity").

alcohol abuse problems or emotional difficulties.[5] Facts ¶¶76,78,83 and Defendant's Exhibit F. The Plaintiff was diagnosed with diabetes in February of 2000 and informed Verizon in a telephone call to her manager on the same date. Facts ¶27. The Plaintiff had a chronic medical condition and the Defendant knew it.[6] Facts ¶¶27-26 and 74. Therefore, Verizon's misconceptions regarding the Plaintiff's condition and ultimate termination of her employment are sufficient for a finding that she was perceived as substantially limited in the major life activity of working. Facts ¶¶ 27-47. See also, discussion herein at Section III.C. regarding Verizon's failure to accommodate Plaintiff by their failure to enter into an interactive process with her relative to said requests. Facts¶¶ 84-96.

The cases cited by the Defendant for the proposition that the Plaintiff was not substantially limited in the major life activity of working can be distinguished. The plaintiff in the case of <u>Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C.</u> 115 F. Supp. 2d 127 (D. Mass. 2000) allegedly suffered cognitive deficits resulting from the effects of chemotherapy and, therefore, could not complete the essential functions of her position with the defendant company because it required her to learn the new computer programs. The plaintiff in <u>Whitney</u> was not found to be substantially limited in the major life activity of working, based in part on the fact that a few weeks after her termination from employment with the defendant, the plaintiff obtained employment requiring her to learn new computer programs and she did so successfully. In contrast, the current Plaintiff did not obtain substitute full-time employment for seven months after the termination of her employment with the Defendant. Facts ¶107. And, when she did

---

[4] There is a dispute as to whether the Plaintiff's requests for time-off and reasons given therefore are related to her diabetes. See Facts ¶56. The Plaintiff insists that whether or not said reasons relate to the diabetes is a genuine issue of material fact that should be left for the trier of fact.

[5] If the EAP had alternative indications as the Defendant suggests, said indications were not communicated to the Plaintiff, nor were Verizon managers aware of same. Facts ¶¶74, 76, 78.

[6] Defendant has indicated for the purposes of this summary judgment that they concede Defendant's knowledge of the Plaintiff's diabetic condition.

6

become employed full-time, it was for Magic Wings, a business owned and operated by the Plaintiff's father. The Plaintiff remains substantially limited in her ability to work and performing other life functions. The Plaintiff is also being accommodated for her diabetes at Magic Wings. Facts ¶107 and Plaintiff's Affidavit; Exh. 9.

Likewise, the facts upon which Verizon asserts in support of their proposition that the Plaintiff was not substantially limited in the major life activity of working are misleading because they cite to portions of the Plaintiff's deposition transcript that elucidates information about her current status and not how and what she was doing during her employment and at the time of her termination from employment with Verizon.

### 2. The Plaintiff Was Substantially Limited In Other Major Life Activities. [7]

A major life activity is "a basic activity that the average person in the general population can perform with little or no difficulty." Pack v. Kmart Corp., 166 F.3d. 1300, 1305 (10th Cir. 1999). *See also*, McAlindin v. City of San Diego, 192 F.3d. 1226, 1233 (9th Cir. 1999).

The Defendant has a very narrow and erroneous interpretation of the applicable law and has morphed the meaning of substantial limitation into meaning utter inability as determined by statements in their Memorandum such as "there were no activities that Ms. Miller was completely prevented from doing." [8]

The Plaintiff has alleged that due to her diabetic condition she was also substantially limited in the major life activities of basic mobility, sleeping, and eating. Facts ¶¶ 27-47.

---

[7] The Defendant indicates that the Plaintiff should be precluded from making arguments relative to substantial limitation of any major life activity other than work due to alleged failure to supplement interrogatories. However, relevant case law dictates that in order to make a determination as to whether a genuine issue of material fact exists, the court must consider the pleadings, deposition testimony, answers to interrogatories and admissions on file together with any affidavits. The Plaintiff also testified in her deposition regarding her life activities that are affected by her diabetes.

[8] *See* Bragdon v. Abbott, 524 U.S. 624, 641, 118 S.Ct. 2196, 141 L.Ed. 2d 540 (1998) (impairment need not cause an "utter inability" to perform the major life activity in order to constitute a substantial limitation on that activity).

7

### i. The Plaintiff Was Substantially Limited In The Major Life Activity Of Basic Mobility.

In Lemire v. Silva, 104 F.Supp.2d. 80, 86-87 (D. Mass. 2000), Judge Keeton determined that mobility is a major life activity. The plaintiff in Lemire was unable to leave her house at times due to her disability and was also unable to travel short distances which included travel to work, also due to her disability. Like the plaintiff in Lemire, the instant Plaintiff was unable, as a result of her disability, to travel to work or to leave her home. Facts ¶¶27-47.

Of significant importance is the fact that the Defendant's Memorandum contains a diatribe regarding Plaintiff's travel habits. Yet they too cite to the Lemire case under the proposition that travel is not a major life activity unless it affects one's basic mobility.

It is, therefore, a question of fact as to whether or not Plaintiff's activities are considered travel or basic mobility and, therefore, cannot be disposed of at summary judgment and must be reserved for trial. See Fink v. Printed Circuit Corporation, 204 F. Supp.2d 119 (D.Mass. 2002).

### ii. The Plaintiff Was Substantially Limited In The Major Life Activity Of Sleeping.

The Plaintiff has indicated that during the one year prior to her diabetes diagnosis and for three years thereafter, she was sick on a daily basis and would often "wake up in the middle of the night and be sick." The Plaintiff also suffered from insomnia and a lack of sleep related to her diabetes. Facts ¶30. See generally Facts ¶¶27-47. The Defendant concedes that sleep is a major life activity and cites to Cornwell v. Dairy Farmers of America, Inc., 369 F. Supp. 2d. 87 (D. Mass. 2005) which supports the Plaintiff's proposition.

### iii. The Plaintiff Was Substantially Limited In The Major Life Activity Of Eating.

The Defendant cites to the case of Fraser v. Goodale, 342 F. 3d 1032, 1040-41 (9th Cir. 2003), cert. denied, 541 U.S. 937 (2004), which actually supports Plaintiff's proposition that this

8

matter cannot be disposed of at this stage of the litigation in that it demonstrates that although eating is a major life activity, "eating specific foods, or eating specific amounts of food, <u>might or might not be a major life activity</u>." (emphasis added). It is a question of fact.

The Defendant also cites to <u>Scheerer v. Potter</u>, 443 F.3d. 916 (7th Cir. 2006), which is also distinguishable from the facts of the instant case. Unlike the instant Plaintiff, the plaintiff in <u>Scheerer</u> had dietary restrictions revolving around weight loss and not around his diabetic condition, and, therefore, was not found to have a substantial limitation on the major life activity of eating.

Although the Plaintiff adjusted to her diet restrictions over time, her diet restrictions consist of limiting sugar intake, avoiding all fruit juice, some fruits, white rice, white bread, potatoes, pasta, enriched flour and products that are not wheat-based, and are all related to controlling her blood sugar and diabetes. Facts ¶29. The Plaintiff still suffers from gastroenteritis and her other symptoms of diabetes today and she had at the time of her termination. Facts¶¶27-47.

Case law supports that Plaintiff's dietary restrictions constitute a substantial limitation of the major life activity of eating. The plaintiff in <u>Branham v. Snow</u>, 392 F.3d 896 (7th Cir. 2004), like the instant Plaintiff, was diabetic and required to check his blood sugar multiple times throughout the day. Facts ¶43. He was never free to eat what he wanted to eat, had to eat only certain types of food, and all of these things were dictated by his diabetes. <u>Id</u>, at 903.

3. **Whether With Or Without Mitigating Factors, Plaintiff Is "Handicapped" Under M.G.L.c.151B.**

Even with "mitigating measures" the Plaintiff was substantially limited in major life activities (as discussed herein) as she was sick on a daily basis for one year prior and three years after her diabetes diagnosis. Facts ¶¶27-47. The symptoms affecting her daily life

9

activities were present at the time of her termination of employment from the Defendant and continue today; albeit, she was not using "mitigating measures" prior to her diabetes diagnosis of February of 2000. Facts ¶¶27-47. Therefore, the diabetes alone, absent the inclusion of mitigating factors, despite use of them after the February 2000 diagnosis, rendered the Plaintiff disabled under the law.

**B.    The Plaintiff's Ability To Perform The Essential Functions Of Her Position, With Or Without Accommodation, Is A Material Fact That Cannot Be Evaluated At Summary Judgment Because There Exists A Dispute Relative To Whether Or Not Attendance Is An Essential Function Of The Customer Service Representative Position.**

The true nature of the Plaintiff's essential job functions are a question of fact, are material to the determination of this case, and are in dispute. Therefore, disposal of this case cannot be made at the summary judgment stage.[9] The Defendant cites to a multitude of cases that support the proposition that regular attendance can be considered an essential function of "most jobs."[10] The Defendant also makes reference to the Plaintiff's Job Brief which is equivalent to a job description in alleging that attendance is an essential function of the position. However, job descriptions are non-binding and merely act as a factor, not the only factor, in the analysis. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 542 (1995). Likewise, the Defendant fails to assert sufficient evidence to support the proposition that regular attendance is an essential function of the Plaintiff's Service Representative ("SR") position. It is the Plaintiff's position that the essential functions of the SR position are handling incoming calls and resolving customer issues and that with a reasonable accommodation she would have been able to perform

---

[9] The Plaintiff concedes, for purposes of summary judgment, that case law supports that regular attendance can be considered an essential function of a position. The Plaintiff argues, however, that set attendance is not an essential function of the Plaintiff's position.
[10] Defendant's Memo at II.B.1.

10

these essential functions." Facts¶¶5 and 6-19. The Plaintiff's calls could easily have been answered by literally hundreds of SRs and other call centers. Facts¶¶6-19.

The Job Brief for the SR position does indicate that regular attendance is "important," yet not required.[11] The SR Job Brief, however, must also be read in conjunction with Defendant's Attendance Policy. Facts ¶¶20-26. There is no set number of days indicated in the Verizon Attendance Policy so as to define what constitutes poor attendance. Facts ¶23. Additionally, there is no "hard and fast rule" as the same pertains to an employee's absences. There are only department practices. Facts ¶10. The hours that a SR is to work is determined by department managers and is supposed to be based on an individual's qualifications, preferences and seniority in determining such hours; yet management of the Defendant failed to examine the Plaintiff's qualifications, medical condition or preference in determining her hours. Facts ¶15.

Verizon's attendance policy does not allow for sick days, as management considers any absence related to being ill as an unapproved absence that subjects an employee to potential discipline should that absence not be approved under FMLA. Facts ¶48. Therefore, every single time a Verizon employee is ill and seeks to have a day off due to an illness, the employee must call into the designated "800" number and request FMLA leave. Facts ¶48. Verizon does recognize "that all employees are subject to various occurrences in their daily lives which require them to be off the job from time to time," including illness, further indicating that Verizon exercises its discretion in allowing time off with regard to "extraordinary bona fide illnesses." Facts ¶23 and 24. Diabetes is an extraordinary bona fide illness. Facts ¶24. Under the Defendant's policy, non-management employees with a handicap like the Plaintiff could work modified hours per week or work a modified work schedule for medical needs that make early morning work difficult. Facts ¶10.

11

In light of the foregoing, regular attendance is not an essential function of the SR position since the employee's attendance is at the discretion of the employee's managers and can be modified if an employee, like the Plaintiff, suffers from a diabetic condition that makes early morning work difficult. Facts ¶5 and 23. See also, Facts ¶¶6-19 and 84-96. In Ward, there were material facts in dispute as to whether a modified work schedule should have been granted. See also Fink, supra. Both of these cases are strikingly on point with respect to the issues in the instant case. The facts of the instant case are similar to those outlined in Ward v. Mass Health Research Institute, Inc., 209 F.3d 29 (1st Cir. 2000), wherein regular attendance was not determined as an essential function of the position and the plaintiff's arthritic condition forced him to come to work three to five hours later than the start of the shift.

Instead of being granted a modified work schedule for her diabetes, the instant Plaintiff was disciplined for her diabetes-related absences, including some of the FMLA-approved time off, and was required to take full days off instead of modifying her schedule or allowing her the occasional early morning hours off. By August of 2001, the Plaintiff had improved and occasionally required a full day off, but otherwise was fully functional by eleven o'clock in the morning. Facts ¶¶10, 40, 54. This is further evidenced by the Union's acknowledgment that the Plaintiff was not taking advantage of her full FMLA-approved time and that the Plaintiff, instead, returned to work as soon as she was feeling better. Facts ¶¶74-76. Although Verizon managers indicated that additional time off due to a diabetes-related condition is reasonable after the exhaustion of FMLA time, they disciplined the Plaintiff for doing just that. Facts ¶¶33-63.

The Defendant contends that, on the one hand, Verizon has never had an SR work from home and that this would not be impossible. On the other hand, Verizon managers indicated that an SR could work from home subsequent to a review as part of an interactive process relative to

---

[11] Defendant's Memo at II.B.1.

a request for an accommodation. Facts ¶10. As discussed below, Verizon never provided the Plaintiff with that opportunity.

As to the Defendant's assertion that regular attendance is an essential job function because of the strict observations that Defendant conducts of its SRs, Verizon managers have the discretion to decide when to conduct a remote observation and provide a modified schedule to the Plaintiff. This would not have created a hardship or been unreasonable. Facts ¶19.

### C.   Verizon Failed To Accommodate The Plaintiff.

Since the Defendant has conceded, for the purposes of summary judgment (Defendant's Footnote 6), that the Plaintiff did advise Verizon of her disability and the need for reasonable accommodation, the Plaintiff shall focus solely on the reasonableness of such requests and Verizon's failure to accommodate her. It is important to note, however, that Verizon 's management presented significantly conflicting testimony on the subject of whether they were even aware of the Plaintiff's diabetic condition. Facts¶¶84-96

#### a.   Plaintiff's Requests For Accommodation Were Reasonable.

An accommodation is "reasonable" if it enables the employee requesting it to perform the essential functions of her job and that such accommodation was "feasible for the employer under the circumstances." Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 23 (quoting Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259[1st Cir. 2001]). The employer then assumes the burden of explaining why such an accommodation might be unduly burdensome, for example, if the proposed accommodation presents a financial burden or hidden costs. Reed v. LePage Bakeries, 244 F.3d 254, 259-260 (1st Cir. 2001). Here the Defendant could easily have accommodated the Plaintiff's request for a modified work schedule and her request for use of personal and vacation time. Facts¶¶84-96.

13

The Defendant failed to engage in the required interactive process and for failing to reasonably accommodate the Plaintiff by dismissing out of hand the Plaintiff's request for a modified work schedule. Facts ¶¶84-96. In determining an appropriate accommodation, employers must be willing to consider modifying ordinary work rules, terms, and conditions of employment. Beck v. University of Wisconsin Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996)(internal citation omitted); *see also* Ward v. Massachusetts Health Research Institute, 209 F. 3d 29, 36, n.6 (1st Cir. 2000)(requests for modification of work schedules by way of "flexible" schedules are not per se unreasonable) and Fink. At the time that the Plaintiff requested such a modification, she occasionally required a full day out of work but was able to accomplish the essential functions of her position by 11:00 a.m. Facts ¶40.

Under Massachusetts Law, a reasonable accommodation is defined as:

Any adjustment or modification to a job (or the way the job is done), employment practice, or work environment that makes it possible for a handicapped individual to perform the essential functions of the position involved and to enjoy equal terms, conditions and benefits of employment. [Mass. Commission Against Discrimination]

Lukacinsky v. Panasonic Service Company, (D.Mass.2004)(quoting Ocean Spray Cranberries v. Mass. Commission Against Discrimination, 441 Mass. 632, 648 [2004]).

As explained herein, Verizon believed that providing modified schedules to employees who have diabetes, or in particular to employees, required a modified work schedule in the event that morning hours were prohibited by medical needs, was reasonable. Yet the Defendant denied the Plaintiff the very same thing. Facts¶¶10, 84 and 85-96 . The Defendant's Memorandum contradicts the Defendant's position regarding the reasonableness of modified schedules and incorrectly indicates that the Plaintiff's requests would amount to an "open-ended" schedule that would cause undue hardship as same relates to unpredictable absenteeism. It is important to note that the Plaintiff was not requesting a completely open-ended schedule and she identified the

14

time that she could report to work each day. This modified work schedule could have easily been accommodated by the Defendant. Facts, ¶¶84-96.

The Supreme Judicial Court of Massachusetts has indicated that federal case law construing the ADA should be followed in interpreting the Massachusetts disability law. See Labonte v. Hutchins & Wheeler, 678 N.E.2d 853, 856 n. 5 (Mass. 1997); Wheatley v. American Tel. & Tel. Co., 636 N.E.2d 265, 268 (Mass. 1994). Under the Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, the Defendant should have granted the Plaintiff the requested modification of her work schedule as requested. (Enforcement Guidance Question Nos. 22, 34 and 36; Exh. 12). Under the Guidelines: Employment Discrimination On The Basis Of Handicap-Chapter 151B, the same holds true. (MCAD Guidelines, Special Topics X.B.; Exh. 11). The modification would not have caused the Defendant an undue hardship as calls are easily fielded by other SRs and there has never been a problem with unsatisfied customers or a business loss in the past. Facts, ¶¶84-96.

As noted above, the cases of Fink v. Printed Circuit Corporation, 204 F. Supp.2d 119 (D.Mass. 2002) and Ward v. Massachusetts Health Research Institute, 209 F. 3d 29 (1st Cir. 2000) are similar to the facts of the instant case and should be dispositive of the Defendant's Motion for Summary Judgment. The plaintiffs in Fink and Ward were allowed to proceed past summary judgment with facts far less compelling than in the instant case.

      b.    **Verizon Failed to Enter Into Interactive Process With the Plaintiff Relative to Her Requests For Accommodation.**

The Defendant was required yet failed to engage in the "informal interactive process" of determining a reasonable accommodation. See Garcia-Ayala v. Lederle Parenterals, Inc., 212 F. 3d 638, 648 n. 13 (1st Cir. 2000); *see also*, Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 515

15

(1st Cir. 1996). See also Facts¶¶84-96 and 109-287. The Defendant had an obligation, once its management was aware of the Plaintiff's disability, to "engage in a meaningful dialogue with the employee to find the best means of accommodating that disability." (emphasis added). See Tobin v. Liberty Mutual Insurance Company, 433 F.3d 100, 108. (1st Cir. 2005). Even with its "limited and carefully-defined role," an employer may not simply reject any request for accommodation without further discussion, as it did in the instant case. Id, at 109. Facts ¶¶84-96. The case of Tobin differs from the instant case because the employer in Tobin engaged in many discussions with the employee and offered several accommodations.

In the instant case, the Defendant terminated the Plaintiff's employment without any meaningful dialogue regarding accommodations. Instead, the Defendant attempts to hide behind its attendance policy and say that its management was unaware of the Plaintiff's diabetes-related absences, but the Defendant failed to comply with discussion with the Plaintiff concerning a modified work schedule, or any other accommodation, based upon her diabetic condition. However, as described herein, Defendant's attendance policy carried with it no great weight because the application of its processes was completely discretionary. Facts ¶10, 23, 24. Had the Defendant entered into a meaningful discussion with the Plaintiff regarding her requests for a modified work schedule, the Plaintiff could have performed the essential functions of her job. Facts ¶40 and 84-96. The Defendant also cowers away from discussion relative to the interactive process by accusing the Plaintiff of being the inactive participant in that process, despite compelling evidence that she went to them requesting accommodation and was outright refused without further discussion. Facts ¶84. The Defendant supposedly commenced the interactive process by requiring the Plaintiff to report to the EAP, a program designed to assist employees with mental health related problems. The Defendant relies on the Plaintiff's failure

16

and refusal to do so as her failure to interact, despite the fact that the EAP was contraindicated in this instance and the Plaintiff truly needed a medical review, which never occurred. Fact ¶¶74, 76, 78-83 and Plaintiff's Affidavit; Exh. 9. Finally, no references exist in the Defendant's Statement of Facts or Memorandum to any accommodations that the Defendant would consider reasonable or that were offered to the Plaintiff.

**D.     The Plaintiff Can Demonstrate Pretext.**

In cases where the reasonable accommodation sought would address the problem that led to the employee's termination, courts have found that there is a genuine issue of material fact as to whether the employee was terminated because of his disability. See, e.g., Criado v. IBM Corp., 145 F.3d 437, 444-45 (1st Cir. 1998); Ward, 209 F.3d at 37-38; Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281, 1285-86 (7th Cir. 1996) (noting that, under the circumstances, the employer should have reconsidered its decision to terminate disabled employee even though physician's letter seeking an accommodation came after that decision).

The Defendant's contradictory statements, outlined herein and in the Plaintiff's Material Facts in Dispute, give credence to her assertion that the Defendant did not terminate the Plaintiff due to violations of the Defendant's attendance policy.

The Defendant's articulated reasons for the Plaintiff's termination of employment are not legitimate. The Plaintiff does not rely upon various commentary cited by the Defendant in their Memorandum, but rather, the Plaintiff relies upon the fact that the Defendant knew of her disability and failed to accommodate her, disciplined her for taking time off because of her diabetes and diabetes-related symptoms as a result of their failure to accommodate her, and disciplining her during FMLA-approved time off which is blatantly apparent upon perusal of Defendant's Exhibit J.

The Defendant avers that "no one at Verizon said anything to the Plaintiff suggesting they thought she was handicapped or disabled." Verizon managers may not have said anything directly to the Plaintiff, but they did in fact say it to each other and recorded it on Grievance Facts sheets supplied by the Defendant at Defendant's Exhibit S. Therein the Defendant's management acknowledged that they knew the Plaintiff had a chronic medical condition, needed a medical review, and instead referred her to the EAP for "time-management problems". Facts ¶¶ 74, 76, 78, 83 and Plaintiff's Affidavit; Exh. 9.

All the while, the Plaintiff would have been able to complete the essential functions of her job if reasonably accommodated. Facts ¶¶ 5,40 and 84-96; Plaintiff's Affidavit; Exh. 9. The Defendant failed to accommodate or otherwise enter into discussion with the Plaintiff relative to her requests for accommodation. Facts ¶¶ 84-96.

The current case involves direct evidence of discriminatory animus in the form of failure to provide an accommodation and disciplinary action taken against the Plaintiff as described herein after the Plaintiff initiated the interactive process. Facts ¶84,54 and 109-287. In addition, the Defendant's managers completely contradict themselves on several points, some of which can be summarized as follows: (1) whether the Plaintiff raised her diabetic condition with management; (2) whether the Plaintiff requested a reasonable accommodation for her diabetic condition; (3) whether the Defendant engaged at all in the interactive process; and (4) whether the Defendant lied about having knowledge of the Plaintiff's diabetic condition. Id.

In the present case, a jury should be allowed to determine whether Plaintiff's diabetes-related absences resulting from Verizon's failure to accommodate the Plaintiff's disability influenced their decision to terminate the Plaintiff's employment.

### E. The Plaintiff Can Sufficiently Establish Her Claims Of Retaliatory Discharge

Pursuant to Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 177 (1st Cir. 2003), to establish a claim for retaliation under the ADA, a plaintiff must show that she (1) engaged in protected conduct, (2) suffered adverse employment action, and (3) that there was a causal connection between the protected conduct and the adverse employment action. A request for accommodation falls within the ADA's protection against retaliation. Wright v. CompUSA, 352 F.3d 472, 477 (1st Cir. 2003).[12]

There is almost no reason to cite to case law under this section since the Defendant admits that the Plaintiff was not terminated as a result of her job performance and was terminated solely because of her attendance. Therefore, if Plaintiff's absences are as she claims, related to her diabetes, coupled with Defendant's failure to provide a reasonable accommodation to the Plaintiff which would have ameliorated the attendance problem, there is no other reason but the fact that the Defendant's articulated reason for the Plaintiff's discharge was completely pretextual.

According to Lewis v. Gillette Co., 22 F.3d 22, 24 (1st Cir. 1994), "at a minimum, there must be competent evidence that the alleged retaliators knew of the plaintiff's protected activity and that a retaliatory motive played a part in the adverse employment actions alleged." (internal citations omitted). The Plaintiff's case differs from Lewis, where the court found that the plaintiff failed to make a causal connection between the alleged protected activity, testifying against the employer in an arbitration hearing, and the plaintiff's termination of employment two years later. *Id.* at 25. Here, there can be no other reason for the termination of the Plaintiff's

---

[12] The Defendant has conceded, for the purposes of summary judgment, that the Plaintiff engaged in a protected activity and, therefore, the Plaintiff does not address that issue in its argument.

19

employment than as outlined above, since the Plaintiff's job performance was not at issue and only her attendance.

### IV. CONCLUSION

For all of the foregoing reasons, the Plaintiff respectfully requests that this Court deny the Defendant's Motion for Summary Judgment and allow a jury to rightfully decide her claims.

The Plaintiff
KATHLEEN MILLER
By Her Attorney

\_\_/s/ Michael O. Shea\_  
MICHAEL O. SHEA, ESQ.  
BBO No.: 555474  
Law Office Of Michael O. Shea, P.C.  
451 Main Street  
Wilbraham, MA 01095  
Telephone No.: (413)596-8005  
Facsimile No.: (413)596-8095  

Dated: July 14, 2006

### Certificate Of Service

I hereby certify that a true copy of the foregoing Memorandum was served upon Counsel for the Defendant, Timothy P. Van Dyke, Edwards, Angell, Palmer & Dodge, LLP, 111 Huntington Avenue, Boston, MA 02199, by electronic filing and by first-class mail, postage-prepaid on this 14th day of July, 2006.

/s/ Michael O. Shea  
Michael O. Shea