UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                            )
KATHLEEN MILLER,                            )
                                            )
            Plaintiff,                      )
                                            )
v.                                          )   Civil Action No. 05-30117-KPN
                                            )
VERIZON COMMUNICATIONS INC.,                )
                                            )
            Defendant.                      )
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE**

Defendant Verizon Communications Inc. ("Verizon") has moved to strike portions of the Affidavit of Kathleen Miller ("Miller Aff.") and Plaintiff's Response to Defendant's Statement of Undisputed Facts ("Plaintiff's Response"), as well as to strike portions of two exhibits that Plaintiff submitted in opposition to Verizon's summary judgment motion.

Federal Rule of Civil Procedure 56(e) "requires the parties to submit admissible evidence in supporting and opposing motions for summary judgment." *Feliciano v. State of Rhode Island*, 160 F.3d 780, 787 (1st Cir. 1998). If an affidavit, or any portion of the affidavit, that is submitted in support of a summary judgment motion does not comply with the Rules of Evidence, the Court may not consider it and it should be stricken. *Bolen v. Paragon Plastics, Inc.*, 754 F. Supp. 221, 224 (D. Mass. 1990).

In a number of instances, Plaintiff Kathleen Miller ("Ms. Miller") has failed to provide the Court with admissible evidence that can be considered in opposition to Verizon's Motion for Summary Judgment. In addition, Ms. Miller frequently misrepresents deposition testimony and impermissibly attempts to contradict her own deposition. Finally, the exhibits in question were not produced in discovery, which should bar Ms. Miller from relying upon them.

**I.      MS. MILLER'S AFFIDAVIT**

    **A.      <u>Paragraph 12</u>**

A party opposing summary judgment cannot create a dispute of fact by contradicting in an affidavit her prior deposition testimony.  *See Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."); *Shahzade v. Gregory*, 930 F. Supp. 673, 676 (D. Mass. 1996) (same).  *See also Locator Servs. Group, Ltd. v. Treasurer & Receiver Gen.*, 443 Mass. 837, 864 (2005) ("Our case law establishes that a party, purely in the hopes of defeating summary judgment, may not submit at the eleventh hour an affidavit that contradicts the party's earlier statements and discovery responses."); *O'Brien v. Analog Devices, Inc.*, 34 Mass. App. Ct. 905, 906 (1993) ("[A] party cannot create a disputed issue of fact by the expedient of contradicting by affidavit statements previously made under oath at a deposition.").

    That is precisely what Ms. Miller attempts to do in paragraph 12 of her affidavit.  Ms. Miller spends most of the paragraph describing in detail the alleged symptoms of her diabetes, then ends that paragraph by stating, "I still experience the same symptoms from my diabetes today."  Miller Aff., ¶ 12.  At her deposition, however, Ms. Miller unequivocally testified that her symptoms had improved by the time of her termination, to the point where she no longer felt she was substantially limited in any activities:

> Q.  Things were on the upswing at the time you were terminated from Verizon?
> A.  Definitely.  Yeah.
> Q.  At the point in time when you got terminated from Verizon, did you feel as though you were substantially limited in doing any of your daily activities?
> MS. DIEBOLD:  Objection.

>  A.  No, I didn't feel substantially limited.

Miller Depo., at 109:24 to 110:6.

Thus, Ms. Miller admitted at her deposition that she *was not substantially limited* at the time of her termination, proving Verizon's point that Ms. Miller was not "disabled" or "handicapped." Ms. Miller's affidavit testimony that she still suffers from all of the symptoms she describes directly contradicts this significant prior admission, and should be stricken.

### B.  Paragraph 14

In paragraph 14 of her affidavit, Ms. Miller states:

> Had I been given the accommodations that I had requested (the modified schedule and the use of vacation and personal time), I would not have been penalized for absences relating to my diabetic condition. I do not feel that the absences that were related to my diabetic condition were excessive in any sense and would not have led to my termination.

The statements in paragraph 14 are pure speculation. Ms. Miller is not competent to opine what might have happened if circumstances had been otherwise, nor are her personal beliefs as to what Verizon might have done relevant.[1] The Court should, therefore, strike paragraph 14.

### C.  Paragraph 19

In paragraph 19 of her affidavit, Ms. Miller attempts to argue that her absences had no impact on Verizon. She states that numerous other Service Representatives missed work, and that "the calls that would have been taken by them were simply re-routed to other call centers in the area, if not handled by the many SRs that were in attendance at the Springfield call center." Miller Aff., ¶ 19. Moreover, she claims that "[t]he volume of calls was never so overwhelming when I was absent so as to cause undue hardship on those taking the calls," and that "[t]here are

---

[1] In any case, it is undisputed that Ms. Miller used all of her vacation time every year and still had numerous absences. See Defendant's Statement of Undisputed Facts, ¶ 70. Using vacation time for illness-related absences, therefore, would not have solved the problem.

several call centers in the Northeast with approximately 100 SRs on staff at each center to field calls." *Id.*

Paragraph 19 should be stricken as lacking in foundation, since Ms. Miller has no personal knowledge of the statements she is making.  Ms. Miller is not in a position to testify as to how calls were handled in her absence or what volume of calls came in when she was not there, *precisely because she was not there*.  Similarly, she offers no explanation of the basis for her professed knowledge of call center staffing and routing practices.  It is undisputed that Ms. Miller worked only in the Springfield call center and had no responsibility for the routing of calls or the handling in any way of calls that did not come to her.  Ms. Miller did not have a supervisory position, and would not have had access to high-level information about call volumes and routing practices.  In short, Ms. Miller has no basis in personal knowledge to support the statements she makes in paragraph 19, which should be stricken.

### D. **Paragraph 21**

In paragraph 21, Ms. Miller claims that she still suffers from numerous diabetes-related symptoms and limitations, as a result of which she is substantially limited in her ability to work. As noted above, this testimony directly contradicts her deposition testimony that she had substantially improved by the time of her termination and was not then substantially limited.  As to Ms. Miller's statements that "I do not have many options in terms of employment" and "am … limited in the class or range of jobs I can perform," those are entirely unsupported statements of opinion that are more properly the subject of expert vocational testimony – of which Ms. Miller offers none.  In short, the Court should strike paragraph 21 because it contradicts Ms. Miller's deposition testimony, expresses an improperly supported opinion, and is irrelevant.

## II. PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

### A. Paragraph 6

In the middle of paragraph 6 of the Plaintiff's Response, Ms. Miller writes that "McGovern indicated that under the circumstances [allowing a non-management employee like Plaintiff to work from home] could be possible." Plaintiff's Response, ¶ 6. From this statement, Ms. Miller argues that, even though her job was taking calls in a Verizon call center, Verizon could have accommodated her by allowing her to work from home. *See* Plaintiff's Opposition, at 12-13.

Ms. Miller's statement is a gross mischaracterization of Mr. McGovern's testimony. Mr. McGovern actually said the following:

> Q. Is there some reason that a non-management employee would not be allowed to work from home?
> MS. ROSEBUSH: Objection.
> Q. (By Mr. Shea) If they needed an accommodation for a handicap?
> A. An accommodation process really works on accommodating the person within the workplace. That would be the standard. As to work at home, in general non-management employees work under the direct supervision of a manager and that is not possible in a work at home situation.
> Q. Ever?
> A. I could not answer that.
> Q. Meaning it could be possible?
> A. There could be review and that could be part of an interactive process of accommodation which would be specific to the individual and to the situation.

McGovern Depo., at 50:8 to 51:3. Mr. McGovern's testimony clearly indicates that non-management employees generally cannot work at home. His response to Mr. Shea's impossibly broad question, "it could be possible," is the functional equivalent of "anything is possible," and is inadmissible speculation. In fact, Mr. McGovern's testimony just prior to this exchange makes clear that a Service Representative such as Ms. Miller could not and would not be allowed to work from home:

> Q. Did you have any employees who were service reps who worked from home?
> A. No. Not that I am aware of, no.
> Q. Ever?
> A. No.
> Q. Did you ever accommodate any employees in terms of working from home?
> A. Non-management employees, not that I am aware of.
> Q. What about management employees?
> A. I personally from time to time, yes, on a needs basis. But generally speaking work is done in the office.

McGovern Depo., at 47:8-20.

In short, there is no support in the record for Ms. Miller's statement that a Service Representative might be allowed to work from home. That statement should be stricken from paragraph 6 of the Plaintiff's Response.

### B.     Paragraphs 9, 11, and 12

These paragraphs simply summarize paragraph 19 of Ms. Miller's affidavit, and should be stricken for the same reasons. In addition, paragraph 12 cites to Ms. Miller's affidavit for numerous statements concerning call center coverage, routing, and economic costs, but Ms. Miller's affidavit contains no statement in this regard (and Ms. Miller would not be competent to make them, in any event).

### C.     Paragraphs 10, 13

Paragraphs 10 and 13 of the Plaintiff's Response repeat the allegations from paragraph 6 regarding alleged work-at-home arrangements, and should be stricken for the same reasons.

### D.     Paragraph 53

Ms. Miller purports to dispute part of paragraph 53 from the Defendant's Statement of Undisputed Facts. In support, she directs the Court to "Paragraphs 156-287." Apparently, Ms. Miller expects the Court to sift through 131 consecutive paragraphs to find the record references

that supposedly create a dispute of material fact. This is the antithesis of the "concise statement" required by Local Rule 56.1, and should be stricken for that reason.

  E.  **Paragraph 78**

Paragraph 78 of the Plaintiff's Response is actually a multi-paragraph section spanning over a page. Verizon moves to strike the portion of paragraph 78 that appears on page 12, as well as the third-to-last paragraph on page 13. In both cases, Ms. Miller argues that it was inappropriate to send her to Verizon's Employee Assistance Program ("EAP") because the EAP allegedly is not appropriate for medical issues. She uses a quote from Deborah McDonald's deposition testimony to support this proposition.

Ms. Miller gains support from this quote only by omission of a key phrase. According to Ms. Miller, Ms. McDonald said that the EAP was for "stress, balancing the workload, family life …." Plaintiff's Response, ¶ 78, at 12. Ms. Miller's use of ellipses is highly misleading, as the omitted phrase was, "numerous reasons." McDonald Depo., at 18:14. In fact, just prior to this statement, counsel for Ms. Miller suggested that the EAP was only for people with "psychological issues," and Ms. McDonald responded, "No, not necessarily. For any kind of problem." *Id.* at 18:6-11. Therefore, far from supporting Ms. Miller's contention that referral to the EAP was inappropriate in her case, Ms. McDonald's testimony supports the *opposite* conclusion. Ms. Miller repeats this misrepresentation in the third-to-last paragraph of her "paragraph 78." In light of this misrepresentation, there is no record support for Ms. Miller's assertion, and these two references should be stricken.

In addition, the last paragraph of "paragraph 78" refers to an "EAP pamphlet" and purports to quote from that pamphlet. In support, Ms. Miller cites to "Defendant's Exh. F." However, Defendant's Exhibit F is the job description for the Service Representative position,

not an EAP pamphlet. In fact, there is no "EAP pamphlet" anywhere among the exhibits that either party has submitted. Therefore, without a proper citation to the record, this section of paragraph 78 should be stricken.

**F.    Paragraph 84**

The third sub-paragraph of paragraph 84 should be stricken because, again, Ms. Miller truncates a witness's deposition testimony to alter the meaning of that testimony. Specifically, Ms. Miller states that Paula Raposa testified, "If someone was out sick and they are coming back they may ask for a reduced work schedule …." Plaintiff's Response, ¶ 84. However, the omitted portion of the quote reads, "for a couple of days as they get their body back into the work." Raposa Depo., at 63:24 to 64:1. Thus, the referenced testimony does not support Ms. Miller's contention that reduced work schedules are generally appropriate for employees who have been out sick, and that section of paragraph 84 should be stricken.

**G.    Paragraph 95**

Citing to her affidavit (with no reference to page or paragraph numbers), Ms. Miller claims that "the Defendant had retroactively characterized her time in the past." Plaintiff's Response, ¶ 95. In fact, her affidavit contains no such testimony. Paragraph 95, therefore, has no support in the record and should be stricken.

**H.    Paragraph 107**

In paragraph 107, Ms. Miller states that she continues to suffer the same diabetes symptoms that allegedly were present when she worked for Verizon, and that she "continues to suffer a substantial impairment of major life activities, for which she requires accommodation with her current employer." Plaintiff's Response, ¶ 107. As with paragraph 12 of her affidavit, this statement directly contradicts her deposition testimony that she was *not* substantially limited

as of the time she was terminated from Verizon. *See* Miller Depo., at 109:24 to 110:6. Ms. Miller cannot create a dispute of fact in this manner, and paragraph 107 should be stricken. *See Colantuoni*, 44 F.3d at 4-5.

### I.  Paragraph 143

Referencing her own deposition testimony, Ms. Miller claims that one of her supervisors, Hans Peterson, "was clearly upset with the Plaintiff for needing time off for sick days (related to her diabetes) and he conveyed as much to others." Plaintiff's Response, ¶ 143 (citing Miller Depo., at 122-23). To begin with, this statement should be stricken both for lack of foundation and as hearsay, as Ms. Miller is basing her statement on a purported conversation between Mr. Peterson and a union representative, Lynn Supernot, that the representative then relayed to Ms. Miller:

> Q. It doesn't sound like the meeting [with Hans Peterson] lasted very long. Can you give me an approximation?
> A. My portion of it that I was there for, five minutes. Then he and the union steward continued to talk.
> Q. After you left?
> A. Yes.
> Q. So you weren't in a position to overhear what they said?
> A. No, I wasn't. I was only quoted what was said.

Miller Depo., at 119:17 to 120:4.

Moreover, there is nothing in the referenced testimony to indicate that Mr. Peterson was upset, that he expressed any negative feelings to others, or that he knew or acknowledged that Ms. Miller's absences were related to her diabetes. In fact, the subject of this meeting was an absence which, by Ms. Miller's admission, "wasn't diabetes related." Miller Depo., at 123:1. Therefore, even if this testimony were otherwise admissible, paragraph 143 should be stricken because the record citation that Ms. Miller provides does not support – and in fact contradicts – paragraph 143.

### J.      Paragraph 208

In paragraph 208 of the Plaintiff's Response, Ms. Miller claims that, "According to McGovern, the attendance policy and resulting discipline does not apply to a handicapped employee." Plaintiff's Response, ¶ 208 (citing McGovern Depo., at 150).  This is yet another misrepresentation of deposition testimony.  The full text of the testimony from page 150 of McGovern's deposition is as follows:

> Q.   But the procedure that you just outlined [the disciplinary policy for absences] does not apply I take it to an employee who needs a reasonable accommodation for a handicap.  Is that correct?
> A.   The process allows in general so that employee steps are taken under the attendance plan to try to manage any medical complication that may affect attendance.  The process is always individualized by management given the particularities of the individual, including whether that person may have medical conditions which may rise to the level of a disability, which may or may not be so expressed by the employee, as were done in Ms. Miller's case by not suspending her on various occasions by retrogressing her or by not disciplining her to the full extent by waiving discipline.  By rescinding or modifying discipline.  By allowing herself absences unprotected after her thirty day suspension.  So certainly an individualized attention is given to an employee in these occasions, including the occasion where the employee may have a disability.

McGovern Depo., at 150:2 to 151:1.  Mr. McGovern merely testified that the progressive discipline policy is applied on an individualized basis; there is nothing in his testimony even remotely suggesting that handicapped employees are not subject to the attendance policy or resulting discipline.  In fact, Mr. McGovern made no such statement at any point in his deposition.

As a result of this misrepresentation, Ms. Miller offers no record support for her statement in paragraph 208, which should be stricken.

K.    **Paragraph 209**

Ms. Miller makes a similar misrepresentation in paragraph 209 of the Plaintiff's Response, this time claiming that Mr. McGovern "acknowledge that the Plaintiff may have had medical conditions which rose to the level of a disability. And 'individualized attention' is given to that employee." Plaintiff's Response, ¶ 209 (citing McGovern Depo., at 150). There is no hint of an acknowledgment in Mr. McGovern's testimony that Ms. Miller had a disability, nor that Ms. Miller received "individualized attention" based on a disability. Rather, Mr. McGovern testified that the discipline policy is individualized for all employees, and that one factor that might be taken into account is whether the employee has a disability. In fact, the next set of questions and answers make clear that Mr. McGovern acknowledged only that Verizon had accommodated Ms. Miller by a more lenient application of the discipline policy, not that the accommodation was due to a medical condition rising to the level of a disability:

> Q.    Was Kathleen Miller ever accommodated by Verizon for a disability?
> MS. ROSEBUSH: Objection. Lacks foundation.
> THE WITNESS: She certainly was accommodated. Whether or not it was due to a disability given that she does not appear to have either disclosed a disability or to have told management of her specific absences related to any underlying disability, and failed to request any particular accommodation throughout most of or all of the course of her employment. Certainly her individualized needs were attended to to the degree that the management was able to given her failure to cooperate.
> Q.    (By Mr. Shea) So with that answer do you believe that Kathleen Miller was accommodated by Verizon for a disability?
> MS. ROSEBUSH: Objection. Lacks foundation.
> THE WITNESS: No. In that she was not entitled to an accommodation for a disability as she presented herself to her managers, so I cannot say this was done as an accommodation.
> However, I can say that particularized things were done for her, for her benefit, which were designed to help her in much the same way ultimately an accommodation is designed to help a person to fulfill their central job function.

McGovern Depo., at 151:2 to 152:11. Paragraph 209 should, therefore, be stricken.

### L.  Paragraph 249

According to Ms. Miller, Paula Raposa, a Verizon administrative manager, "[w]hen asked whether time off for a disability could result in termination … said an employee may not be disciplined if they 'let us know.'"  Plaintiff's Response, ¶ 249 (citing Raposa Depo., at 118-19).  Ms. Raposa said no such thing.  Rather, the testimony went as follows:

> Q. And what would be the occasion of absence that would progress her to a written warning at that point?
> A. Occasion of absence would be something that is unauthorized and unapproved.
> Q. So for example a sick day would be such an occasion of absence?
> A. Yes.
> Q. And would time off for a handicap related disability be such an occasion of absence?  Or do you know?
> A. If an employee is not covered under the FMLA guidelines, discipline could occur. However, if there is a situation the employee must self identify and let us know.
> Q. Situation meaning a handicap?
> A. I would say yes.

Raposa Depo., at 118:6-22.  Ms. Raposa is saying nothing more than that an individual with a handicap who is calling in sick should let Verizon know that is the reason.

### M.  Paragraph 250

According to Ms. Miller, "Raposa could not answer whether, if an employee is out of work for a handicap-related condition, the employee would have an attendance occurrence held against her or him."  Plaintiff's Response, ¶ 250 (citing Raposa Depo., at 122-26).  In fact, the deposition transcript reveals that Plaintiff's counsel asked a series of increasingly convoluted hypothetical questions that required Ms. Raposa to ask for clarification.  She never got that clarification, and therefore, quite properly, was unable to answer the question.  The problem was not that Ms. Raposa could not answer the question; the problem was that the question was never properly asked.

**N.     Paragraph 258**

In paragraph 258, Ms. Miller asserts that "Raposa also was aware that the Plaintiff had diabetes." Plaintiff's Response, ¶ 258 (citing Raposa Depo., at 169). In fact, Ms. Raposa's testimony was the polar opposite:

> Q.   By the way, prior to Kathleen Miller's termination of employment do you know whether anyone in management would have occasion to review this FMLA documentation that we have been reviewing today?
>      MS. ROSEBUSH:  Objection. Lacks foundation.
>      THE WITNESS:  A couple of things don't compute with your question. You are asking me to say of other people. How would I know that? Nor could I ever state that. I also stated this is not a document that I would be privy to so I couldn't state that. And also *I stated before that I wasn't aware that she had diabetes, so your question does twist itself and isn't true*.

Raposa Depo., at 168:24 to 169:16 (emphasis added). Therefore, so much of paragraph 258 as asserts that Ms. Raposa knew Ms. Miller had diabetes should be stricken.

**O.     Paragraph 282**

Ms. Miller claims that Deborah McDonald, a former Service Representative supervisor, testified that "there were no employees ordered to the EAP." Plaintiff's Response, ¶ 282 (citing Wood Depo., at 17). That was not Ms. McDonald's testimony. Rather, she testified that she *personally* never ordered employees to go to the EAP, but was unaware whether others did so. Wood Depo., at 17:19 to 18:5. Therefore, the Court should strike paragraph 282 of Plaintiff's Response.

**III.     PLAINTIFF'S EXHIBITS**

Finally, the Court should strike portions of Plaintiff's Exhibits 6 and 8 because these documents were not produced in discovery. Plaintiff's Exhibit 6 consists of two groups of documents – FMLA forms (which have Bates numbers which Verizon is not moving to strike), and notes from her medical providers (which are not numbered and which Verizon is moving to

strike). Despite repeated requests and assurances, Ms. Miller *never produced these medical records* before submitting them as exhibits in opposition to Verizon's summary judgment motion. Ms. Miller identified "Plaintiff's medical records" as relevant documents in her initial disclosures (a copy of which is attached hereto as Exhibit 1), although she incorrectly listed them among documents "already in the Defendant's possession." Plaintiff's Initial Disclosures, at 4. Almost four months ago, Verizon's counsel sent Plaintiff's counsel a medical release form, which Plaintiff's counsel indicated Ms. Miller would sign; that was never returned. Verizon's counsel also agreed, and Plaintiff's counsel's request, to enter into a confidentiality agreement with respect to the medical records. Verizon's counsel asked Plaintiff's counsel to draft such an agreement, as it was his request to enter into one; he never did so.

Exhibit 8 consists of correspondence from Ms. Miller's union to her regarding an appeal of Verizon's FMLA determinations. Ms. Miller has not previously produced these documents. Although the letters are dated May 9, 2006, and June 20, 2006, respectively, that still provided Ms. Miller ample opportunity to produce them before submitting her opposition to Verizon's summary judgment motion.[2] In any event, the relevance of these documents is not clear, and Ms. Miller makes no apparent attempt to explain the relevance in her papers.

Ms. Miller should not be permitted to rely on documents that should have been produced in discovery but were not. This is classic "trial by ambush," which the Court should rectify by striking the medical records in Exhibit 6 and the letters in Exhibit 8.

## IV. CONCLUSION

For the foregoing reasons, Verizon respectfully requests that the Court strike paragraphs 12 (portions), 14, 19, and 21 of the Miller Affidavit; paragraphs 6 (portions), 9 through 13, 53,

---

[2] Exhibit 8 also includes an agreement between Verizon and the Communication Workers of America. As this is an agreement to which Verizon is a signatory, Verizon concedes that the non-production of this specific document is harmless as it already was in Verizon's possession.

78 (portions), 84 (portions), 95 (portions), 107, 143, 208, 209, 249, 250, 258 (portions), and 282 of Plaintiff's Response; and portions of Plaintiff's Exhibits 6 and 8.

        VERIZON COMMUNICATIONS INC.,
        By its attorneys,

        /s/ Timothy P. Van Dyck
        Timothy P. Van Dyck (BBO #548347)
        Windy L. Rosebush (BBO #636962)
        EDWARDS ANGELL PALMER & DODGE LLP
        111 Huntington Avenue
        Boston, MA 02199
        (617) 239-0100
        (617) 227-4420 (fax)

## **CERTIFICATE OF SERVICE**

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 20, 2006, and that there are no non-registered participants.

        /s/ Timothy P. Van Dyck
        Timothy P. Van Dyck (BBO #548347)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-30117-KPN

KATHLEEN MILLER,
        Plaintiff

v.

VERIZON COMMUNICATIONS, INC.
        Defendant

**PLAINTIFF'S INITIAL DISCLOSURE PURSUANT TO FED.R.CIV.P. 26(a)(1)**

The Plaintiff, Kathleen Miller, hereby makes, pursuant to Fed.R.Civ.P. 26(a)(1) and Local Rule 26.2(A) and (D), the following initial disclosure of non-privileged information which is currently and reasonably available to her in connection with the instant litigation.

**A. Identity of Persons with Discoverable Information**

At present, the following persons are likely to have discoverable information which the Plaintiff, Kathleen Miller ("Plaintiff"), may use to support her claims in the above-captioned litigation[1]:

1. Kathleen Miller
   17 Lorita Lane
   Northfield, MA 01360

   The Plaintiff will testify about her medical condition, requests for accommodation, and employment with the Defendant, Verizon Communications, Inc. ("Defendant"), as well as the Defendant's discriminatory termination of the Plaintiff's employment.

---

[1] The Plaintiff incorporates herein the persons listed in the Defendant's Fed.R.Civ.P. 26(a)(1) Statement. Other persons may have knowledge of matters relevant to the instant litigation. The Plaintiff reserves the right to identify additional witnesses who may surface during discovery.

2. Laura Riley
   (current address unknown)

   Laura Riley will likely testify about her taking time off from work.

3. Renae Legassie
   (current address unknown)

   Renae Legassie will likely testify about taking time off from work.

4. Claire E. Gorski
   (last known address)
   295 Worthington Street
   Floor 7
   Springfield, MA 01103

   Claire Gorski will likely testify about the Plaintiff's report of sickness disability in or about February 2000.

5. Hans Peterson
   (current address unknown)

   Hans Peterson will likely testify about the Plaintiff's employment with the Defendant and the Plaintiff's request for time off from work due to her medical condition.

6. Laurie Mozeleski
   (current address unknown)

   Laurie Mozeleski will likely testify about the Plaintiff's employment with the Defendant and the Plaintiff's request for time off from work due to her medical condition.

7. Maura Conlan
   (current address unknown)

   Maura Conlan will likely testify about the Plaintiff's employment with the Defendant and the Plaintiff's request for time off from work due to her medical condition.

8. Mark Beauregard
   (current address unknown)

   Mark Beauregard will likely testify about the Plaintiff's employment with the Defendant and the Plaintiff's request for time off from work due to her medical condition.

9. Sally Sullivan
   (current address unknown)

    Sally Sullivan will likely testify about the Plaintiff's employment with the Defendant and the Plaintiff's request for time off from work due to her medical condition.

10. Mary Ellen Wood
    (current address unknown)

    Mary Ellen Wood will likely testify about the Plaintiff's termination of employment with the Defendant.

12. Deborah McDonald (also known as Deborah Lloyd)
    (current address unknown)

    Deborah McDonald will likely testify about the Plaintiff's employment with the Defendant.

13. Diane Chandler
    (current address unknown)

    Diane Chandler will likely testify about the Plaintiff's employment with the Defendant.

14. Judith Corbett
    (current address unknown)

    Judith Corbett will likely testify about the Plaintiff's job performance while employed with the Defendant.

15. Judith Haupt, N.P.
    Connecticut River Internists
    8 Burnham Street
    Turners Falls, MA 01376

    Judith Haupt will likely testify about the Plaintiff's medical condition and Plaintiff's requests for leave.

16. Dr. Wesley Green
    Connecticut River Internists
    8 Burnham Street
    Turners Falls, MA 01376

    Dr. Wesley Green will likely testify about the Plaintiff's medical condition and Plaintiff's requests for leave.

B. **Relevant Documents**

At present, the Plaintiff may support her claims in this matter with the following relevant documents, copies of which are already in the Defendant's possession.[2]

1. The Defendant's employee handbooks and/or policies related to employees.

2. The Plaintiff's personnel records and documents relating to the Plaintiff's employment and medical leave of absence and requests for accommodation.

3. The performance and attendance records, and personnel files, of the Plaintiff's co-workers, as well as documents related to these co-workers' requests for medical leave and/or accommodation and/or actual medical leave and/or accommodation.

4. Documents relating to medical and/or disability leave with reference to the Defendant's employees and/or policies.

5. The Plaintiff's medical records.

6. Claims of discrimination based upon handicap and/or disability lodged and/or filed against the Defendant in the last ten years.

7. Personnel files of replacement employees.

8. Correspondence related to the Plaintiff's communications with the Defendant about the Plaintiff's medical condition and impairment.

9. Documents on file with the Massachusetts Commission Against Discrimination relating to the instant litigation.

C. **Damages Computation**

The value of the Plaintiff's lost earnings amounted to approximately $37,930.00 as of September 22, 2005. The Plaintiff's lost benefits amounted to approximately $600.00, a figure that reflects the amount that the Plaintiff had to pay for medication after the termination of her employment, due to the loss of medical benefits. The Plaintiff's emotional distress and other damages cannot be calculated with any precision at this time.

---

[2] The Plaintiff reserves the right to identify other documents, which may be produced during the discovery phase of this litigation or otherwise, and which may further support her claims.

4

### D. Insurance Documents

There is no known insurance, at this time, which may cover the Plaintiff's claims.

The Plaintiff
KATHLEEN MILLER
By Her Attorney

*/s/ Michael O. Shea*

MICHAEL O. SHEA, ESQ.
BBO No. 555474
Law Office of Michael O. Shea, P.C.
451 Main Street
Wilbraham, MA 01095
Telephone No.: (413)596-8005
Facsimile No.: (413)596-8095

Date: October 19, 2005

### Certificate of Service

I, Michael O. Shea, hereby certify that on this 19th day of October, I served a true copy of the foregoing document to Counsel of record for the Defendant by first-class mail, postage prepaid.

*/s/ Michael O. Shea*

Michael O. Shea