UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-30117-KPN

KATHLEEN MILLER,
          Plaintiff

v.

VERIZON COMMUNICATIONS INC.,
          Defendant

**PLAINTIFF'S MEMORANUDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO STRIKE**

**I.**    **PLAINTIFF'S AFFIDAVIT**

    **A.**  **Paragraph 12**

The Plaintiff, Kathleen Miller (hereinafter referred to as "Plaintiff"), did not contradict her prior deposition testimony with statements made in her Affidavit. As cited on page 2 of the Defendant's Motion to Strike, the Plaintiff in the line of questioning in her deposition stated that, <u>at the time of her termination,</u> she did not feel substantially limited in doing any of her daily life activities. However, that is not to say that she did not feel substantially limited at any other time, such as periods of time while she was employed with the Defendant, and/or subsequent to the termination of her employment and/or during the present time.

    **B.**  **Paragraph 14**

The Plaintiff is competent to opine on what might have happened in terms of her employment with the Defendant had she not been penalized for absences relating to her diabetic

condition and had been granted a reasonable accommodation. The Plaintiff also is within her right to state that she did not believe that absences that were non-related to her diabetic condition would not have led to the termination of her employment. As expressed in her Affidavit (Par.___), the Plaintiff states that she would have been willing to use her vacation time for her diabetic related absences, which would have allowed her enough time under the FMLA to not be penalized for her absences, although she was not allowed to do so. See also, the Plaintiff's Affidavit attached hereto.

    C. **Paragraph 19**

As a former employee of the Defendant, the Plaintiff has knowledge that other call centers of the Defendant located in the Northeast region would pick up calls that could not be answered by the Springfield, MA facility. Therefore, the Plaintiff has stated in her Affidavit (Par. ___) that she believes that her absences would not have created an undue hardship to the Defendant, as any calls that were received during her absences that were unable to be answered at the Springfield, MA facility would have rolled over and been answered by other Defendant facilities. The Plaintiff was also present when others were absent and was aware of the system in which calls would roll over into other centers throughout the Northeast. See Plaintiff's Affidavit attached, Par. __. The Plaintiff also contends that, upon returning to work after an absence, no member of the Defendant's management ever raised issue with lost calls, and in fact, she was informed by her supervisor and others in management that calls were shifted to the other centers in the Northeast, if not answered in the Springfield, MA center. See Plaintiff's Affidavit attached, Par.___.

**D. Paragraph 21**

For the reasons stated above under heading Paragraph 12, the Plaintiff's Affidavit does not contradict her deposition testimony in regard to the statements made in Paragraph 21 of her Affidavit. The Plaintiff, for obvious reasons, is well within her right to give her assessment as to the range of jobs that she can hold in light of her medical condition. The Plaintiff states in her Affidavit that, given the fact that her diabetes requires that she has a flexible work schedule, she is precluded from working a wide range of jobs. While the Plaintiff testified at her deposition that her medical condition had improved at the time of her termination, that testimony does not reflect whether her condition has remained as it was at the time of her termination of employment, and nothing precludes the Plaintiff from stating her opinions as to the class of jobs that she currently can or cannot perform.

**II.     PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

**A. Paragraph 6**

In her Response to Defendant's Statement of Undisputed Facts, the Plaintiff states that, "McGovern indicated that under the circumstances [allowing non-management employees like Plaintiff to work from home] could be possible." The Defendant argues that Paul McGovern's testimony was mischaracterized. However, Mr. McGovern stated in the last line of his testimony that, "there could be review and that could be part of an interactive process of accommodation which would be specific to the individual and to the situation." It seems relatively clear that Mr. McGovern is stating that it *is* possible for a non-management employee to work from home and that option could be reviewed as part of an interactive process of accommodation. The Plaintiff's characterization of Mr. McGovern's testimony is accurate.

B. **Paragraphs 9, 11, and 12**

Contrary to the Defendants assertions, the Plaintiff's Affidavit does make statements regarding call center coverage routing and economic costs. Also, for the reasons stated above, the Plaintiff would have knowledge regarding whether her absences, or the absences of other employees in her same position, would cause an undue hardship to the company, as she was an employee of the Defendant and was aware of the systems employed by the Defendant regarding call center coverage routing. Accordingly, the Plaintiff's testimony regarding the same should not be stricken. See Affidavit of Plaintiff, Par. 4, attached hereto.

C. **Paragraphs 10 and 13**

Paragraphs 10 and 13 should not be stricken for the reasons discussed above under the heading Paragraph 6.

D. **Paragraph 53**

The Defendant takes issue with Paragraph 53 with its reference to Paragraphs 156-287 of the Plaintiff's Statement of Undisputed Facts. However, Paragraphs 156-287 of the Plaintiff's Statement of Undisputed Facts were simply meant to show some of the gross inconsistencies among the managers of the Defendant with respect to key issues regarding Plaintiff's requests for accommodations and the Plaintiff's handicap. Those inconsistencies can be summarized, and, therefore, would not require the Court to sift through all of those paragraphs in their entirety. Those inconsistencies are clearly set forth in the Plaintiff's proposed Amended Response under Additional Facts and on file with the Court.

E. **Paragraph 78**

The Defendant contends that, with respect to Debra McDonald's deposition testimony, regarding the type of issues that would be addressed by the Defendant's Employee Assistance

Program ("EAP"), the Plaintiff left out the key phrase "numerous reasons." Ms. McDonald's testimony does not state that medical issues may be addressed by the EAP. In addition, other managers testified that medical issues would not be addressed by the EAP. As for the Plaintiff's reference to an EAP pamphlet, it was inadvertently not attached as an Exhibit and is attached hereto. See pamphlet, attached hereto as Exhibit C.

    F. **Paragraph 84**

The Plaintiff's characterization of the deposition testimony of Paula Raposa in Paragraph 84 is accurate, and, therefore, should not be stricken. Ms. Raposa did, in fact, testify that, "if someone is out sick and they are coming back, they may ask for a reduced work schedule." The Defendant argues that Ms. Raposa's testimony contained the additional language, "for a couple of days as they get their body back into the work," and that the Plaintiff's characterization of this testimony is inaccurate. Despite the Defendant's contention, the fact remains clear that it is the testimony of Ms. Raposa that some employees of the Defendant requested and were granted modified work schedules upon returning to work from absence due to an illness.

    G. **Paragraph 95**

The Defendant argues that the Plaintiff did not refer to specific page or paragraph numbers in her Affidavit regarding her claim that, "the Defendant had retroactively characterized her time in the past." However, the Plaintiff does allude to this assertion in her Affidavit and reiterates the same in her Affidavit attached. See Plaintiff's Affidavit, Par. 9, attached as Exhibit A. The Plaintiff has also referred to specific Paragraph numbers in her Amended Response.

    H. **Paragraph 107**

For the reasons expressed above with regard to heading Paragraph 12, the Plaintiff reiterates that the Plaintiff's deposition testimony regarding her substantial impairment of major

5

life activities is not inconsistent with the Plaintiff's Affidavit. Again, the Plaintiff's testimony in her deposition that her medical condition had improved at the time of her termination does not have any implication as to the status of her current medical condition and/or the accommodations that she requires with her current employer, and testimony regarding the same should remain on the record.

### I. Paragraph 143 (Par. 130, Amended Facts)

The Plaintiff's testimony regarding Hans Peterson being upset with the Plaintiff for needing time off for sick days relating to her diabetes should not be stricken as this conversation was related to the Plaintiff's diabetes and related absences. The statement is not hearsay since the statement does not go to any truth of the matter asserted. In addition, the conversation that took place between Lynn Suprenot and Hans Peterson is an admission and, thus, falls within an exception to the hearsay rule. It is more a matter of Ms. Suprenot's observations of Mr. Peterson appearing upset than the content of what Mr. Peterson said to her.

### J. Paragraph 208 (Par. 133, Amended Facts)

Contrary to the Defendant's assertions, the deposition testimony of Mr. McGovern indicates that there are exceptions to the attendance policy when an employee is handicapped. Mr. McGovern states, "the process [meaning the attendance policy] is always individualized by management given the particularities of the individual, including whether that person may have a medical condition which may rise to the level of a disability, which may or may not be so express by the employee as were done in Ms. Miller's case by not suspending her on various occasions by retrogressing her or by not disciplining her to the full extend by waiving discipline." Mr. McGovern also goes on to state, "so certainly an individualize attention is given

to an employee in these occasions, including the occasion where an employee may have a disability." Thus, the Plaintiff's characterization of this testimony is accurate.

### K. Paragraph 209 (Par. 114, Amended Facts)

The Defendant argues that it was a misrepresentation for the Plaintiff to state in her Statement of Undisputed Facts that Mr. McGovern, "acknowledged that the Plaintiff may have had medical conditions that rose to the level of a disability and individualized attention is given to that employee." Mr. McGovern's testimony indicates that the Plaintiff was "certainly… accommodated" and "that particularized things were done for [the Plaintiff]…much in the same way ultimately an accommodation is designed to help a person fulfill their central job function." Mr. McGovern's testimony alludes to the fact that Ms. Miller received individualized attention.

### L. Paragraph 249 (Par. 136, Amended Facts)

The Defendant takes issue with Plaintiff's assertion that Paula Raposa, "[w]hen asked in her deposition whether time off for a disability could result in termination…said that an employee may not be disciplined if they 'let us know.'" Ms. Raposa's deposition testimony stated that if an employee has a handicap required absences from work, and that employee informed the company of the absence, that the Defendant would consider the absence to be authorized and such occasion of absence would not result in disciplinary action. The Plaintiff's characterization of Ms. Raposa's testimony is accurate.

### M. Paragraph 250 (Par. 136, Amended Facts)

The Defendant contends that, according to Ms. Miller, "Raposa could not answer whether, if an employee is out of work for a handicap related condition, the employee could have an attendance occurrence held against her or him." The Defendant goes on to argue that the deposition transcript reveals that the Plaintiff's Counsel asked a series of hypothetical questions

7

that required Raposa to ask for clarification. The Defendant argues that Raposa never received clarification and was unable to answer the question. Ultimately, Raposa said "I can't answer that question." (Raposa Dep. 122; Exh. 3)

### N. Paragraph 258 (Par. 140, Amended Facts)

With respect to Paragraph 258, the Defendant argues that Ms. Miller has asserted that "Raposa was also aware that the Plaintiff had diabetes" and that Raposa's testimony reveals that she was not aware of Plaintiff's diabetes. The Plaintiff concedes that this was an error in the reading of Raposa's transcript.

### O. Paragraph 282 (Par. 149, Amended Facts)

The Defendant argues that Ms. Miller claims that Deborah McDonald, a former service representative supervisor, testified that "there were no employees ordered to EAP." The Defendant also argues that McDonald instead testified that she personally never ordered employees to the EAP and was unaware whether others did so. Certainly, at least according to McDonald's knowledge, she did not order anyone to the EAP.

## III.    PLAINTIFF'S EXHIBITS

As to Plaintiff's Exhibit 6, it was the understanding and belief of the Plaintiff and Plaintiff's Counsel that the medical notes and FMLA documentation in Exhibit 6 was already in the possession of the Defendant. See Plaintiff's Supplemental Affidavit, Par. 8, attached hereto as Exhibit A. Moreover, it was the understanding of Plaintiff's Counsel that medical documentation was going to be produced to the Defendant if there was additional medical documentation presented as part of the Plaintiff's Opposition to the Defendant's Motion for Summary Judgment in the form of medical affidavits or an expert report of some kind. The email from Defendant's Counsel, attached as Exhibit C hereto, corroborates this understanding.

The FMLA documentation attached as Exhibit 8 was just recently produced to Plaintiff's Counsel on or about July 7, 2006. The FMLA documentation submitted by Ms. Miller reveals that the Defendant did in fact have issues in terms of violating the FMLA, particularly with respect to the Plaintiff, and was in the process of settling a matter directly related to the Plaintiff. The documents were merely submitted for the proposition that, contrary to the Defendant's assertions, it was not completely in compliance with the FMLA with respect to the Plaintiff.

### IV.    **CONCLUSION**

For the foregoing reasons, the Defendant's Motion to Strike should be denied in its entirety.


Respectfully submitted:

The Plaintiff
KATHLEEN MILLER

By: /s/ Michael O. Shea                                     Dated: August 2, 2006
    Michael O. Shea, Esq.
    BBO No. 555474
    Counsel for the Plaintiff
    Law Office Of Michael O. Shea, P.C.
    451 Main Street
    Wilbraham, MA 01095
    Telephone No.: (413)596-8005
    Facsimile No.: (413)596-8095


### Certificate Of Service

I hereby certify that a true copy of the foregoing Memorandum was served upon Counsel for the Defendant, Timothy P. Van Dyke, Edwards, Angell, Palmer & Dodge, LLP, 111 Huntington Avenue, Boston, MA 02199, by electronic filing on this 2nd day of August, 2006.


                                                            /s/ Michael O. Shea
                                                            Michael O. Shea

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KATHLEEN MILLER,
                Plaintiff

v.

VERIZON COMMUNICATIONS, INC.,
                Defendant

Civil Action No.: 05-30117-KPN

**PLAINTIFF'S SUPPLEMENTAL AFFIDAVIT CONCERNING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Kathleen Miller in the above-entitled action and does depose and say upon her personal knowledge information and belief, which she believes to be true, under oath, as follows:

1. My name is Kathleen Miller and I am the Plaintiff in the instant litigation.

2. I give this Supplemental Affidavit to clarify some factual matters concerning the pending Motion For Summary Judgment of the Defendant.

3. I have personal knowledge of several Verizon call centers located in various geographical areas throughout the Northeast region that were in place when I was employed at Verizon. For example, in Massachusetts alone, I am aware of Verizon call centers located in Worcester, Taunton, Fall River, Braintree, Hyannis, Boston, and Springfield, among others.

4. My understanding and personal knowledge of the business practice of Verizon regarding incoming calls is as follows: Verizon customers located in the Northeast geographical region dial an (800) number. The call is then automatically distributed by Verizon to the next available service representative from any Verizon call center in the Northeast region. Incoming calls are

not designated to any particular call center based upon location of caller or otherwise, but rather, are distributed to the next available service representative from any Northeast call center. For example, a caller located in Springfield may have their call answered by a Verizon service representative from a call center located in another state in the same Northeastern geographical location, based solely upon the availability of the service representatives.

5. During the course of my employment with Verizon, I am aware that several of my coworkers (service representatives) were occasionally out of work for various reasons, such as short-term illness, substance abuse rehabilitation and maternity leave. When service representatives were absent, the incoming calls to the Springfield call center were simply picked up by another employee in the Springfield call center or were re-routed to other Verizon call centers. I witnessed the calls being answered or re-routed in this regard whether the service representative was absent for one day for an illness or was absent for several months for a maternity leave.

6. A modified work schedule would have absolutely assisted with the management of my diabetes-related medical conditions. If I had been allowed a modified work schedule and was not forced to remain out of work for the entire day due to illness, I would not have been charged with absences related to my diabetic condition, and hence, would not have been terminated from my position. I have estimated that, throughout the course of my employment with Verizon, only approximately four of my absences were completely unrelated to my diabetic medical conditions. I know that I would not have been reprimanded or terminated from my employment with Verizon for those absences alone for the simple reason that four such absences taken over the span of my employment at Verizon would not have violated Verizon's attendance policy to the point of reprimand, let alone termination.

3

7.  If I had not been suspended for my diabetes-related absences, I would have had more hours credited to me for FMLA qualified time off.

8.  The medical records that are attached as Exhibit 6 include FMLA documentation and notes related to FMLA documentation that were submitted to the company while I was employed with Verizon, and therefore, the Defendant would have possession of these documents. To my knowledge, the medical notes that are attached as Exhibit 6 to the Plaintiff's Facts, were sent directly to the company to support my requests for time off under the FMLA.

9.  The Defendant's management had, on occasion, retroactively characterized my time so that I would not be charged with days off. On approximately four occasions throughout the course of my employment with Verizon, managers indicated that they would "regress a step" in terms of my discipline to avoid further reprimand for absences relating to my diabetes. My absences were characterized at the discretion of management.

Sworn to under the pains and penalties of perjury this 2nd day of August, 2006

Kathleen Miller

4

JUL-31-02 WED 03:06 PM    VALUEOPTIONS                FAX:19199415242              PAGE 2

## Remember, help is just a phone call away.

In today's fast-paced world, balancing work and family—and all the associated demands and pressure—can be overwhelming. It can happen to anyone.

Circumstances at home can spill over into your work, just as those encountered on the job can affect relationships at home. If left unattended, issues that were once minor can become very serious.

When things get tough or things seem off-balance, almost of us can benefit from talking through our problems with someone who is objective and experienced—someone who can help us sort things out—a professional who will listen in confidence and help us find a good and sensible solution.

Finding the help you need is as easy as making a single toll-free phone call to your Employee Assistance Program. It's the first step to bringing balance back into your life.

To reach the EAP for help, simply call the toll-free number below:

### Verizon EAP
### 1-800-845-0632

Your EAP is a confidential and professional counseling service paid for by your employer and provided by *ValueOptions* Workplace Services

**ValueOptions**
© 1999 ValueOptions, Inc. All Rights Reserved.

**Employee Assistance**
*A Workplace Services Program*

**The Help You Need When You Need It**

## No issue is too small or too serious for you to seek help

Thanks to your Employee Assistance Program (EAP), you have easy access to professional counseling on a variety of issues.

You can talk to an EAP counselor about:

- marital issues
- financial issues
- child or elder issues
- problems with co-workers
- balancing work and family responsibilities
- dealing with the stresses in your life
- alcohol and drug abuse

...or anything else that is preventing you from being—and doing—your best.

## Help is just a phone call away

You can call the EAP for assistance 24 hours a day, 365 days by using the toll-free number printed on the back of this brochure.

The EAP is a professional, confidential counseling service available to help you and your household family members resolve personal issues and problems before they affect health, relationships and performance.

## What happens when you use the EAP?

When you call the EAP, we'll put you in touch with a counselor who is specially trained to assist you with life's issues. EAP counseling is goal-oriented and solution-focused. Depending upon your situation, the counselor may suggest a few more sessions to help you reach your goals.

If the counselor believes you need more specialized or longer term counseling, you may be referred to another qualified professional.

*The important thing is you decide together with a counselor the appropriate action plan that is right for you.*

## Will the EAP cost anything?

Sessions with an EAP counselor are a free service paid for by your employer. Sometimes, additional counseling or specialized treatment can require payment. It depends on your health benefit plan. Your EAP counselor can help you determine if extended services are covered under your plan and what the approximate cost of services would be.

## Is the EAP confidential?

Absolutely! Confidentiality is a vital part of the program's success. It's up to you to take advantage of the EAP. And when you do, you can rest assured that no information about your situation will be shared with anyone, unless you agree to it in writing.

Your EAP was designed to benefit you and your household family. Your participation in the program will be treated confidentially in accordance with all state and federal mandates. You can count on it!

## Experienced professionals work for you

Your EAP is staffed by a national organization of highly qualified professionals with many years experience providing counseling and EAP services. The EAP professionals really work for you.

So please don't hesitate to use this valuable service whenever you need it. It's easy to use, free, and completely confidential.

We all need help once in a while—and your EAP is there for you.




```
Subj:    Re: verizon/miller
Date:    7/14/2006 7:30:26 P.M. Eastern Standard Time
From:    TVanDyck@eapdlaw.com
To:      owenshea@aol.com
CC:      WRosebush@eapdlaw.com
```

Please do.  Also, have you filed any affidavits from medical care providers in
support of your opposition?  If so, I suspect we'll need to schedule depos.  Pls let
me know.

Thanks.  Tim


Timothy P. Van Dyck
Partner
617.951.2254   fax 888.325.9136
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue At Prudential Center
Boston, MA 02199-7613 USA

e-mail:  tvandyck@eapdlaw.com
web site:  www.eapdlaw.com

Boston, Ft. Lauderdale, Hartford, New York, Providence, Short Hills, Stamford, West Palm Beach, Wilmington, London (Representative office)

Disclosure Under IRS Circular 230: Edwards Angell Palmer & Dodge LLP informs you that any tax advice contained in this communication, including any attachments, was not intended or written to be used, and cannot be used, for the purpose of avoiding federal tax related penalties or promoting, marketing or recommending to another party any transaction or matter addressed herein.

CONFIDENTIALITY NOTICE
This e-mail message from Edwards Angell Palmer & Dodge LLP is intended only for the individual or entity to which it is addressed. This e-mail may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it.