UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KATHLEEN MILLER,           )
        Plaintiff           )
                      )
                      )
                      )
        v.                  )     Civil Action No. 05-30117-KPN
                      )
                      )
                      )
VERIZON COMMUNICATIONS, INC.,  )
        Defendant           )

MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Document No. 28)
February 7, 2007

NEIMAN, C.M.J.

      Kathleen Miller ("Plaintiff"), who suffers from diabetes, brings this employment

discrimination action against her former employer, Verizon Communications, Inc.

("Defendant"), alleging disability discrimination and retaliation in violation of the

American with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("the ADA"), the

Rehabilitation Act of 1973, 29 U.S.C. § 706 ("the Rehabilitation Act"), and Mass. Gen.

L. ch. 151B ("chapter 151B").  Defendant, in response, alleges that it acted

appropriately when it discharged Plaintiff for excessive absenteeism.

      The parties have consented to the jurisdiction of this court, *see* 28 U.S.C. §

636(c), and Defendant has moved for summary judgment pursuant to Fed. R. Civ. P.

56.  For the reasons indicated below, Defendant's motion will be allowed with respect

to the Rehabilitation Act claim, but otherwise denied.

## I. STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must construe the facts in a light most favorable to the non-moving party. *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For this purpose, an issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotox Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

## II. BACKGROUND

The following facts are stated in a light most favorable to Plaintiff, the non-moving party. *See Uncle Henry's Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 41 (1st Cir. 2005). Additional facts are addressed in the discussion section below.[1]

---

[1] Much of this factual background comes from Defendant's Statement of Undisputed Facts (Document No. 30, hereinafter "Defendant's Facts"). A number of facts, however, are taken from Plaintiff's Amended Response to Defendant's Statement of Undisputed Facts (Document No. 43, hereinafter "Plaintiff's Facts"), which amended Plaintiff's original response. While Defendant, with some justification, takes issue with the amendment as confusing and prolix and has moved as well to strike Plaintiff's original response, the court, as indicated at oral argument, has focused only on those facts that appear supported by the record, undisputed (or if disputed, stated in a light most favorable to Plaintiff), and significant enough to have been included within the

2

A. Plaintiff's Job and Defendant's Attendance Policies

Plaintiff was hired as a Customer Service Representative ("CSR") in June of 1998 by Defendant's predecessor, Bell Atlantic. (Defendant's Facts ¶ 1.) Plaintiff's duties consisted of "handling the onslaught of incoming calls into the customer service center." (*Id.* ¶ 5.) She was required to spend a considerable amount of time communicating with customers -- fielding about fifty to seventy calls per day -- and was extensively monitored by her supervisors. (*Id.* ¶¶ 6, 7, 18, 19.)

The CSR job is subject to attendance guidelines. (*Id.* ¶ 20.) These guidelines, set out in an employee handbook, state that Defendant "has a right to expect and receive an acceptable level of productive attendance from each employee." (*Id.* ¶ 24.) The guidelines further state that, although Defendant "may be patient and forbearing with extraordinary bona fide illnesses or personal problems, it has a right to take appropriate steps to obtain an acceptable level of productive attendance." (*Id.*) Similarly, the CSR job description, referred to as the "Job Brief," states that CSRs may be required to "work day, evening, and weekend shifts, [as well as] overtime, and holidays as assigned." (*Id.* ¶ 16.)

Defendant also has a Family Medical Leave Act ("FMLA") policy which states that employees who are unable to work, for whatever reason, must first call a toll-free number to request leave and then contact and inform a manager of the impending absence. (*Id.* ¶ 26.) Defendant does not offer sick days. (Plaintiff's Facts ¶ 48.) Rather, all absences have to be approved through the FMLA policy process. (*Id.*)

---

parties' memoranda of law.

According to Plaintiff, unapproved absences are considered un-excused and, unless the employee receives subsequent approval from a manager, she may be disciplined for such absences. (*Id.*)

Defendant's disciplinary process for absent employees entails several steps. First, the employee is given a series of warnings. (Defendant's Facts ¶¶ 20-25.) If the employee's absences continue, a series of suspensions are then imposed. (*Id.*) After a final thirty-day suspension, the employee is given a final warning. (*Id.*) Should the employee have any more unapproved absences within a year's time, she is terminated. (*Id.*)

B.  Plaintiff's Diabetes

Plaintiff was first diagnosed with diabetes in February of 2000. (*Id.* ¶ 27.) As discussed more fully below, Plaintiff asserts that her condition limits her "major life activities" of working, sleeping, eating and basic mobility. (*Id.* ¶¶ 29-36.) While Defendant disputes those legal conclusions, it agrees that, at least, Plaintiff had to modify her diet because of her diabetes. (*Id.* ¶¶ 29, 42. See also Plaintiff's Facts ¶ 29.) Defendant also acknowledges that it is necessary for Plaintiff to regularly check her blood sugar, get sufficient rest, and take medication. (Defendant's Facts ¶¶ 42, 43.)

C.  Plaintiff's Discipline and Termination

Plaintiff adhered to Defendant's attendance policies without major incident for the first few months of her employment and, in 1999, sought and was granted several FMLA-approved absences. (*Id.* ¶ 55.) Sometime in 2000, however, after Plaintiff's

diabetes diagnosis, Defendant began taking disciplinary action against Plaintiff for excessive absenteeism.  (See Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Document No. 29, hereinafter "Defendant's Brief") at 10.)  Subsequently, in July of 2001, Plaintiff was denied FMLA leave because she had not worked sufficient hours in the previous year.  (Defendant's Facts ¶ 62.)  Plaintiff then began to accrue several unapproved absences.  (*Id.* ¶¶ 62, 63.)  Plaintiff now claims that most of these absences were diabetes-related.  (Plaintiff's Facts ¶¶ 56, 57.)

By August of 2001, Defendant suspended Plaintiff for excessive absenteeism.  (Defendant's Facts ¶ 64.)  Plaintiff was suspended again in September.  (*Id.* ¶ 65.)  At about the same time, Plaintiff requested that Defendant "accommodate" her medical condition with a modified work schedule.  (*Id.* ¶ 85.)  She asked one of her managers if she could (1) take personal or vacation time instead of a sick day, (2) reduce her work schedule so that she could come in late on the days that she was ill, or (3) switch to part-time employment for a definite period of time.  (Plaintiff's Facts ¶ 84.)  Although Defendant denied these requests (*id.*), it did recommend that Plaintiff seek the assistance of the company's Employee Assistance Program ("EAP") (Defendant's Facts ¶ 80).  Plaintiff declined to contact the EAP.  (*Id.* ¶ 83.)

Approximately one year later, in August of 2002, Plaintiff received a final warning.  (*Id.* ¶ 69.)  Then, on January 22, 2003, Plaintiff left work early and never returned.  (*Id.* ¶ 71.)  Plaintiff's subsequent application for FMLA leave was denied and she was fired on February 11, 2003.  (*Id.* ¶ 72.)  Since April of 2003, Plaintiff has been employed by the Magic Wings Butterfly Conservatory ("Magic Wings") and is currently

its general manager.  (*Id.* ¶¶ 106, 107.)

### III. DISCUSSION

In the present five-count action, Plaintiff asserts that her termination resulted

from discrimination and retaliation by Defendant because of her diabetes.  At the

outset, however, the court, with the agreement of Plaintiff, will allow Defendant's motion

for summary judgment with respect to one of those counts, the Rehabilitation Act claim

(Count V), since there is no evidence that Defendant is a program receiving federal

funds.  *See* 29 U.S.C. § 794(a).  The remaining counts are Plaintiff's claims of disability

discrimination (Counts I and III) and retaliation (Counts II and IV) in violation,

respectively in each instance, of chapter 151B and the ADA.  In the end, the court will

deny Defendant's motion for summary judgment with respect to these four causes of

action, albeit by a slim margin.

A.  Disability Discrimination (Counts I and III)

To state a *prima facie* case of disability discrimination under the ADA, "a plaintiff

must prove by a preponderance of the evidence that: (1) [she] was disabled within the

meaning of the Act; (2) [she] was a qualified individual with a disability, *i.e.* able to

perform the essential functions of the position with or without reasonable

accommodation; and (3) [she] was discharged because of her disability."  *Ward v.

Mass. Health Research Inst., Inc.*, 209 F.3d 29, 32-33 (1st Cir. 2000) (citations

omitted).  These three elements must also be proven for disability discrimination claims

under chapter 151B.  *See id.* at 33 n.2 (citing *Labonte v. Hutchins & Wheeler*, 678

N.E.2d 853, 856 n.5 (Mass. 1997); *Wheatley v. Am. Tel. & Tel. Co.*, 636 N.E.2d 265,

268 (Mass. 1994)).  *See also Gillen v. Fallon Ambulance Serv.*, 283 F.3d 11, 20 n.5 (1st

Cir. 2002) (noting that chapter 151B "tracks the ADA in virtually all respects").

Defendant challenges Plaintiff's ability to prove each of these three elements.

    1.  *Can Plaintiff show that she is disabled"?*

    A plaintiff is considered disabled under both the ADA and chapter 151B if she

"(A) [has] a physical or mental impairment that substantially limits one or more of [her]

major life activities . . .; (B) [has] a record of such an impairment; or (C) [is] regarded as

having such an impairment."  42 U.S.C. § 12102(2).  *Accord* Mass. Gen. L. ch. 151B, §

1(17).  For purposes of its motion, Defendant does not dispute that Plaintiff has a

physical impairment, *i.e.*, diabetes, but argues that Plaintiff will be unable to show that

her diabetes substantially limits a major life activity or that Defendant "regarded" her

that way.

    A "major life activity" is an activity of central importance to a person's daily life.

*Toyota Motor Mfg, Ky, Inc. v. Williams*, 534, U.S. 184, 197 (2002).  As the First Circuit

notes, the Equal Employment Opportunity Commission ("EEOC"), whose regulations

provide guidance in applying the ADA, defines "'substantially limits' as '(i) unable to

perform a major life activity that the average person in the general population can

perform; or (ii) significantly restricted as to the condition, manner, or duration under

which the average person in the general population can perform the same major life

activity.'"  *Wright v. CompUSA, Inc.*, 352 F.3d 472, 476 (1st Cir. 2003) (quoting 29

C.F.R. § 1630.2(j)(1)).  Factors to be considered in making this determination "are '(i)

the nature and severity of the impairment, (ii) the duration or expected duration of the

impairment, and (iii) the permanent or long term impact . . . of or resulting from the impairment.'" *Id.* (quoting 29 C.F.R. § 1630.2(j)(2)).

Three aspects of Defendant's argument provide the contours for the court's analysis.  First, Defendant asserts that Plaintiff was not substantially limited, or regarded as being substantially limited, in the major life activity of working.  Second, Defendant asserts that Plaintiff was not substantially limited in any other major life activity.  Third, Defendant contends that Plaintiff's "mitigating measures," *i.e.*, the medicines she now takes, preclude her from being disabled under the ADA or chapter 151B.

      a.  <u>Working</u>

For present purposes, the parties agree that, in appropriate circumstances, working can constitute a major life activity.  *See Mulloy v. Acushnet Co.,* 460 F.3d 141, 147 n.3 (1st Cir. 2006) (noting that chapter 151B includes "working" among "major life activities" and assuming that working is also a major life activity under the ADA).  In order to survive summary judgment, however, a plaintiff must "offer some evidence from which a reasonable jury could find that she is significantly restricted in her ability to perform a class of jobs or a broad range of jobs in various classes."  *Lebron-Torres v. Whitehall Labs.*, 251 F.3d 236, 240 (1st Cir. 2001).  *Accord* 29 C.F.R. § 1630.2(j)(3)(i) (2006).

Defendant asserts that Plaintiff has not come forward with any such evidence.  In fact, Defendant notes, Plaintiff began working at Magic Wings in April of 2003, *i.e.*, only two months after she was discharged, has been a full-time employee there since

8

September of 2003 and the general manager since March of 2004, works between nine and twelve hours per day overseeing a staff of thirty-five to forty people, and is responsible for Magic Wings' human resources, advertising, marketing and event planning.  (Defendant's Facts ¶¶ 106, 107.)  Defendant also points out that Plaintiff has an advanced psychology degree with ten years of work experience in the mental health field.  (*Id.* ¶ 108.)

In response, Plaintiff asserts that her employment at Magic Wings has been provided by an extremely benevolent owner -- her own father -- who, unlike other employers, has purportedly made generous accommodations for her diabetes.  In the court's view, this is interesting but inadequate.  Simply put, Plaintiff has not and cannot show that she is substantially limited in the major life activity of working.  Plaintiff is not only highly-skilled, but actually working full-time at a job requiring a significant amount of responsibility.

Similarly, the court finds that Plaintiff will be unable to prove that Defendant "regarded" her as being substantially limited from working at the time she was terminated.  True, Defendant concedes that "there are facts from which a jury might conclude that [it] knew [Plaintiff] had diabetes and believed that she could not effectively perform the [CSR] job given her history of repeated absences."  (Document No. 40, Reply Brief in Support of Defendant's Motion for Summary Judgment at 4.) There is no evidence, however, that Defendant regarded Plaintiff as unable to perform a "broad range of jobs" or an entire "class of jobs"; nor does Plaintiff direct the court to any alleged facts from which such a conclusion reasonably could be drawn.  *See* 29

9

C.F.R. § 1630.2(l)(3) and (j)(3)(i) (2006) ("regarded as" prong may be met where the employer "treated" the plaintiff as being "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes and as compared to the average person having comparable training, skills and abilities"; being regarded as unable "to perform a single, particular job does not constitute a substantial limitation in the major life activity of working").

b. <u>Other Purported Major Life Activities</u>

Plaintiff also asserts that she is substantially limited in the major life activities of sleeping, eating and basic mobility.  Recognizing that Plaintiff has a modest burden at this stage of the proceedings to "proffer evidence from which a reasonable inference can be drawn that a major life activity is substantially or materially limited," *Gillen*, 283 F.3d at 23-24 (citation, brackets, and internal quotation marks omitted), the court has determined that Plaintiff has raised a genuine issue of material fact as to one of those activities, eating.

As an initial matter, Defendant recognizes that sleeping may be considered a major life activity, *see Calero-Cerezo v. U.S. DOJ*, 355 F.3d 6, 21 (1st Cir. 2004), but argues that Plaintiff's only limitation was her need to get eight hours of sleep per night and, as such, was not a "substantial limitation" of a major life activity.  The court agrees.  To be sure, Plaintiff asserts that she also suffered from a lack of sleep related to her diabetes and would often awake in the middle of the night.  (See Plaintiff's Facts ¶ 30.)  But as was true in *Cornwell v. Dairy Farmers of Am., Inc.*, 369 F. Supp. 2d 87 (D. Mass. 2005), Plaintiff offers no documentation or other evidence that her "sleeping

patterns differed from that of the general population, were in any way severe, or expected to continue on a long-term or permanent basis." *Id.* at 102. Moreover, Plaintiff has offered no evidence that her lack of sleep affected her ability to perform day-to-day activities. *See id.* This, of course, is insufficient for summary judgment purposes.

Defendant also acknowledges that basic mobility may be a major life activity. *See Lemire v. Silva*, 104 F. Supp. 2d 80, 87 (D. Mass. 2000) (noting that "[t]he ability to travel is . . . a major life activity," but only "if defined . . . to include basic mobility, such as leaving one's home"). Nonetheless, Defendant asserts that Plaintiff's diabetes places no more than negligible limitations on her day to day activities. Again, the court agrees. To be sure, Plaintiff asserts that "[t]here were times when [her] diabetes prevented her from leaving the house" and that occasionally "she was so sick that she could not even take a shower or leave the house" or she was "too sick to drive." (Plaintiff's Facts ¶¶ 28, 31, 32.) But as with her alleged sleeping limitation, Plaintiff offers no documentation, medical or otherwise, in support of these assertions.[2]

---

[2] The court itself has expended significant time, without success, searching for evidence in the record, other than Plaintiff's affidavit and deposition testimony, supportive of her asserted sleeping and mobility limitations. To say the least, this has been a frustrating endeavor and a brief explanation is in order.

In support of both alleged limitations, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Document No. 36, hereinafter "Plaintiff's Brief") cites "generally" to paragraphs 27 through 47 of her original response to Defendant's Facts which, as indicated *supra* at n.1, Plaintiff then amended. Paragraphs 28, 30, 31 and 32 do contain faint references to Plaintiff's alleged sleeping and mobility limitations, but almost exclusively from Plaintiff's self-serving affidavit and deposition testimony. To be sure, there is one reference in paragraph 30 to an interrogatory answer (a copy of which Plaintiff loosely "bound" with a rubber-band along with other exhibits), but that response never mentions sleeping or mobility limitations.

The court recognizes that there is no general rule that medical evidence is always necessary to establish the effects of a medical impairment. *See Katz v. City Metal Co.*, 87 F.3d 26, 32 (1st Cir. 1996). But the present matter involves an instance where the impact of a disability, diabetes, on an individual's sleeping or mobility would not be readily apparent to a jury without the aid of medical evidence. *See id. See also Zades v. Lowe's Home Centers, Inc.*, 446 F. Supp. 2d 29, 42 (D. Mass. 2006) (rejecting plaintiff's conclusory claim that her physical impairment limited her ability to stand and walk in the absence of medical evidence documenting any restriction she may have as a result of her condition); *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 304 (S.D.N.Y. 2003) ("Plaintiff has offered this Court no reason to believe that the nature of Hepatitis C is amenable to comprehension by a lay jury in the same manner as are such [other] common ailments . . . . To the contrary, cases which delve into the intricacies of Hepatitis C often rely heavily on medical evidence, medical encyclopedias or diagnostic manuals.") (citing cases); *Poh v. Mass. Corr. Officers Fed. Union*, No. 03-11987-RWZ, 2006 WL 1877089, at *2 (D. Mass. July 7, 2006) (finding, in part, that

---

(Document No. 35, hereinafter "Plaintiff's Exhibits," Ex. 10.) It does claim, however, that Plaintiff's "medical records contain further details about the treatment [Plaintiff] received for diabetes, the symptoms [she] experienced, and the side effects from medications [she] experienced," but no records are appended. (*Id.*) As a result, the court decided to scrutinize yet another exhibit, entitled "FMLA & Medical Documentation," which appears to contain some medical documentation. Again, however, there are no reports by a treatment provider about any sleeping or mobility limitations. At most, Plaintiff once told her doctor that she "awoke at 4 a.m. with stomach pains and stayed home from work." (Plaintiff's Exhibits, Ex. 6 (May 22, 2000 note).) In contrast, other records reflect Plaintiff telling her treatment providers that her sleep was generally "OK" (see *id.* (Feb. 15, 2000 note)) and that a certain medication "makes her sleepy" (*id.* (Nov. 7, 2002 note)), hardly enough proof of substantial sleeping and mobility limitations.

plaintiff had not proved disability because she provided no evidence of substantial limitation beyond her affidavit). That evidence is lacking here.

This lack of medical documentation, however, is not critical, for present purposes at least, with respect to another major life activity which Plaintiff claims is substantially limited, eating. First, Defendant acknowledges that the First Circuit, like other courts of appeal, recognizes that eating, as a general matter, is a major life activity. *See Calero-Cerezo*, 355 F.3d at 21 (citations omitted). Of course, while "diabetic status, *per se*, does not qualify a plaintiff as disabled under the ADA," a diabetic whose condition substantially limits the major life activity of "eating" may so qualify. *Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir. 2006). *See also Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 924 (7th Cir. 2001) (diabetic plaintiff who was severely restricted in the types of foods he could eat could be considered disabled under the ADA). In any event, as is evident from the lead case *Defendant* cites, the issue is often fact-intensive. *See Fraser v. Goodale*, 342 F.3d 1032, 1041-42 (9th Cir. 2003).

Second, and more to the point, the lack of supporting medical evidence here would not prevent a jury, if necessary, from tying eating limitations to Plaintiff's diabetes. The connection, in the court's view, is generally understood by lay people. Third, Plaintiff has cited material facts sufficient to challenge Defendant's assertions, for example, (1) that her diabetes requires her to limit sugar intake; and (2) that, because of her diabetes, she must avoid all fruit juice, some fruits, white rice, white bread, potatoes, pasta, enriched flour and other similar products that are not wheat-

based.  (Plaintiff's Facts ¶ 29.)  Fourth, Plaintiff's medical records (see n.2. *supra*)

contain a number of references to eating-related issues, *e.g.*, diarrhea, stomach ache,

etc.  And fifth, even Defendant acknowledges that Plaintiff had to modify her diet

because of her diabetes.  At bottom, the factual assertions regarding Plaintiff's eating

limitations, and the issues thereby raised, are sufficient to withstand Defendant's

summary judgment motion as it relates to her question of whether that major life activity

is substantially limited.

        c.  Mitigating Measures

        Defendant's "mitigating measures" argument can be dealt with in relatively short

order.  According to the Supreme Court, "mitigating measures" must be considered in

determining whether an individual is disabled under the ADA.  *See Sutton v. United Air*

*Lines, Inc.*, 527 U.S. 471, 488-89 (1999) (holding that plaintiffs who were not

substantially limited when they wore corrective lenses were not disabled for ADA

purposes).  That limitation does not exist under chapter 151B.  *See Dahill v. Police*

*Dep't of Boston*, 748 N.E.2d 956, 963-34 (Mass. 2001) (mitigating measures should not

be taken into account in determining disability under chapter 151B).  Nonetheless,

Defendant argues that Plaintiff's claims fail "under either methodology" because "she

has not presented specific evidence concerning the difference, if any, between her

medicated and unmedicated states."  (Defendant's Brief at 5.)

        Plaintiff, in the court's opinion, has raised a genuine issue that she was

substantially limited even when medicated.  For example, Plaintiff notes that she was

sick "on a daily basis" for one year prior and three years after her diabetes diagnosis.

14

(See Plaintiff's Brief at 9-10.)  Accordingly, the court sees little in Defendant's "mitigating measures" argument to warrant the entry of summary judgment at this time on the disability issue.

     2. *Can Plaintiff show that she is a qualified individual with a disability?*

     Defendant next argues that Plaintiff cannot show that she "was a *qualified* individual with a disability, *i.e.,* able to perform the essential functions of the [CSR] position with or without reasonable accommodation."  *Ward*, 209 F.3d at 32-33 (emphasis added).  This portion of Defendant's argument is premised on the assertion that "regular attendance" is an "essential function" of the CSR position.  Plaintiff, however, has raised a genuine issue of material fact in this regard, albeit by a thin margin.

     First, the law.  Defendant correctly notes that a number of circuits have concluded that regular attendance is an essential function of most jobs.  *See, e.g.*, *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 966 (8th Cir. 2006); *Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004); *Mason v. Avaya Communs., Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004); *EEOC v. Yellow Freight Sys.*, 253 F.3d 943, 949 (7th Cir. 2001); *Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 213 (4th Cir. 1994).  The First Circuit has come to a similar conclusion in an excessive "tardiness" case, *see Ward*, 209 F.3d at 35 ("a regular and reliable schedule may be an essential element of most jobs"), but with an important caveat, namely, that the "resolution of the issue in each case requires a fact-intensive inquiry into the pattern of the attendance problem and the characteristics of the job in question," *id.*

15

As in *Ward*, the question of whether regular attendance was an essential function of Plaintiff's CSR position is a factual question not readily amenable to summary disposition. For one thing, Defendant's assertions to the contrary, the Job Brief does not "establish" that regular attendance by CSRs is "required" without exception. The Job Brief states merely that CSRs "*[m]ay* be required to work day, evening and weekend shifts, and overtime and holiday hours *as assigned*." (Document No. 31, Defendant's Exhibits, Ex. F (emphasis added).) Moreover, the Job Brief provides that a CSR's working hours "are determined by seniority, job requirements, qualifications and employee preference," (*id.*), thereby indicating that Defendant has discretion in setting a CSR's working hours and shifts.

Such discretion is also reflected in Defendant's attendance guidelines. Most specifically, the guidelines grant Defendant discretion to be "patient and forbearing" with respect to certain "extraordinary bona fide illnesses." (Defendant's Facts ¶ 24.) Defendant's EEO Manager, Paul McGovern, remarked on this discretion when he testified that diabetes is a "medical condition that *can* certainly be bona fide and the absence which *may* result from it *may be* extraordinary." (Plaintiff's Facts ¶ 24 (emphasis added).) "[U]nder the absence control plan," McGovern added, "there is no hard and fast rule. There are department practices." (*Id.* ¶ 10.) Accordingly, there is a genuine issue as to whether regular attendance was an essential function of Plaintiff's job.

Still, Defendant asserts, Plaintiff could not perform the essential job function of regular attendance. Plaintiff does not directly challenge this assertion; nor does she

dispute Defendant's calculation that she "was absent approximately 10 percent of the time in 1999, 18 percent of the time in 2000, 26 percent of the time in 2001, and 14 percent of the time in 2002, *for an average absence rate of 17 percent*." (*Id.* (emphasis in original).)  *See also Brenneman*, 366 F.3d at 418-20 (granting summary judgment to employer where regular attendance was an essential function of the job and diabetic plaintiff's exhibited "substantial attendance difficulties").  The problem for Defendant, however, at least for summary judgment purposes, is that such regular attendance, as described above, was not necessarily an essential function of Plaintiff's job.  In other words, it is too early to conclude that Plaintiff was unable to perform the essential functions of the CSR position.

Persevering, Defendant argues nonetheless that no reasonable accommodation would have enabled Plaintiff to fulfill the essential job function of regular attendance.  Again, however, this argument is premised on the assertion -- which is overcome for summary judgment purposes -- that regular attendance was an essential function of Plaintiff's job.  Moreover, Plaintiff has raised genuine issues of material fact as to whether her request for accommodation -- *i.e.*, a modified work schedule which would allow her to (1) take personal or vacation time instead of a sick day, (2) reduce her work schedule so that she could come in late on the days that she was ill, or (3) switch to part-time employment for a definite period of time -- was reasonable.  (See Plaintiff's Brief at 13-15.)  As the First Circuit has observed, "[r]easonable accommodations under the ADA can include '[j]ob restructuring; part-time or modified work schedules; [or] reassignment to a vacant position; . . . and other similar accommodations for

17

individuals with disabilities." *Criado v. IBM Corp.*, 145 F.3d 437, 443 (1st Cir. 1998).

*Compare Mulloy*, 460 F.3d at 153-54 (proposed accommodation for work-related

asthma of working remotely from home not a reasonable accommodation under the

ADA).  The First Circuit has also noted that it is the *employer*'s burden to show that the

requested accommodations are *un*reasonable.  *Ward*, 209 F.3d at 36.  Defendant has

not done so here.

 Finally, Plaintiff has raised a genuine issue of material fact as to whether

Defendant adequately responded to her request for accommodation.  *See Tobin v.*

*Liberty Mut. Ins. Co.*, 433 F.3d 100, 108-09 (1st Cir. 2005) ("[O]nce the employer

becomes aware of the disability of an employee, he is expected to engage in a

meaningful dialogue with the employee to find the best means of accommodating that

disability.").  *See also id.* at 108 n.8 (noting that chapter 151B "imposes a similar

requirement to engage in an 'interactive process'").  True, Defendant referred Plaintiff

to the EAP, but Plaintiff has tendered evidence that the EAP might not have been the

appropriate vehicle for her particular medical issue.  (See, *e.g.*, Plaintiff's Exhibits, Ex.

7 (excerpt from July 31, 2002 grievance meeting which noted that "although [Plaintiff]

was offered EAP [,] her condition didn't fall under any category EAP covers").)  For all

these reasons, therefore, the court will not enter summary judgment in Defendant's

favor on the question of whether Plaintiff was a qualified individual with a disability.

 3.  *Can Plaintiff show that she was discharged because of her disability?*

 Defendant's final argument concerns the third prong of the analysis.  In essence,

Defendant asserts that since Plaintiff was discharged "because of" her absenteeism,

18

she will be unable to demonstrate that she was discharged "because of" her disability. Defendant's argument is strong but unavailing for present purposes.

According to the First Circuit, "[a]sserting that [a] termination was based on [an employee]'s absenteeism rather than her disability does not justify [an employer]'s action where the absence was the requested accommodation." *Criado*, 145 F.3d at 444. The basic premise applies here. Plaintiff's requested accommodation, a modified schedule, resulted in her being absent. And since there are genuine issues of material fact as to (a) whether Plaintiff was substantially limited in the major life activity of eating, (b) whether the regular attendance Defendant desired was an essential function of her job, (c) whether Plaintiff's requested accommodations were reasonable, and (d) whether Defendant adequately responded to her request for accommodation, it would be premature to conclude that Defendant did not terminate Plaintiff, as Defendant maintains, because of her disability. *Cf. Ward*, 209 F.3d at 37-38 (holding that where there was "a genuine dispute as to whether [the plaintiff]'s tardiness was caused by his disability" it was improper for the district court to find against him on the "because of" element).[3]

Finally, the court heeds the First Circuit's warning that courts should exercise

---

[3]    That said, the court advises Plaintiff, as one circuit court has suggested, that under the ADA at least "there must be a causal link between the specific condition which limits a major life activity and the accommodation" sought by the employee. *Felix v. N.Y. City Transit Auth.* 324 F.3d 102, 104 (2d Cir. 2003). *See also id.* at 109 (Leval, J., dissenting) (agreeing that such linkage is a requirement for ADA purposes). Subject to further consideration of the issue by this court, Plaintiff may well have to prove that the purportedly reasonable accommodation she sought was linked to her diabetes-related eating limitations.

caution before granting summary judgment for employers on such issues as pretext and motive. *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir. 2000). The reason for such caution, which may well be present here, is "because of the availability of seemingly neutral rationales under which an employer can hide its discriminatory intent." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir. 1998). For all these reasons, therefore, the court will not grant Defendant summary judgment on the third prong of Plaintiff's proof and, hence, will deny Defendant's motion with respect to Plaintiff's disability discrimination claims.

B.  Retaliation (Counts II and IV)

To state a *prima facie* case of retaliation under the ADA and chapter 151B, Plaintiff must prove that (1) she was engaged in protected conduct, (2) she suffered an adverse employment action, and (3) there was a casual connection between the two. *See Wright*, 352 F.3d at 478, *Gore v. Trustees of Deerfield Acad.*, 385 F.Supp. 2d 65, 70 (D. Mass. 2005). Defendant concedes for summary judgment purposes that Plaintiff engaged in protected activity -- she requested a reasonable accommodation -- but argues Plaintiff is unable to prove the last two elements.

Defendant's entire argument with regard to retaliation is based on its assertion, derived from Plaintiff's interrogatory answers, that the only possible adverse employment action was that Plaintiff's "work was more closely scrutinized and [she was] unduly criticized by management in the approximately three months preceding [her] termination." (Defendant's Brief at 19 (quoting Defendant's Facts ¶ 101 (in turn, quoting Plaintiff's Answers to Defendant's First Set of Interrogatories, Interrogatory No.

13)).)  That, however, is not the case.  Although Plaintiff noted Defendant's "scrutin[y]" and critici[sm]" as "further" retaliation in her interrogatory answers, those same answers incorporated her main retaliation claim -- and the one that she pursues here -- that she was fired for requesting a reasonable accommodation.  (See, *e.g.*, Interrogatory No. 10.)  And as Defendant is no doubt aware, termination from employment for requesting a reasonable accommodation constitutes an adverse employment action in a disability-based retaliation case.  *See Wright*, 352 F.3d at 478.

In sum, Plaintiff has proffered sufficient evidence that Defendant may have retaliated against her in violation of the ADA and chapter 151B when it terminated her soon after she requested a reasonable accommodation.  *See id.* (denying summary judgment on ADA and chapter 151B retaliation claims where a reasonable jury viewing the evidence in a light most favorable to the plaintiff "could infer that [the defendant]'s charge of insubordination masked retaliatory motives").  Accordingly, Defendant's motion with respect to Plaintiff's retaliation causes of action will be denied.

## IV.  CONCLUSION

For the reasons stated, Defendant's motion for summary judgment is ALLOWED with respect to Count V, Plaintiff's Rehabilitation Act claim, but otherwise DENIED.  The clerk shall schedule a case management conference for the purpose of establishing final pretrial conference and trial dates.

IT IS SO ORDERED.

DATED: February 7, 2007

  /s/ Kenneth P. Neiman

21

KENNETH P. NEIMAN
Chief Magistrate Judge