UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHLEEN MILLER,<br>              Plaintiff<br><br>v.<br><br><br>VERIZON COMMUNICATIONS, INC.,<br>              Defendant | Civil Action No.: 05-30117-KPN |

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

## I. GENERAL INSTRUCTIONS

### Burden Of Proof

Some of you have heard the phrase "proof beyond a reasonable doubt." That is a criminal law standard. This is not the appropriate standard to apply in this case. In this case, facts must be established by a preponderance of the evidence. What does "preponderance of the evidence" mean? It simply means that a fact is proved if you find that it is more likely to be true than false.

In weighing the evidence, you should think of a scale. If the evidence is equally divided and the scale does not tip in either direction, then the fact is not proved by a preponderance of the evidence. If you find that the evidence tips the scale, however slightly, in favor of the fact being false, then the fact is not proved by a preponderance of the evidence. However, if you find that the evidence tips the scale, however slightly, in favor of the fact being true, then the fact is proved by a preponderance of the evidence.

### Types Of Evidence

There are two types of evidence that you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testifies about something he or she knows by virtue of his or her own senses—something he or she has experienced or has seen, felt, touched or heard. A document can also constitute direct evidence.

Circumstantial evidence is evidence which tends to prove a disputed fact by the existence of other facts. A common example is where there are footsteps in a fresh snow. Although you may not have seen a person walking in the snow, and so there may be no direct evidence of that fact,

it may be logically assumed that a person walked in the snow between the time that it just snowed and the present.

Circumstantial evidence is of no less value than direct evidence. It is a general rule that law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based upon a preponderance of all the evidence presented. In making your decision, you may rely on both direct and circumstantial evidence.

## II. HANDICAP DISCRIMINATION
(ADA & M.G.L. c. 151B)

### Handicap Discrimination General

Massachusetts law prohibits employers from discriminating against a qualified handicapped employee because of the employee's handicap. The purpose of the law is to remove artificial, arbitrary and unnecessary barriers to full participation in the workplace for handicapped workers.

In this case, the Plaintiff, Kathleen Miller, was an employee of Verizon Communications, Inc. Ms. Miller alleges that, despite being able to perform the essential functions of her job, she was terminated, at least in part, based upon her handicap and her requests for accommodations for her handicap. Verizon essentially claims that Ms. Miller was terminated due to violations of Verizon's attendance policies.

Massachusetts General Laws, ch. 151B, Section 4(16); Harvard Law School Coalition for Civil Rights v. President & Fellows of Harvard College, 413 Mass. 66, 68 (1992) (reciting purpose of Mass. Gen. Laws ch. 151B). See also, Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002)(citing Lessard v. Osram Sylvania, Inc., 175 F.3d 193, 197 [1st Cir. 1999]).

### Definition of Handicapped Individual

Ms. Miller meets the definition of "a handicapped individual" if you find that:

1) she has a physical impairment which substantially limits one or more of her major life activities; or
2) Verizon regarded Ms. Miller as having a physical impairment which substantially limited at least one major life activity; or
3) she has a record of such impairment.

In any one of these scenarios, Ms. Miller would qualify as a handicapped individual under Massachusetts law.

A Plaintiff is considered disabled under both the ADA and M.G.L. c. 151B if she "(a) [has] a physical or mental impairment that substantially limits one or more of [her] major life activities…;(b) [has] a record of such impairment; or (c) [is] regarded as having such an impairment."

See 42 U.S.C. § 12102(2); M.G.L. c. 151B § 1(17).  See also, City of New Bedford v. Massachusetts Commission Against Discrimination, 440 Mass. 450 (2003), citing Murphy v. United Parcel Service, Inc., 527 U.S. 516, 521-522 (1999). See also, Dahill v. Police Dept. of Boston, 434 Mass. 233 (2001); Ocean Spray Cranberries, Inc. v. Massachusetts Commission Against Discrimination, 441 Mass. 632 (2004); and Dube v. Middlesex Corp., 59 Mass. App. Ct. 734 (2003).

**Substantially Limiting Impairment**

An impairment is substantially limiting if it prohibits or significantly restricts an individual's ability to perform a major life activity as compared to the ability of the average person in the general population to perform the same activity."

MCAD Guidelines § II.A.6; EEOC Guidelines 29CFR1630.2 § j.1(i)(ii).

The "determination of whether an impairment substantially limits a major life activity depends on the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact of the impairment."

MCAD Guidelines § II.A.6; EEOC Guidelines 29CFR1630.2 § j.2(i)(ii)(iii).

**Major Life Activities**

The phrase "major life activities" means functions, including, but not limited to, caring for one's self, performing manual tasks, eating, mobility, sleeping, walking, and working.

See Massachusetts General Laws, ch. 151B, Section 1(20).  See, Lemire v. Silva, 104 F.Supp.2d. 80, 86-87 (D. Mass. 2000); Cornwell v. Dairy Farmers of America, Inc., 369 F. Supp. 2d 87 (D. Mass. 2005); Fraser v. Goodale, 342 F. 3d 1032, 1040-41 (9th Cir. 2003), *cert. denied*, 541 U.S. 937 (2004); Branham v. Snow, 392 F.3d 896 (7th Cir. 2004).

Other examples of major life activities include sitting, standing, and lifting.

See MCAD Handicap Guidelines, II (A)(5); EEOC Guidelines 29CFR1630.2 § h.2(i).

**Mitigating Measures**

When determining whether an individual's impairment substantially limits a major life activity, you must consider the impact of the impairment without regard to whether its effect can be alleviated by measures such as medication, auxiliary aids or prosthetic devices. For example, an employee who is legally blind, but whose vision is correctable with glasses, may be considered "handicapped" because [her] impairment substantially limits [her] ability to perform the major life activity of seeing. Similarly, an employee with a serious illness that affects her ability to engage in a major life activity may be considered "handicapped," even if the symptoms of the illness can be mitigated or eliminated by medication.

See MCAD Handicap Guidelines, II (A)(7). See also, Dahill v. Police Department of Boston, 434 Mass. 233, 243-244 (2001).

**Essential Functions**

In considering Ms. Miller's claims, you must first determine which functions of the customer service representative position were "essential functions" as I will define that term.

"Essential functions" are those functions which must necessarily be performed by an employee in order to accomplish the principal objectives of the job. Put another way, the "essential functions" are those that are not incidental or tangential to the job in question. When determining the essential functions of the position, you must consider the duties and responsibilities of Ms. Miller's particular job. Functions that are identified as part of a job, but which are, in fact, occasionally or never performed, are not likely to be essential.

See MCAD Handicap Guidelines, II(B); EEOC Guidelines 29CFR1630.2 § n.1. See Ward v. Mass Health Research Institute, Inc., 209 F.3d 29 (1st Cir. 2000) See also, Cargill v. Harvard University, 60 Mass. App. Ct. 585, 597 (2004) (quoting Cox v. New England Tel. & Tel Co., 414 Mass. 315, 384 (1993)); Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 542 (1995).

**Consideration of Ms. Miller's Actual Abilities**

Once you have determined which functions were essential to Ms. Miller's position, you must decide whether Ms. Miller could accomplish those functions. If you find that Ms. Miller was able to accomplish those essential functions, with or without any accommodation for her diabetes, then you must find in favor of Ms. Miller on her claim that Verizon discriminated against her because of her handicap when it placed her on suspension for her absences and, ultimately, terminated her employment.

When you are considering Ms. Miller's ability to accomplish the essential functions of her position, you should consider only Ms. Miller's actual abilities and limitations. You may not consider any stereotypes and generalizations which you may have about persons with diabetes or a similar such condition. Even if you have known someone with diabetes, you should not base your conclusions on the experiences and abilities of other individuals. You must consider only Ms. Miller's abilities. Your analysis will necessarily require you to distinguish between unfounded stereotypes, on the one hand, and a frank assessment of Ms. Miller's abilities, on the other hand.

See Gillen v. Fallon Ambulance Serv., 283 F.3d 11, 29 (1st Cir. 2002).

**Reasonable Accommodations In General**

If you find Ms. Miller was unable to accomplish one or more of the essential functions of her job without some accommodation, you must consider whether Ms. Miller would have been capable of accomplishing those functions with reasonable accommodation to her diabetic condition.

4

A "reasonable accommodation" is any adjustment or modification to a job (or the way a job is done), employment practice, or work environment that makes it possible for a handicapped individual to perform the essential functions of the position involved and to enjoy equal terms, conditions and benefits of employment.

See MCAD Handicap Guidelines, II(C); EEOC Guidelines 29CFR1630.2 § o.1(i)(ii)(iii). See also, Lukacinsky v. Panasonic Service Company, (D.Mass.2004)(quoting Ocean Spray Cranberries v. Mass. Commission Against Discrimination, 441 Mass. 632, 648 [2004]).

"A reasonable accommodation may include modifying when and how an essential job function is performed."

See Sch. Comm. Norton v. Mass. Comm'n Against Discrimination, 63 Mass. App. Ct. 839, 846-847 (2005), quoting MCAD Handicap Guidelines, II(C).

Types of accommodation that may be considered reasonable include, but are not limited to, the following:
- making job facilities accessible to and equally usable by a handicapped person;
- modifying work schedules;
- obtaining or modifying adaptive job equipment or devices;
- reassigning nonessential job functions;
- allowing time off for medical reasons; and
- reassignment or transfer to a vacant position.

MCAD Handicap Guidelines, II (C); EEOC Guidelines 29CFR1630.2 § o.2 (ii) See Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, Question Nos. 22, 34 and 36; MCAD Guidelines, Special Topics X.B.

Requests for modification of work schedules by way of "flexible" schedules are not per se unreasonable.

See Ward v. Massachusetts Health Research Institute, 209 F. 3d 29, 36, n.6 (1st Cir. 2000). See also, Beck v. University of Wisconsin Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996)(internal citation omitted); Fink v. Printed Circuit Corporation, 204 F. Supp.2d 119 (D.Mass. 2002).

**Duty to Consider and Provide Reasonable Accommodation**

The law required Verizon to consider and provide any reasonable accommodation to Ms. Miller's handicap if Verizon had reason to know that Ms. Miller would need a reasonable accommodation to perform the functions of her position.

Therefore, if you find that Ms. Miller would have been able to perform the essential functions of her job with reasonable accommodation then you must find in favor of Ms. Miller on her claim

5

that Verizon discriminated against her because of her handicap when it suspended her employment and, ultimately, terminated her employment.

See MCAD Handicap Guidelines, § II(C) and VII (B); see also Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination, 441 Mass. 632, 644 (Mass. 2004); Cargill v. Harvard University, 60 Mass. App. Ct. at 603; see also Leach v. Comm'r of the Mass. Rehab. Comm'n, 63 Mass. App. Ct. 563, 567 (Mass. App. Ct. 2005) (recognizing that when an employee's condition that makes it obvious that accommodation is required, a request for accommodation is unnecessary); see Reed v. Lepage Bakeries, Inc., 244 F.3d 254, 261, n.7 (1st Cir. 2001) (recognizing that sometimes an employee's need for an accommodation will be obvious).

### Termination

Next, you must consider Ms. Miller's claim that Verizon selected her for termination, at least in part, because of her diabetes. Verizon denies that it considered Ms. Miller's diabetic condition when it selected her for termination.

### Qualified Handicapped Person

Again as an initial matter, you must determine whether Ms. Miller would have been able to perform the essential functions of her job, with or without reasonable accommodation for her diabetes, at the time of her termination. You should use the process and definitions I have just described to determine whether Ms. Miller was able to perform the essential functions of the customer service representative position with or without reasonable accommodation. As I explained, you should first consider which functions were essential to Ms. Miller's position. Then you should consider whether Ms. Miller would have been able to accomplish those essential functions with or without reasonable accommodation.

### Handicap Discrimination In General

If you find that Ms. Miller would have been able to accomplish the essential functions of her position with or without a reasonable accommodation, you must determine why Verizon selected Ms. Miller for termination. As I noted before, it is unlawful for an employer to discriminate against a qualified handicapped employee by selecting her for termination because of her handicap.

### Stereotyping is Illegal

During your deliberations, you should keep in mind that discrimination is unlawful, whether the motive to discriminate is conscious or unconscious. Sometimes discrimination is the result of an overt hatred toward a set of people. Sometimes, however, the employer feels no particular hostility, but is merely acting on ingrained stereotypes. The employer may subjectively believe that its actions are in the best interests of its business; however, its judgment may be clouded by unfair assumptions and discriminatory stereotypes. When these stereotypes are used, employers' benign intentions may nevertheless coincide with illegal discrimination. Thus, Ms. Miller must prove that Verizon improperly considered her handicap when making its decision, but Ms. Miller

6

need not prove that Verizon felt some kind of overt hatred or hostility toward handicapped workers.

See Lipchitz v. Raytheon Co., 434 Mass. 493 (2001) (discrimination is unlawful even though "an employer will not necessarily be aware of his or her bias" and judge incorrectly instructed jury in gender discrimination claim that proof of a "conscious motive" to discriminate was required).

**Motivating Factor**

Thus, if you find that Ms. Miller could have performed her duties with or without a reasonable accommodation, the only question for you to decide (as to this claim) is whether Ms. Miller's handicap was a motivating factor in Verizon's decision to select Ms. Miller for termination. In other words you must determine whether Ms. Miller's handicap was a material and important ingredient in Verizon's decision to select Ms. Miller for termination.

To find in favor of Ms. Miller, you do not need to conclude that Ms. Miller's handicap was the only reason for Verizon's decision. If Verizon considered Ms. Miller's handicap as a material and important factor in making its decision, then you must find in Ms. Miller's favor.

See Tate v. Dept of Mental Health, 419 Mass. 356, 364 (1995); MCAD Handicap Guidelines, IX (A) (2). See also, Criado v. IBM Corp., 145 F.3d 437, 444-45 (1st Cir. 1998); Ward, 209 F.3d at 37-38; Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281, 1285-86 (7th Cir. 1996).

**Totality of Evidence and Circumstantial Evidence**

When deciding whether Ms. Miller's handicap was a motivating factor, you must consider the totality of the evidence. That means that you should consider all of the evidence regarding things that happened and statements that were made. Keep in mind that direct evidence and statements are not required. You may infer a discriminatory motive from the existence of circumstantial facts by using your reason and common sense.

**Asserted Reasons Untrue**

For example, if you find that one or more of the reasons asserted by Verizon for its decision to terminate Ms. Miller were untrue, meaning that Verizon was not truly motivated to terminate Ms. Miller's employment because of one of the reasons asserted by Verizon, then you may, but are not required to, infer that Verizon is covering up a discriminatory motive, intent or state of mind.

See Lipchitz v. Raytheon, 434 Mass. 493 (2001).

**Comparative Employees**

Also, if you find that Verizon treated Ms. Miller differently than similarly situated individuals without handicaps, you may, but are not required to, infer that Verizon's decision to terminate

7

Ms. Miller's employment was motivated by discriminatory animus rather than a legitimate motive, intent or state of mind.

See Abramian v. President & Fellows of Harvard College, 432 Mass. 107 (2000).

**Temporal Proximity**

Similarly, if you find that there was a close temporal proximity between the time Verizon was made aware of Ms. Miller's diabetes and the decision to terminate Ms. Miller's employment, you may, but are not required, to infer that discriminatory animus was a material and important ingredient in the decision to terminate Ms. Miller's employment.

See e.g. Ritchie v. Department of State Police, 60 Mass. App. Ct. 655 (2004). See also, Clockedile v. New Hampshire Dep't of Corr., 245 F.3d 1,6-7 (1st Cir. 2001).

**Liability Handicap Is a Motivating Factor**

If you find that Ms. Miller's handicap was not a material and important ingredient in Verizon's decision to terminate Ms. Miller's employment, then you should find in favor of Verizon on this claim.

If you find that Ms. Miller's handicap was a material and important ingredient in Verizon's decision to terminate Ms. Miller's employment, then you must find in favor of Ms. Miller on this claim.

## III. RETALIATION
### (Title VII of the Civil Rights Act of 1964 & M.G.L. c. 151B)

Under both federal and state law, Ms. Miller must first prove a prima facie case: that (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two.

See Wright v. CompUSA, Inc., 352 F.3d 472, 477-78 (1st Cir. 2003); and McMillan v. Mass. Soc., Prev. of Cruelty to Animals, 140 F.3d 288, 309 (1st Cir. 1998)(stating standard under federal or Massachusetts law).

Ms. Miller asserts that she engaged in at least two instances of protected conduct: she filed a Union grievance regarding her written warnings and suspensions relating to absences, and she requested an accommodation for her disability.

See Wright, 352 F.3d at 478 (1st Cir. 2003) (holding that "requesting an accommodation is protected activity" in retaliation claims brought under either ADA and/or Chapter 151B).

As for the second and third prima facie elements, you are allowed to draw inferences based upon timing and other circumstantial and direct evidence that there is a causal connection between Ms. Miller's request for an accommodation and her termination of employment. If you determine

that the request for accommodation is close in time to the adverse action (in this case, Ms. Miller's suspension and ultimate termination from her employment), then you as the finder of fact are allowed to draw an inference that there is a causal connection between the request for accommodation and the termination of employment.

See Wright, 352 F.3d at 478.

Once a prima facie case of retaliation is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment decision. If the employer provides a legitimate reason, the ultimate burden falls on Ms. Miller to show that the employer's proffered reason is pretext masking retaliation. On this note, Verizon has alleged that Ms. Miller was discharged for violations of Verizon's attendance policy.

If you find that the reason for the termination of employment, e.g., violations of the attendance policy, is not credible and is a mere pretext, then you may find in favor of Ms. Miller based upon her retaliation claim.

## IV. DAMAGES

### Damages (General)

If you do not find in favor of Ms. Miller on any of her claims, then you should so inform the Court. However, if you find that Verizon terminated Ms. Miller's employment because of her handicap and/or for retaliatory reasons, your next task is to determine an appropriate remedy. Thus, when I give the following instructions on damages, it is with the assumption that you have found in favor of Ms. Miller on one or more of her claims.

There are three types of monetary damages that may be relevant to this case: lost compensation; emotional pain and suffering; and punitive damages. I will define each of these categories for you.

### Lost Compensation

Lost compensation is the amount of money equal to pay and benefits that Ms. Miller would have received from Verizon if she had not been discriminated against. You should calculate lost pay and benefits for the period between the time that Ms. Miller was harmed through the present.

You may also award Ms. Miller front pay, that is, the amount of pay and benefits that she will lose from the date of your verdict forward. In determining front pay, you should take into account what Ms. Miller would have earned, but for the discrimination against her, reduced by the amount that she will be able to earn, if any. You should award the present value of the amount of money that you find that Ms. Miller has lost in front pay.

Lost back and front pay need not be calculated to a mathematical certainty. You need only have a reasonable basis for estimating the amount of wage and benefit loss that Ms. Miller has suffered

and will suffer in the future. The goal of awarding lost compensation is to make the aggrieved party whole.

See Conway v. Electro Switch Corp., 402 Mass. 385, 389 (1988) (present value of front pay and make party whole); Pollard v. El. du Pont de Nemours & Co., 532 U.S. 843(2001) (front pay).

**Emotional Damages**

As a victim of discrimination, Ms. Miller is entitled to money damages for any pain, humiliation, disappointment, distress, anger, or anguish she suffered as a result of that discrimination. You must decide if Ms. Miller suffered pain, disappointment, humiliation or anguish, and, if so, what amount of money would reasonably compensate her for what she has endured. You may consider factors such as the nature and character of the emotional distress; the severity of the emotional distress; and the length of time Ms. Miller has suffered and reasonably expects to suffer.

In awarding damages for emotional distress, you should consider the effect of the unlawful discrimination on Ms. Miller. You may award emotional distress damages even if there were other factors in Ms. Miller's life that also caused her stress, or even if she has other conditions that make her vulnerable to suffering an increased amount of emotional distress. However, you should only award emotional distress damages for emotional distress suffered by Ms. Miller as a result of the unlawful discrimination.

Ms. Miller is competent to testify to the cause and nature of the emotional distress suffered. Testimony of a psychiatrist or psychologist is not a prerequisite of an award of damages for emotional distress.

Fixing an amount for an emotional distress award is not necessarily an easy task. You should be careful to base the award on the evidence you have heard and you must use the award to compensate Ms. Miller for the harm she has suffered as a result of unlawful discrimination. The award need not be proved to a mathematical certainty. Use your best judgment in arriving at a fair, reasonable amount to compensate Ms. Miller.

See Stonehill College v. Mass. Comm'n Against Discrimination, 441 Mass. 549, 576 (Mass. 2004).

**Punitive Damages**

If you find that Verizon discriminated against Ms. Miller, you may consider whether punitive damages are warranted. Punitive damages are designed to punish unlawful discrimination and to deter future wrongdoing by Verizon and other employers. You may award punitive damages to Ms. Miller if you find that Verizon's conduct in discriminating against Ms. Miller was outrageous such that Verizon's conduct warrants condemnation and deterrence.

In determining the amount of punitive damages, it is appropriate for you to consider the magnitude of the harm that Verizon's conduct caused to Ms. Miller, as well as the potential harm

that might occur if such discriminatory behavior is not deterred. Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the unlawful conduct as well as to the harm that actually has occurred. If Verizon's actions caused or would likely cause in a similar situation only slight harm, the damages should be relatively small. If the harm is or would likely be grievous, the damages should be much greater. You may also consider the financial position of Verizon to ensure that it recognizes the punishment; the costs of litigation; and the desirability of encouraging plaintiffs to bring wrongdoers to trial.

If you decide to assess punitive damages, you should fix the amount by using calm discretion and sound reason.

See <u>TXO Prod. Corny. Alliance Res. Corp.</u>, 509 U.S. 443,459—62(1993); <u>Dartt v. Browning-Ferris Indus., Inc.</u>, 427 Mass. 1, 16—17(1998); <u>Bain v. City of Springfield</u>, 424 Mass. 758, 767-68 (1997); <u>Labonte v. Hutchins & Wheeler</u>, 424 Mass. 813, 826—27 (1997).

Respectfully submitted,

The Plaintiff
KATHLEEN MILLER
By Her Attorney

/s/ Michael O. Shea                                         Date: March 20, 2007
MICHAEL O. SHEA, ESQ.
BBO No.: 555474
Law Office Of Michael O. Shea, P.C.
451 Main Street
Wilbraham, MA 01095
Telephone:(413) 596-8005
Facsimile: (413) 596-8095

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the EDF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 20, 2007, and that there are no non-registered participants.

/s/ Michael O. Shea